Rahsaan Coleman
Pelican Bay State Prison
P.O. Box 7500 D7-101
Crescent City, Ca. 95532
C.D.C.R No. J24836
In Pro Per          E-filing

FILED
MAY 2 1 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

In The United States District Court
For The Northern District of California.
San Francisco. Division

PJH
(PR)

| | |
|---|---|
| Rahsaan Coleman, | CV 08 2567 |
| Petitioner, | No. |
| V. | Petition To Vacate Stay of Proceedings and; Motion For Review and Evidentiary Hearing. |
| Robert A. Horel, Warden, Respondent, | |
| on Habeas Corpus. | |

To The Honorable Presiding Judge and
Associate Justices of the Northern District of California:

Please, take Notice that Rahsaan Coleman
Petitioner in the above entitled action in and on His
own behalf, Moves the Court for an APPLICATION to
Vacate Order of Stay of Proceedings; and Moves the Court
for Evidentiary Hearing, and Review; in respect to the
accompanying Habeas Application-- declaration of Rahsaan
Coleman; Points and Authorities. In Support of Petition.

1

This request for an Evidentiary Hearing, Review, and Motion to Vacate Stay of Proceedings is made Pursuant to Federal Evidentiary Hearing -- 2254 7(a):

In General, If the Petition is not dismissed, the Judge may direct the Parties to expand the Record by submitting additional materials relating to the Petition. The Judge may require that these materials be authenticated.

This rule Provides that the Judge may direct that the record be expanded... An expanded record may also be helpful when an Evidentiary Hearing is ordered. At any time in Habeas Corpus Proceedings, when the Court considers it is Necessary to do so in order that a fair and meaningful Evidentiary Hearing may be held. So that Court may Properly dispose of matter as Law and Justice requires, either on its own motion or upon cause shown by Petitioner. It may issue such writs and take or authorize such Proceedings with respects to development, before or in conjunction with Hearing of Facts relevant to Claims advanced by Parties as may be necessary or appropriate in aid of its Jurisdiction and Agreeable to useages and Principle of Law. (See <u>Harris v. Nelson</u> (U.S. Cal 1969) 89 S.Ct. 1082, 394 U.S. 286, 22 L. Ed. 2d 281).

## Standard of Review

District Courts decision to expand

Record in Habeas Corpus case is Reviewed for abuse of discretion. (See <u>Levine v. Torvik</u> (1993) 986 F.2d 1506, 113 S.Ct. 3001, 509 U.S. 907, 125 L.Ed.2d 694).

Petitioner relies upon <u>Beetz v. Kelman</u> (1985) 773 F.2d 1026, 1027 N.1; <u>Brown v. Roe</u> (2002) 279 F.3d 742, 746 [28 U.S.C.A § 2254] and Penal Code Section -- 1258, as He is a laymen of the Law.

# DECLARATION OF RAHSAAN COLEMAN

I, Rahsaan Coleman, under the Penalty of Perjury declare:

I was tried and Convicted in the Superior Court of the County of Contra Costa.

I on October 19, 2007., filed a Petition for writ of habeas Corpus on the California Supreme Court, by handing said Petition to a member of the Prison Staff. The California Supreme Court **denied** the Petition on April 23, 2008.

A copy of that order is attached here to as Appendix 1.

Petitioner now files that Petition in this Court. The Petition raises the following issues:

1. Petitioner contends the Trial Court abused its discretion when it refused to strike one of Petitioner's

2

Prior Serious Felony Convictions Pursuant to Section 1385, Resulting in a Cruel and Unusual Conviction.

2. Petitioner contends the Trial Court erred when it concluded that it was compelled by the Three Strikes Law to sentence Petitioner consecutively For His two current conviction; In Fact, section 654 Prohibits Double Punishment

3. Petitioner contends the Trial Court erroneously Imposed a term for the firearm use enhancement in violation of the Prohibition against Double Punishment set forth in **Section 654**.

## Points and Authorities

As for the issues at bar in the accompany-ing Petition [SEE EXHIBIT A]... Petitioner States more specifically; Anything, including Priors and Mandatory sentences, can be struck on a finding that imposition of it would violate the Cruel and Unusual Punishment Prohibition found in the California and United States Constitution(s).

Apart from any argument that the sentence is cruel and unusual as a matter of Law, it can always be argued that imposition of that sentence to this Petitioner would be cruel and unus-ual as applied. (See Cuong Van Nguyen v. Knowles (2004) 2004 U.S. Dist. Lexis 7317, Ewing v. California 538 U.S. 11, 19; And also see People v. Dillion (1983) 34 Cal. 3d 441, People v. Superior Court (Beasely) [1984] 159 Cal. App. 3d 131).

1  No matter how mandatory the section at issue is,
2  cruel and unusual Punishment can always be used to
3  Prevent its use . . . U.S.C 8th Amendment, and
4  California Constitution Article 1, §§ 7, 15, and 16.
5     The Law governing a trial court's exercise
6  of its discretion to strike a Prior serious felony
7  conviction Pursuant to section 1385 is well established.
8  The Court(s) held in Ramirez V. Castro (2004) 365 F.3d
9  755, 758 ; People v. Superior Court (Romero) (1996) 13 Cal. 4th
10 497 that a trial court in a case charged under
11 the Three Strikes Law (§§ 667, subds. (b)-(i), 1170.12)
12 has the discretionary power to dismiss Prior felony
13 conviction allegations and findings in furtherance of
    Justice.
14    The trial court's ruling in Petitioner's case is
15 reviewable. A Court's exercise of its Discretion "must
16 Proceed in strict compliance with section 1385, and is
17 subject to review for abuse . . . " (Please Refer to Exhibit-
18 A.)
19    Petitioner Contends, the facts of His case do
    not trigger mandatory consecutive sentencing. The Three
20 Strikes Law Provides, "If there is a current conviction for
21 more than one felony count not committed on the same
22 occasion, and not arising from the same set of operative
23 facts, the Court shall sentence the defendant consecutively
24 on each count. The circumstances of Petitioner's
25 two crimes compel the conclusion that Section 654
26 Prohibits Double Punishment in His case.
27    The Court even stated on the Record that

1  If it had the 'Discretion', it would have sentence
2  Petitioner concurrently. (SEE Exhibit B of Exhibit A -
3  Motion to VACATE STAY of Proceedings and Petition for Review
4  AND EVIDENTIARY HEARING).

5
6      Section 654 applies to Petitioner's sentencing
7  under the Three Strikes law. The Court of Appeal in
8  People v. Danowski (1999) 74 Cal. APP. 4th 815 held that
9  "where, as here, the three strikes law does not mandate
10 consecutive sentencing, Section 654 applies to sentencing
11 under the three strikes law". (Id. at P. 824.) As Petitioner's
12 case is one where consecutive sentencing is not manda-
13 tory, Section 654 is applicable to His case.
14      The circumstances of Petitioner's two crimes
15 compel the conclusion that Section 654 Prohibits --
16 Double Punishment in His case. (See Rhoden v. Rowland,
17 10 F.3d 1457, 1462.).

18
19      Petitioner states, that the only argument
20 that can be made against 'dual use' of Priors is that
21 Penal Code Section 1170, subdivision (b), which the NEW
22 Law (I.E. THREE STRIKES law) did not Amend or ELIMINATE,
23 Provides that a sentencing court may not use the
24 same fact to increase a defendant's base term and also
25 to enhance His or Her sentence.
26      The Court in People v. Coleman (1989) 48 Cal.
27 3d 112, 163-164, Held that Penal Code Section 1170
28 barred a Court from using Prior convictions to Justify
29 imposition of an aggravated term and also to

Enhance the defendants sentence. (SEE ALSO --
Cunningham v. California (2007) 127 S. Ct. at pp. 863-
864 "This court has repeatly held that, under the sixth
amendment, An'l fact that exposes a defendant to a
greater potential sentence must be found by a Jury, not
A Judge, and established beyond a Reasonable Doubt,
NOT MERELY BY A PREPONDERANCE OF THE EVIDENCE".)

Furthermore, The sentencing court may not use
the fact that the Petitioner suffered the Prior conviction
to impose an aggravated term and a consecutive--
sentence. For the imposition of an enhancement
term for Personal use of a firearm (§12022.5, subd.(a))
violated section 654 because the enhancement term
appeared to be based on the same conduct as that
on which the term for Petitioner's conviction of
unlawful Possession of a firearm was based. (§12021,
subd. (a)(1)).

Thus Section 654 Prohibits imposition of the
enhancement term in Petitioner's case. ... It could thus
be argued that in addition to barring 'Dual use' of
Strikes to Select an aggravated term, Penal Code
Section 1170, subdivision (b), also bars dual use to
enhance under two different Prior sections. (See
United States v. Difrancesco (1980) 449 U.S. 117, 132; 101 S. Ct.
426, 434, 66 L. Ed. 2d 328; United States v. Arrellano-Rios
(1986) 799 F. 2d 520, 524.).

## In Light of Cunningham

Clearly Petitioner's claims 5 - 7, Raises

ISSUES that were highlighted in the United States
Supreme Court's decision in *Cunningham v. California*,
(2007) 127 S.Ct 856.

The imposition and elevation of Petitioner's
sentence was grossly outside of the Jury's verdict.
The Three Strikes Law; though established in the
indictment. It was never argued in front of a Jury,
Nor Proven beyond a Reasonable Doubt... In a
bifurcated trial after conviction the Jury through a
Preponderance of the evidence -- found that Petitioner
had Prior strikeable convictions.

The nature and Precepts of The Three
Strikes Law Enhancement, WERE Never elaborated
upon even at this stage of Petitioner's trial.
And when defense attorney 'tried' in a round about
way to Establish; to The Jury; the nature of The Three
Strikes Law - He was rebuffed by both the Trial
Court and Prosecution ... Petitioner has filed a
State Habeas Petition inregards to this violation(s);
Filed in the Cal. Supreme Court, Feb. 22, 2008; No S161111.

More Specifically, Petitioner became aware of
the Cunningham Ruling, as well as A Motion for Succesive
or Delayed Petition; during the course Preparation of
exhausting -- Thee Unexhausted issues in claims 5,
6, and 7 ... For Preparation of his Federal Petition.

Petitioner raises this issue briefly inorder to
not fall into the category of one who is engaged in
needless Piecemeal litigation. Petitioner has not at
all deliberately withheld, any one or two grounds for
federal Collateral relief at the time of filing His first

Application. (SEE <u>Sanders v. United States</u>, 373 U.S. 1, 83 S. Ct. 1068 -- H.R. Rep. No 1471, 94th Cong. 2d Sess at 5-6.) The decision in regards to <u>Cunningham</u> was not Known to Petitioner Until after the Motion To STAY Proceedings Was Granted... It was however mentioned on Network News in brief and in Passing, but the ruling and Legal case wasn't obtained until after Petitioner was engaged in this Process of exhausted thee Unexhausted issues, Highlighted herein.

Petitioner's over all Appeal from conviction and sentence, has been ongoing since SENTENCED back in 1999... Petitioner asks this Honorable Court to consider His Cunningham Petition if at all, after the California Supreme Court makes its decision in Petition No. S161111.

For the unexhausted issue's in the Present Petition, mirror's those in Cunningham--and the line of cases that under Pins its (i.e. Their) Legal arguments, and or Claims...

Moreover, this is why Petitioner ask for an Evidentiary Hearing on this issue, and the over all issue's outlined Here in throughout His Federal Writ. [To be entitled to an Evidentiary Hearing, Petitioner must demonstrate that (1) "He has alleged facts which, If Proved, Would entitle Him to relief and (2) An Evidentiary Hearing is required to Establish the truth of His allegations." Please See, <u>Harris I</u>, 692 F. 2d at 1197 (citing <u>Pierce</u>, 572 F. 2d at 1340-41; <u>Townsend v. Sain</u>, 372 U.S. 293, 312 (1963).]

Finally Petitioner contends, that he met the burden by establishing, through his specific allegations, which was supported by relevant Exhibits, the absence of substantial delay. (Please See: Refer to Appendix 1)

Although, in some situations, sufficiently specific allegations maybe enough to establish absence of substantial delay, the filing of and reference to such declarations frequently will be helpful, and maybe essential to sustain a -- Petitioner's burden of establishing absence of substantial delay... (See Exhibit A; of Petition To Vacate Stay of Proceedings and; Motion For Review and Evidentiary Hearing -- Appendix 1  Order Staying and Administratively closing case.) This exhibit supports Petitioner's substantial delay, thus He met the burden required by state courts.

Petitioner claims, under said Petition, are based on the Petition, the Exhibits appended to the Petition, all Records and files in this Court in case(s) No. C 04-4069 PJH(PR), A089743, and any evidence which maybe recieved by this Court at an Evidentiary Hearing held in connection with this Proceeding.

Wherefore Petitioner Respectfully Prays:

1. That This Court Vacate Stay of Proceedings;

2. That This Court Issue an Order Granting an Evidentiary Hearing;

3. That This Court Appoint Counsel and Grant Reasonable Ancillary Funds for an Investigator and Attorney Fees;

4. That This Court Issue an Order To Show Cause Upon Respondent;

5. That This Court Grant such Other Relief as may be Appropiate.

Dated. May 15th, 2008.

Respectfully Submitted.

*Mr. Rahsaan Coleman
Rahsaan Coleman
In Pro Per

# APPENDIX

CALIFORNIA SUPREME COURT'S
ORDER . . .

1

S157478

# IN THE SUPREME COURT OF CALIFORNIA

### En Banc

In re RAHSAAN COLEMAN on Habeas Corpus

The petition for writ of habeas corpus is denied. (See *In re Robbins* (1998) 18 Cal.4th 770, 780; *In re Clark* (1993) 5 Cal.4th 750.)

George, C. J., was absent and did not participate.

SUPREME COURT
**FILED**

APR **2 3** 2008

Frederick K. Ohlrich Clerk

_____

Deputy

**WERDEGAR**
_____
Acting Chief Justice

EXHIBIT

PETITION for Writ of HABEAS
CORPUS (STATE) TO EXHAUST
STATE ISSUES.

A

Rahsaan Coleman
Pelican Bay State Prison
P.O. Box 7500·D7·101
Crescent City, Ca. 95532
C.D.C.R.No. J24836
In ProPer

## In The Supreme Court of the State of California

| | |
|---|---|
| Rahsaan Coleman,<br>        Petitioner,<br><br>    V.<br><br>Robert A. Horel, Warden,<br>        Respondent.<br>On Habeas Corpus. | No._____<br>Petition For Review and An Evidentiary Hearing |

      To The Honorable Judge(s) of the Supreme Court of the State of California:

      Now Comes, Rahsaan Coleman, Petitioner in the above entitled action in and on his own behalf, and he moves the Court for evidentiary hearing in respect to the accompanying habeas application. This request for an Evidentiary Hearing is made Pursuant to California Penal Code Section(s) 1260

( 1 )

and 1484; and California Rules of Court Rule 260(c),
and the declaration and Points and Authorities,
attached hereto.

Petitioner relies on Penal Code section 1258 as
he is a layman of the law.

Dated._____

* _____

Rahsaan Coleman
Pelican Bay State Prison
P.O. Box 7500 D7·101
Crescent City, Ca. 95532
C.D.C.R No. J24836
In Pro Per

In The Supreme Court of the State of California

| | |
|---|---|
| Rahsaan Coleman, | No. _____ |
| Petitioner, | Declaration of Rahsaan |
| v. | Coleman; Points and |
| | Authorities, In Support of |
| Robert A. Horel, Warden, | Petition for An Evidentiary |
| Respondent, | Hearing |
| On Habeas Corpus. | |

I, Rahsaan Coleman, under the Penalty of Perjury declare:

I was tried and convicted in the Superior Court of the County of Contra Costa

I on September 13, 2007, filed a Petition for Writ of habeas Corpus on the Court of Appeal for the First Appellate District, Div.1; by handing said Petition to a member of the Prison Staff. The Court of Appeals denied the

Petition on October 4, 2007.

A copy of that order is attached hereto as exhibit.

Petitioner now files that Petition in this Court. The Petition raises the following issues:

1. Petitioner contends the Trial Court abused its discretion when it refused to strike one of Petitioners Prior Serious felony convictions Pursuant to Section 1385, Resulting in a Cruel and Unusual conviction.

2. Petitioner contends the Trial Court erred when it concluded that it was compelled by the Three Strikes Law to sentence Petitioner consecutively For His two current conviction; In fact, section 654 Prohibits Double Punishment.

3. Petitioner contends the Trial Court erroneously Imposed a term for the firearm use enhancement in violation of the Prohibition against Double Punishment set Forth in Section 654.

//// ////

//// ////

## Points and Authorities

### A. Habeas Corpus is a Proper Vehicle for the Presentation of Petitioner's Claims

The Superior Court of the State of California in and for the County of Contra Costa, in its decision, stated:

The court on its own motion takes Judicial notice of Petitioner's underlying docket, People v. Coleman, Contra Costa County Superior Court No. 9801408. That first Petitioner has failed to file an adequate record for writ review. (Sherwood v. Superior Court (1979) 24 Cal. 3d 183, 186.) The court simply cannot review Petitioner's claim without an adequate record.

And Secondly, the Petition is untimely. In Re Clark (1993) 5 Cal. 4th 750 (see also Superior Courts Ruling; Exhibit APPENDIX 1.)

Petitioner, does not concede any of his contentions, and or Issues raised in Attached Petition. For Petitioner filed state Habeas Corpus Petition; in response to a Federal Court Order to exhaust; unexhausted issues in state court. (See Exhibit A , and Appendix I of attached Petition.) Coleman v. McGrath, C-04-4069 PJH (PR).

The claims Presented in the accompanying Petition for Writ of habeas Corpus (Petition)

are that Petitioner was deprived of his constitutional rights against cruel and unusual Punishment, and Prohibition against Double Jeopardy. These constitutional claims could not have been Presented as effectively on appeal as it is herein because its factual basis rests, in Part, on evidence not contained in the record on appeal. ( In Re Hochberg (1970) 2 Cal. 3d 870, 875; See also, People v. Jackson (1970) 10 Cal. 3d 265, 268.)

In reference to the courts statement in regards to Petitioner not filing an adequate record for writ review, and or not lodging the Reporter's Transcript and the Clerk's Transcript; Petitioner assumed that being the Superior Court tried, convicted, and sentence Petitioner; There was indeed a complete Record of all Proceedings and Post and Prior filings. The Court in ( In Re Clark (1993) 5 Cal. 4th 750, 798, F.N. 35 :

California Practice differs from federal Practice in that Petitioner filing a Petition for writ of habeas corpus in a court of this state bears the initial burden of alleging the facts on which he relies to explain and Justify delay and/or a successive Petition. The court will take Judicial notice of its "own records and of the Prior Petitions filed by or on behalf of a Petitioner. (Evid. Code, § 452.) Because the record of the appeal and of any Prior Petition is readily available to this court..."

Petitioner filed all the necessary Portions of the Transcripts, He believed were conducive to Preparing a viable Petition for Habeas Corpus in State Courts.

Petitioner contends that he filed the present Petition in response to Federal Court order, and attached the order for evidence, explaining the nature of thee present Petition. Now Petitioner admits He is a Novice in regards to Legal (Jurisprudence) matters. And that He is basically Learning as He goes. Only when Petitioner filed a Federal habeas Corpus Petition, in the Northern District Court on September 15, 2004., was he aware of the un-exhausted issues. Petitioner mistakenly thought the order from the federal Court would illuminate, him being a layman of the Law.

Petitioner now states more specifically that the unexhausted issues, were originally raised on direct appeal, but the federal Constitutional connotations were not addressed Properly by Appellate Lawyer Victor J. Morse. As in In Re Saunders (1970) 2 Cal. 3d 1033, 1040, 88 Cal. Rptr. 633, 472 P.2d 921; Petitioner was not aware of the Law Pretaining to exhaustion issues -- And once made aware of Law Pretaining to these issues; Petitioner promptly filed the Present Petition inorder to meet the requirements of the federal Court order. (See Also In Re Perez (1966) 65 Cal. 2d 224, 228, 53 Cal. Rptr. 414, 418 P.2d 6

SEE Also APPENDIX 2 [Motion to stay Proceedings.].)

The California Supreme Court stated in In Re Clark; supra, 5 Cal. 4th at p. 805 :

For instance, an incarcerated inmate who is unrepresented by counsel and unaware of his or her legal rights may learn of a meritorious ground for relief only after unsuccessfully challenging the conviction on another ground. In that situation the Petitioner will have shown justification for the successive Petition, thus warranting the court's consideration of the merits of the Petition.

As for the issues at bar in the accompanying Petition. Petitioner states more specifically, Anything including Priors and mandatory sentences, can be struck on a finding that imposition of it would violate the cruel and unusual Punishment Prohibition found in the California and United States constitutions. Apart from any arguement that the sentence is cruel and unusual as a matter of law, it can always be argued that imposition of that sentence to Petitioner would be cruel and unusual as applied. (See People v. Dillion (1983) 34 Cal. 3d 441; People v. Beasely (Superior Court) (1984) 159 Cal. App. 3d 131.)

No Matter How Mandatory The Section(s) [i.e 667 and 1170.12] at issue are, cruel and unusual Punishment can always be used to

Prevent its use.

As 654 Prohibits double Punishment as does the fifth amendment; In People v. Newsome (1997) 57 Cal. APP 4TH 902, states the Trial Courts misunderstanding Had to do with whether consecutive sentences were mandatory, under 667(c) (6); IT mistakenly thought they were. CA.3 Remands for resentencing, Noting that the Record shows the Trial Court thought it had no discretion. "Where the record ... is not 'silent' but shows the Court did misunderstand its discretion, A Remand is appropiate People v. Smith (1997) 59 Cal. APP 4TH 46."

The Facts of Petitioners' case do not trigger mandatory consecutive sentencing. The Three Strikes Law Provides, "If there is a current conviction for more than one felony count not committed on the same occassion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count. The circumstances of Petitioner's two crimes compel the conclusion that section 654 Prohibits double Punishment in His case.

In regards to the Dual use of Priors Penal code Section 1170, subdivision (b), which the New Law did not amend or eliminate, Provides that a sentencing court may not use the same fact to increase a defendants' base term and also to

enhance His or Her sentence. The court in People v. Coleman (1989) 48 Cal. 3d 112, 163-164; Held that Penal code Section 1170 Barred a Court from using Prior conviction(s) to Justify imposition of an aggravated term and also to enhance the defendants' sentence.

Petitioner contends that; "because no appeal lies from the denial of a Petition for writ of habeas corpus, a Prisoner whose Petition has been denied by the Superior Court can obtain review of His claim(s) only by filing of a new Petition in the Court of Appeal. The Ca. Supreme Court reference to and disscussion of successive Petitions has No application to that Practice, or to the filing of an original Petition in the Supreme Court (Ca.) after denial of a Petition by the Court of Appeal." (See In Re Trombley (1948) 31 Cal. 2d 801, 804, fn. 1, 193 P. 2d 734.)

Furthermore, in raising claims, via, state habeas Corpus it is most important that Petitioner allege all the material facts known in support of the claim. (cf. Keeney v. Tamayo-Reyes (1992) 504 U.S. 1 ; Rhoden v. Rowland 10 F. 3d 1457, 1460 (9th cir. 1993).) Since, both the legal claims and the operative facts supporting the claims must be Presented in order to exhaust; the addition, in federal court of a new fact or facts, not Presented to the state courts that substantially alters the claim may raise

exhaustion Problems. (<u>Nevius v. Summer</u>(1988) 852 F. 2d 463, 470; <u>Aiken v. Spalding</u> (1988) 841 F. 2d 881, 883.)

With this in mind, not only should all known material facts in support of a habeas corpus claim be pled in State Court, but Petitioner must necessarily request an evidentiary hearing that those material facts that are collateral may be fully developed.

The new 28 U.S.C. 2254(e)(2) Provision indicates, that "if the applicants have failed to develop the factual basis of a claim in state court," the federal court "shall not hold" an evidentiary hearing" on the claim" unless (1) "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty," and (2) one of two of the following situations exist: the claim relies on "a factual predicate that could not have been previously discovered through the exercise of due diligence," or a new rule of constitutional law made retroactive to collateral cases by the United States Supreme Court that was previously unavailable.

More importantly, this new Provision screams out for an equitable interpretation or exception. It would seem that if the State itself is responsible for the failure to develop the facts (Via the refusal to Provide discovery personally

funding, and a hearing) the Federal court should not be barred from inquiring into the facts which under-line the constitutional claim. For, if the state can essentially preclude Federal hearings by arbitrarily denying state prisoners any process, the Federal habeas Corpus right would be meaningless and the procedures would almost certainly offend the due process and Suspension Clause(s) guarantees. That is a Petitioner does "fail to develop the facts, if the state court unfairly refuses to allow a reasonable opportunity for factual development.

Petitioner understands, that this Court, as a Court of appeal cannot take testimony directly; however, in the event, an order show cause is issued, this can return this action before a Superior Court. (In Re Hochberg supra, 2 cal. 3d at 873.) Alternatively this court can appoint a referee to determine factual issues necessary for the adjudication of the habeas Corpus Petition. (In Re Weber (1974) 11 Cal. 3d 704; 114 Cal. Rptr. 429.)

Of course, the burden of proving that the Petition is timely, and that the claims are of a potentially meritorious nature, rest with Petitioner. In Re Swain 34 Cal. 2d 300, 304; 209 P. 2d 793." It is also the rule that 'a convicted defendant must fully disclose his reasons for delaying in the presentation of the facts upon which he would have a final Judgement overturned. (In Re Wells (1967) 67 Cal. 2d 873,

875; 64 Cal. Rptr. 317, 434 P. 2d 613.)

Indeed, because the burden of proof lay upon Petitioner, that He is requesting this Honorable Court to hold an Evidentiary Hearing. Because, contrary to the Superior Court's decision to deny the Petition, as barred pursuant to (In Re Waltrues (1965) 62 Cal. 2d 218, 225; In Re Dixon (1953) 41 Cal. 2d 756, 759; In Re Terry (1971) 4 Cal. 3d 911, 927.): an application for habeas corpus relief does not substitute for a second appeal. The Direct Appeal was inadequate, because the Constitutional Claims could not have been presented as effectively on appeal because their factual basis rest in part on evidence not contained in the record on appeal. (In Re Hochberg supra, 2 Cal. 3d at 875.) Save Habeas Corpus Petitioner has no form of relief.

Accordingly, it would not be just for state Court to deny Petitioner the opportunity to fully develop the factual basis for his cruel and unusual punishment and Double Jeopardy claim(s), and, later, assert that the Federal Court is barred from doing so, Pursuant to 28 U.S.C. 2254 (e)(2).

Thus, Petitioner request an Evidentiary Hearing, where at These constitutional claims can be explored and Petitioner Properly sentenced.

Petitioner claims, under said Petition, are based on the Petition, the exhibits appended

to the Petition, all records and files in this
Court in case no. A089743, and any evidence which
may be received by this Court at an evidentiary
hearing held in connection with this Proceeding.

Wherefore Petitioner Respectfully Prays:

1. That this Court issue an order to show cause
upon Respondent;

2. That this Court issue an order granting an
Evidentiary Hearing;

3. That this Court appoint Counsel and grant reason-
able ancillary funds for an investigator and Attorney fees;

4. That this Court grant such other relief as may
be appropiate.

Dated. _____, 200

Respectfully Submitted,

Rahsaan Coleman
In Pro Per

# APPENDIX

Court of Appeals ORDER
DENYING PETITION

A-1

COURT OF APPEAL, FIRST APPELLATE DISTRICT
350 MCALLISTER STREET
SAN FRANCISCO, CA 94102
DIVISION 1





**FILED**

OCT 0 4 2007

Court of Appeal - First App. Dist.
DIANA HERBERT

By _____

In re RAHSAAN COLEMAN on Habeas Corpus.

A119087
Contra Costa County No. 9801408

BY THE COURT:

      The petition for writ of habeas corpus and the request for an evidentiary hearing is denied.

The justices participating in this matter were:

Presiding Justice Marchiano, Justice Stein and Justice Swager

Date:    **OCT 0 4 2007**      MARCHIANO, P.J.P.J.

orcc1a

APPENDIX

1

SUPERIOR COURT'S ORDER
DENYING PETITION



AUG 2 3 2007

K. TORRE CLERK OF THE COURT
SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF CONTRA COSTA
By_____
Deputy Clerk

Superior Court of the State of California

In and For the County of Contra Costa

No. 071051-7

In re Rahsaan Coleman,
On Habeas Corpus.

_____/

Decision on Pro. Per.
Petition for Writ of
Habeas Corpus.

[Underlying docket,
No. 980140-8.]

I. Background.

The court, on its own motion, takes judicial notice of petitioner's underlying criminal docket as set forth above, including the unpublished Court of Appeal decision filed on June 20, 2001. In that docket, petitioner was convicted, following jury trial, of voluntary manslaughter, PC 192(a), and possession of a firearm by a felon, PC 12021(a). An enhancement charging use of a firearm was also found to be true. Petitioner subsequently was sentenced to 59 years to life as a three strike defendant on December 17, 1999. A timely appeal was taken and the conviction and judgment were affirmed. The California Supreme Court denied review on September 19, 2001. The present verified petition for writ of habeas corpus was filed on July 10, 2007.

A. Federal Habeas Petition.

In June, 2007 the U.S. District Court for the Northern District of California issued an order in Coleman v McGrath, C-04-4069 PJH (PR) entitled "Order Staying and Administratively Closing Case," wherein the court 1.) stayed the federal habeas petition

case to allow petitioner to present his unexhausted issues in state court and 2.) administratively closed the case pending resubmission by petitioner in conformance with their order, i.e., show state court exhaustion.

The three unexhausted issues, according to the District Court, were petitioner's claim that 1.) his sentence was cruel and unusual, 2.) that his double jeopardy rights were violated by being sentenced on two offenses which were part of the same series of events and  3.) that his double jeopardy rights were violated by enhancement of the sentence for use of a firearm.

## B. Contentions in the Petition.

Petitioner raises numerous contentions in the present submission.  The contentions may be grouped according to whether they are responsive to the federal district court's order, supra, on the one hand, and what appears to be regurgitated appellate claims on the other hand.   Thus, with respect to the former, petitioner claims he was deprived of his federal constitutional right against cruel and unusual punishment and that his rights against double jeopardy were violated "in that the trial court abused its discretion when it refused to strike one of petitioner's serious felony convictions pursuant to PC 1385, the trial court erred when it concluded that it was compelled by the three strike law to sentence petitioner consecutively for his two current convictions; in fact, section 654 prohibits double punishment, and the trial court erroneously imposed a term for the firearm use enhancement in violation of the prohibition against double punishment set for in section 654." (Pet., p.8: 18 – 9: 1.)

As to the regurgitated claims, petitioner raises two claims of instructional error, error when the trial court denied his first motion for new trial wherein he claimed ineffective assistance of counsel  for the failure to present evidence to establish that he had suffered a concussion and was unconscious at the time he shot the victim, error at his second motion for new trial again based on ineffective assistance of counsel for failing to present evidence of post traumatic disorder, abuse of discretion when the trial court declined to strike a prior serious felony alleged as a strike, error when the court concluded it was compelled to sentence consecutively on his two current convictions, and error when the court imposed a term for the firearm use in violation of double punishment pursuant to PC 654.

In support of the petition petitioner has filed a 44 page points and authorities with extensive references to the reporter's transcript, a copy of the federal district court's June 25, 2007 Order, a letter from his appellate counsel, 2 pages from petitioner's sentencing proceedings, and pages 45 to 60 from petitioner/appellant's opening brief in the case. The reporter's transcript and clerk's transcript of petitioner's trial have not been lodged with the petition.

2

## II. Discussion.

### A. Generally.

The court has carefully read and considered the within cause and now denies same for the following reasons. First, petitioner has failed to file an adequate record for writ review. (Sherwood v Superior Court (1979) 24 Cal.3d 183, 186.) The court simply cannot review petitioner's claims without an adequate record.

Second, the petition is untimely. The clerk's file contains copies of two denials of habeas petitions from the Court of Appeals filed December 23, 2002 and March 3, 1999. (See In re Clark (1993) 5 Cal.4th 750 (petitioner must plead in a successive or second petition why he did not raise an issue in a first habeas petition, i.e., petitioner entitled to one timely filed petition for habeas corpus raising all issues.) Petitioner has failed to meet Clark's pleading requirement in this successive petition. Further, in order to avoid the bar of untimeliness, petitioner has the burden of establishing either (1) the absence of substantial delay (id., 5 Cal.4th at 782 – 784), (ii) good cause for the delay (id., 5 Cal.4th at 783 – 787), or (iii) that his claim falls within an exception to the bar of untimeliness. (Id., 5 Cal.4th at 797 – 798.) Petitioner has failed to meet his burden of establishing that his petition is timely, good cause justifies the delay or that an exception to the bar of untimeliness applies.

### B. Specifically.

Petitioner claims his three strike sentence is cruel and unusual. The claim has no merit. The three strike law repeatedly has been held not to violate the federal and California constitutional provisions that prohibit cruel and unusual punishment either on its face or as applied. (See, e.g., People v Mantanez (2002) 98 Cal.App.4th 354, 359, with citations; People v Sullivan (2007) 151 Cal.App.4th 524, 573.) Failure to lodge a transcript of the proceedings on the motion to strike prior felony conviction and a transcript of the sentencing proceedings precludes judicial review of this claim.

Petitioner also claims his right against double jeopardy was violated. The court finds the claim unintelligible. To the extent petitioner is claiming that his right against double jeopardy was violated when his sentence was enhanced by the use of prior convictions alleged as "strikes," that claim, on double jeopardy grounds, has been rejected by the US Supreme Court. (See Monge v California (1998) 524 US 721.) To the extent petitioner is claiming a double jeopardy violation when he was convicted of two offenses arising from the same series of events, the claim is without merit. Possession of a firearm is a separate offense from its use (see below), including its use in the manslaughter offense. (See People v Durant (1999) 68 Cal.App.4th 1393; People v Lawrence (2000) 24 Cal.4th 219.) Double jeopardy has no application to the enhancement for use of a firearm as petitioner was subject to only a single trial. To the extent petitioner conflates constitutional double jeopardy with either the prohibition against double punishment under PC 654 or receiving a consecutive sentence for the

3

two offenses for which he was convicted, the latter two contentions are without merit.

C. Remaining Claims.

The remaining claims and contentions are precluded by the rule that habeas corpus cannot serve as a second appeal. Thus, issues that were raised or could have been raised on appeal but were not, cannot be renewed in a petition for habeas corpus. (In re Terry (1971) 4 Cal.3d 911, 927; In re Waltreus (1965) 62 Cal.2d 218, 225; In re Dixon (1953) 41 Cal.2d 756, 759.)

The court, in this regard, would note the following from the opinion of the court of appeal in petitioner's underlying case: "In this appeal, he [appellant/petitioner] complains the trial court erred by declining to give instructions requested by the defense, denying his two motions for new trial, refusing to strike a prior conviction under section 1385, and imposing consecutive sentences. We conclude that no instructional errors were committed, the motions for new trial were properly denied, and no sentencing error occurred." (People v Coleman, A089743, Slip Op., p. 1, filed June 20, 2001.) Thus, petitioner's remaining claims are not cognizable in this habeas petition.

Finally, the court would note that the claim the trial court erred when it imposed a term for use of a firearm in violation of double punishment pursuant to PC 654 was also raised and rejected in petitioner's appeal: "[W]e reject appellant's final contention that the court erred by imposing a four year term for the firearm use enhancement." (Id., p. 23.)

For all of the above stated reasons, the petition for writ of habeas corpus is devoid of merit.

V. Disposition.

Petition denied.

Dated: _August 23_ , 2007

John C. Minney,
Judge of the Superior Court

Cc: Petitioner
980140-8

jj/moss33t

4

# APPENDIX

2

Motion to Stay Proceedings in
the Northern District Court
[INFormation in regards to Petitioner's
Lack of Knowledge of Jurisprudence
matters'.] AND INSIGHT INTO THE
DELAYED OR Successive Petition.

APP 2

1 RAHSAAN COLEMAN
2 PELICAN BAY STATE PRISON
3 P.O. BOX 7500 · S.H.U D7·101
4 CRESCENT CITY, CALIF. 95532
5 C.D.C.R No. J24836
6 IN PRO PER

7
8              IN THE UNITED STATES DISTRICT COURT
9        FOR THE NORTHERN DISTRICT OF CALIFORNIA
10               SAN FRANCISCO DIVISION
11
12
13 RAHSAAN COLEMAN,                    No. C0404069 PJH (PR)
14              PETITIONER           MOTION TO SUPERSEDEAS
15        V.                          OR STAY OF PROCEEDINGS,
16 ROBERT A. HOREL; WARDEN,          AND MEMORANDUM OF
17              RESPONDENT            POINTS AND AUTHORITIES
18
19     TO THE HONORABLE PRESIDING JUDGE AND ASSOCIATE
   JUSTICES OF THE NORTHERN DISTRICT OF CALIFORNIA:
20
21     PLEASE TAKE NOTICE THAT RAHSAAN COLEMAN,
22 PETITIONER IN THE ABOVE ENTITLED ACTION IN AND ON
23 HIS OWN BEHALF, MOVES THE COURT FOR APPLICATION FOR
24 SUPERSEDEAS OR STAY OF PROCEEDINGS.
25
26     MORE SPECIFICALLY, PETITIONER STATES:
27
28

1  PURSUANT TO THE  28 U.S.C.A § 2254(b)(1)(A)
2  PROVISION, DEFENDANT (PETITIONER) HEREBY MAKES APPLICATION
3  TO THE ABOVE-ENTITLED COURT FOR AN ODER STAYING
4  THE PROCEEDINGS IN THIS MATTER.

5      THIS APPLICATION IS BASED ON THE GROUND THAT
6  A FEDERAL DISTRICT COURT HAS DISCRETION TO STAY A
7  MIXED HABEAS PETITION CONTAINING EXHAUSTED AND
8  UNEXAUSTED CLAIMS TO ALLOW THE PETITIONER TO PRESENT
9  HIS UNEXAUSTED CLAIMS TO THE STATE COURT(S) IN THE
10  FIRST INSTANCE, AND THEN TO RETURN TO FEDERAL
11  COURT FOR REVIEW OF HIS PERFECTED PETITION.

12      ALSO, THIS APPLICATION IS BASED ON THE GROUND
13  THAT THE APPEAL FROM JUDGEMENT IN THIS HABEAS
14  CORPUS PROCEEDING, IS TAKEN IN GOOD FAITH AND
15  REPRESENTS CONTESTED LEGAL ISSUES TO BE
16  CONSIDERED BY THE DISTRICT COURT.

17      THE APPLICATION IS BASED ON THIS NOTICE, ON
18  THE NOTICE OF APPEAL AND POINTS TO BE RAISED ON
19  APPEAL SERVED AND FILED HEREWITH PURSUANT TO
20  28 U.S.C.A. § 2254, ON THE ATTACHED MEMORANDUM
21  OF POINTS AND AUTHORITIES, ON ALL THE PAPERS
22  AND RECORDS ON FILE IN THIS ACTION, AND SUCH
23  ORAL AND DOCUMENTARY EVIDENCE AS MAYBE
24  PRESENTED AT THE HEARING OF THIS APPLICATION.

25  DATED: _____

                    IN PROPRIA PERSONAM
                    MR. RAHSAAN COLEMAN

# MEMORANDUM OF POINTS AND AUTHORITIES

A. THE DISTRICT COURT HAS DISCRETION TO STAY PROCEEDING(S), IN PURSUANT TO 28 U.S.C.A. § 2254(b)(1)(A) THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996 (AEDPA); DOES NOT DEPRIVE DISTRICT COURTS OF THEIR AUTHORITY TO ISSUE STAYS WHERE SUCH A STAY WOULD BE A PROPER EXERCISE OF DISCRETION, BUT IT DOES CIRCUMSCRIBE THEIR DISCRETION. (SEE RHINES V. WEBER, 544 U.S. 269 (2005).)

B. THE DISTRICT COURT SHOULD GRANT A STAY OF PROCEEDINGS, WHEN THE GROUNDS URGED FOR REVERSAL ARE DEBATABLE AND THE APPEAL IS TAKEN IN GOOD FAITH; AND HAS SHOWN GOOD CAUSE.

THE ISSUES ON APPEAL IN THIS CASE PRESENT DEBATABLE QUESTIONS FOR CONSIDERATION BY THE DISTRICT COURT. THE MERE FACT THAT PETITIONER NEGLECTED TO INDICATE "FEDERAL", OR STATE WHICH U.S. CONSTITUTIONAL PROTECTION WAS VIOLATED, WAS DUE IMPART TO PETITIONER BEING A NOVICE IN REGARDS TO LEGAL (JURISPRUDENCE) MATTERS. AND ALSO OF PETITIONER'S UNDERSTANDING OF STATE APPEALS ATTORNEY'S MISSIVE INDICATING: "ANY OF THE ARGUMENTS FROM APPEALS BRIEF; ARE BASED ON YOUR (PETITIONER'S) RIGHTS UNDER THE UNITED STATES CONSTITUTION. (SEE APPENDIX 1 ATTORNEY VICTOR J. MORSE'S MISSIVE TO THE PETITIONER.)

1  PETITIONER'S THREE (3) ISSUES AT BAR; ISSUE V:
2  THE TRIAL COURT ABUSED ITS DISCRECTION WHEN IT
3  REFUSED TO STRIKE ONE OF PETITIONER'S PRIOR SERIOUS
4  FELONY CONVICTION PURSUANT TO SECTION 1385; POSED
5  A CRUEL AND UNUSUAL SENTENCE IN VIOLATION OF THE
6  EIGTH AMENDMENT PROTECTION OF THE U.S.C.
7  THE LAW GOVERNING A TRIAL COURT'S EXERCISE OF ITS
8  DISCRETION TO STRIKE A PRIOR SERIOUS FELONY CONVICTION
9  PURSUANT TO SECTION 1385 IS WELL ESTABLISHED.
10  THE SUPREME COURT HELD IN PEOPLE V. SUPERIOR
    COURT (ROMERO) (1996) 13 CAL. 4TH 497; THAT A TRIAL
11  COURT IN A CASE CHARGED UNDER THE THREE STRIKES
12  LAW (§§ 667, SUBDS. (b)-(i), 1170.12) HAS THE
13  DISCRETIONARY POWER TO DISMISS PRIOR FELONY
14  CONVICTION ALLEGATIONS AND FINDINGS IN FURTHERANCE
15  OF JUSTICE. (SEE EWING V. CALIFORNIA, 538 U.S. 11, 15.)
16  THE GUIDELINES SET FORTH IN PEOPLE V. WILLIAMS,
17  (1998) 17 CAL 4TH 148, IN WHICH THE SUPREME COURT
18  INDICATED "HOW TRIAL COURTS AND APPELLATE COURTS
19  SHOULD UNDERTAKE TO RULE AND REVIEW IN THIS
20  AREA". (Id. AT P. 152.)
21  (SEE BROWN V. MAYLE, 283 F.3d 1019, 1036)
22  TRIAL COURT'S RULING IN APPELLANT'S (PETITIONER'S)
23  CASE IS REVIEWABLE, A COURT'S EXERCISE OF IT'S
24  DISCRETION " MUST (BE) PROCEED IN STRICT COMPLIANCE
25  WITH SECTION 1385, AND IS SUBJECT TO REVIEW
26  FOR ABUSE . . . . "
27  FURTHERMORE, THE NATURE AND
28

1  CIRCUMSTANCES OF PETITIONER'S PRESENT FELONIES
2  SUPPORT THE CONCLUSION THAT PETITIONER MUST
3  BE DEEMED TO BE OUTSIDE THE SPIRIT OF THE
4  THREE STRIKES LAW'S PUNISHMENT PROVISION FOR
5  "THIRD STRIKE" DEFENDANTS. PETITIONER'S CONVICTION
6  OF VOLUNTARY MANSLAUGHTER (§ 192, SUBD. (a)) ESTABLISHES
7  THAT THE JURY CONCLUDED EITHER THAT PETITIONER
   KILLED IN A SUDDEN QUARREL OR HEAT OF PASSION
8  IN RESPONSE TO PROVOCATION FROM THE VICTIM, OR
9  THAT HE KILLED WITH AN UNREASONABLE BUT GOOD
10 FAITH BELIEF THAT HE HAD TO KILL TO DEFEND HIM-
11 SELF AND OTHERS FROM THE VICTIM. (SEE People V.
12 BARTON, 12 CAL 4TH. 186, 199., AND MALDONADO V.
13 ALAMEIDA, 96 FED. APPX. 445 p. 447.)
14       THESE ARE CLEARLY MITIGATING CIRCUMSTANCES
15 THAT STRONGLY SUGGEST THAT PETITIONER IS NOT
16 THE TYPE OF HARDCORE RECIDIVIST THAT THE THREE
17 STRIKES LAW WAS DESIGNED TO ADDRESS.
18
19       ISSUE II:
20            THE TRIAL COURT ERRED WHEN IT CONCLUDED
21 THAT IT WAS COMPELLED BY THE THREE STRIKES LAW
22 TO SENTENCE PETITIONER CONSECUTIVELY FOR HIS
23 TWO CURRENT CONVICTIONS; IN FACT, SECTION 654
24 PROHIBITS DOUBLE PUNISHMENT BECAUSE PETITIONER
25 TWO CRIMES WERE PART OF AN INDIVISIBLE
26 COURSE OF CONDUCT. THESE ACTIONS POSED A
27 VIOLATION UNDER THE FIFTH AMENDMENT PROHIBITION
28 AGAINST DOUBLE JEOPARDY

1  PROTECTED BY THE UNITED STATES CONSTITUTION.

2  OVER DEFENSE OBJECTION (RT 30-31, 44 [12/17/99];

3  CT 762-769), THE TRIAL COURT ERRONEOUSLY SENTENCED

4  PETITIONER TO TWO CONSECUTIVE INDETERMINATE

5  TERMS OF 25 YEARS TO LIFE IMPRISONMENT FOR HIS

6  TWO CURRENT FELONY CONVICTIONS, BECAUSE IT

7  MISTAKENLY DETERMINED THAT THE THREE STRIKES

8  LAW REQUIRED SUCH SENTENCING. (CT 814-816;

9  RT 19-40, 40-42 [12/19/99].)

10  THE COURT EVEN STATED ON THE RECORD THAT

11  IF IT HAD THE DISCRETION, IT WOULD HAVE

12  SENTENCED PETITIONER CONCURRENTLY.

13  (RT 41-42 [12/17/99].) CONTRARY TO THE TRIAL COURT'S

14  DETERMINATION, THE THREE STRIKES LAW PERMITTED

15  THE COURT THE DISCRETION TO SENTENCE PETITIONER

16  CONSECUTIVELY OR CONCURRENTLY, BECAUSE PETITIONER'S

17  TWO CRIMES WERE COMMITTED ON THE SAME

18  OCCASION AND AROSE OUT OF THE SAME SET

19  OF OPERATIVE FACTS.

20  HOWEVER, AS THE TWO CRIMES WERE PART OF

21  AN INDIVISIBLE COURSE OF CONDUCT, THE FIFTH

22  AMENDMENT PROHIBITION AGAINST DOUBLE JEOPARDY,

23  AND THE STATUTORY PROHIBITION AGAINST DOUBLE

24  PUNISHMENT SET FORTH IN SECTION 654

25  PROHIBITS CONSECUTIVE SENTENCING, AND IN

26  FACT REQUIRES THAT THE SENTENCE ON ONE

27  OF PETITIONER'S CONVICTIONS BE STAYED. THUS

28  THE TRIAL COURT IMPOSED AN ERRONEOUS SENTENCE.

1    THE FACTS OF PETITIONER'S CASE DO NOT
2    TRIGGER MANDATORY CONSECUTIVE SENTENCING.
3    THE THREE STRIKES LAW PROVIDES, "IF THERE IS
4    A CURRENT CONVICTION FOR MORE THAN ONE FELONY
5    COUNT NOT COMMITTED ON THE SAME OCCASION,
6    AND NOT ARISING FROM THE SAME SET OF
7    OPERATIVE FACTS, THE COURT SHALL SENTENCE
     THE DEFENDANT CONSECUTIVELY ON EACH COUNT..."
8    ( §§ 667, SUBD. (C)(6), 1170.12, SUBD. (a)(6).)
9
10   THE SUPREME COURT IN PEOPLE V. LAWRANCE (2000)
11   24 CAL. 4TH 219 ELABORATED ON THE MEANING OF
12   THESE TERMS. THE COURT EXPLAINED, "IF THERE
     ARE TWO OR MORE CURRENT FELONY CONVICTIONS' NOT
13   COMMITTED ON THE SAME OCCASION,' I.E., NOT COMMITTED
14   WITHIN CLOSE TEMPORAL OR SPATIAL PROXIMITY
15   OF ONE ANOTHER, AND NOT SHARING COMMON ACTS
16   OR CRIMINAL CONDUCT THAT SERVES TO ESTABLISH(ED)
17   THE ELEMENTS OF THE CURRENT FELONY OFFENSES,
18   OF WHICH DEFENDANT STANDS CONVICTED, THEN
19   'THE COURT SHALL SENTENCE THE DEFENDANT
20   CONSECUTIVELY ON EACH COUNT' PURSUANT TO
21   SUBDIVISION (C)(6). " (Id. AT P. 233.)
22       CONSECUTIVE SENTENCING IS NOT MANDATED IN
23   PETITIONER'S CASE BECAUSE HIS TWO CRIMES WERE
24   COMMITTED ON THE SAME OCCASION, AND THEY AROSE FROM
25   THE SAME SET OF OPERATIVE FACTS, AS THOSE TERMS
26   HAVE BEEN EXPLAINED BY THE SUPREME COURT.
27       NOT ONLY DID THE TRIAL COURT
28

1    ERRONEOUSLY SENTENCE PETITIONER TO
2    CONSECUTIVE TERMS UNDER THE THREE STRIKES LAW,
3    THE TRIAL COURT ALSO VIOLATED THE PROHIBITION
4    AGAINST DOUBLE PUNISHMENT (JEOPARDY) SET FORTH
5    IN SECTION 654 AND THEE FIFTH AMENDMENT
6    PROHIBITION, PROTECTED UNDER THE UNITED STATES
7    CONSTITUTION, WHEN IT POSED CONSECUTIVE TERMS.
8         THIS IS SO BECAUSE SECTION 654 PROHIBITS
9    PUNISHING PETITIONER FOR BOTH HIS CONVICTION
10   OF VOLUNTARY MANSLAUGHTER (§ 192, SUBD. (a)) AND HIS
11   CONVICTION OF POSSESSION OF A FIREARM BY A FELON
12   (§ 12021, SUBD. (a)(1)).
13        THE CIRCUMSTANCES OF PETITIONER'S TWO
14   CRIMES COMPEL THE CONCLUSION THAT SECTION 654
15   PROHIBITS DOUBLE PUNISHMENT IN HIS CASE. THE
16   SUPREME COURT IN PEOPLE V. BREZ (1979) 23 CAL. 3d
17   545 EXPLAINED THAT SECTION 654 PROHIBITS A
18   COURT FROM IMPOSING DOUBLE PUNISHMENT NOT
19   ONLY WHERE THERE HAS BEEN "BUT ONE ACT
20   IN THE ORDINARY SENSE, BUT ALSO WHERE THERE
21   WAS A COURSE OF CONDUCT WHICH VIOLATED MORE
22   THAN ONE STATUTE BUT NEVERTHELESS CONSTITUTED
23   AN INDIVISIBLE TRANSACTION . . . ." (Id. at P. 551.)
24        THE TWO CRIMES IN PETITIONER'S CASE
25   CONSTITUTED AN INDIVISIBLE TRANSACTION BECAUSE
26   THEY OCCURRED SIMULTANEOUSLY. THUS SECTION 654
27   APPLIES TO PROHIBIT DOUBLE PUNISHMENT IN THIS
28   CASE. (SEE RHODEN V. ROWLAND, 10 F. 3d 1457
     P. 1462.)

ISSUE VII:

THE TRIAL COURT ERRONEOUSLY IMPOSED A TERM FOR THE FIREARM USE ENHANCEMENT IN VIOLATION OF THE PROHIBITION AGAINST DOUBLE (JEOPARDY) PUNISHMENT SET FORTH IN SECTION 654, AND ALSO; THE FIFTH AMENDMENT PROHIBITION PROTECTED BY THE UNITEDSTATES CONSTITUTION.

THE TRIAL COURT VIOLATED THE U.S. C's FIFTH AMENDMENT PROHIBITION AGAINST DOUBLE JEOPARDY, WHEN IT IMPOSED AN ADDITIONAL FOUR YEAR TERM FOR THE FIREARM USE ENHANCEMENT PURSUANT TO SECTION 12022.5, SUBDIVISION (a). (CT 814-816.) A FACT UNDERLYING AN ENHANCEMENT CANNOT DO DOUBLE DUTY; IT CAN NOT BE USED TO IMPOSE AN UPPER TERM SENTENCE AND, ON TOP OF THAT, AN ENHANCED TERM. (PENAL CODE 1170(b)) WHERE PERMITTED BY STATUTE, HOWEVER, A JUDGE MAY USE A FACT QUALIFYING AS AN ENHANCER TO IMPOSE AN UPPER TERM RATHER THAN AN ENHANCED SENTENCE. CAL. RULE 4.420(c).

THE PROHIBITION ON DOUBLE PUNISHMENT SET FORTH IN 654 REQUIRES THAT THE FIREARMS USE ENHANCEMENT TERM BE STAYED IN PETITIONER'S CASE. THE TRIAL COURT SHOULD HAVE FOLLOWED THE REASONING IN PEOPLE V. MUSTAFAA (1994) 22 CAL. APP. 4TH 1305, IN WHICH THE COURT OF APPEAL FOUND THAT THE TRIAL COURT'S IMPOSITION OF AN ENHANCEMENT TERM FOR PERSONAL USE OF A FIREARM (§12022.5, SUBD. (a)) VIOLATED

1  SECTION 654 BECAUSE THE ENHANCEMENT TERM
2  APPEARED TO BE BASED ON THE SAME CONDUCT
3  AS THAT WHICH THE TERM FOR DEFENDANT'S
4  CONVICTION OF UNLAWFUL POSSESSION OF A FIREARM
5  (§ 12021.1, SUBD.(a)) WAS BASED. THUS CLEARLY
6  IN VIOLATION OF THE UNITED STATES CONSTITUTION-
7  AL PROHIBITION AGAINST DOUBLE JEOPARDY, PROTECT-
8  ED UNDER THE FIFTH AND FOURTEENTH AMENDMENTS.
9  (Id. AT P. 1312)
10     LIKE WISE, THE ENHANCEMENT TERM IN
11  PETITIONER'S CASE IS BASED ON THE SAME CONDUCT
12  AS THAT ON WHICH THE TERM FOR PETITIONER'S
13  CONVICTION OF UNLAWFUL POSSESSION OF A FIREARM
14  WAS BASED. THUS SECTION 654 PROHIBITS
15  IMPOSITION OF THE ENHANCEMENT TERM IN PETITION-
16  ER'S CASE.
17     THE PRESENTATION OF DEBATABLE APPELLATE
18  ISSUES AS A BASIS FOR THE DISTRICT COURT'S
19  GRANT OF A STAY OF PROCEEDINGS WAS
20  ESTABLISHED BY THE COURT OF APPEAL IN
21  CALIFORNIA V. COX  151 P.2d 269:
22     "WE HAVE CONCLUDED THAT THE GROUNDS URGED
23  FOR A REVERSAL OF THE JUDGEMENT PRESENT
24  [DEBATABLE] QUESTIONS MERITING EXTENDED
25  CONSIDERATION BY THE COURT AND THAT THE APPEAL
26  HAS BEEN TAKEN IN GOOD FAITH AND IS NOT
27  FRIVOLOUS. UNDER THESE CIRCUMSTANCES A STAY
28  OF PROCEEDINGS SHOULD BE AND IS GRANTED

1  PENDING THE FINAL DETERMINATION OF THE CASE
2  ON APPEAL ..." (SEE ALSO; RHINES V. WEBER,
3  544 U.S. 269., 125 S. CT. 1528, 1534-35 (2005).)

4      FINALLY PETITIONER THEREFORE CONTENDS THAT
5  ISSUES V, VI, AND VII MERITORIOUS, AND IT IS
6  THEREFORE REQUESTED, BASED UPON THIS MOTION
7  FOR STAY OF PROCEEDINGS, AND MEMORANDUM OF
8  POINTS AND AUTHORITIES, THAT THIS (A) STAY BE
9  GRANTED.

## CONCLUSION

13  WHEREFORE, PETITIONER RESPECTFULLY REQUESTS
14  THAT THIS HONORABLE COURT:
15      (1.) GRANT MOTION TO SUPERSEDEAS OR
16  STAY OF PROCEEDINGS.
17      (2.) GRANT PETITIONER WHATEVER FURTHER
18  RELIEF APPROPIATE IN THE INTEREST OF JUSTICE.
19      (3.) GRANT AN EVIDENTARY HEARING.

21          DATE:_____,200

23          RESPECTFULLY SUBMITTED,

26  *_____
27          MR. RAHSAAN COLEMAN
28          IN PROPRIA PERSONAM

# VERIFICATION

I, RAHSAAN COLEMAN, STATES:

I AM THE PETITIONER IN THIS ACTION. I HAVE READ THE FOREGOING PETITION FOR MOTION OF STAY OF PROCEEDINGS (SUPERSEDEAS) AND THE FACTS STATED THEREIN ARE TRUE OF MY OWN KNOWLEDGE, EXCEPT AS TO MATTERS THAT ARE THEREIN STATED ON INFORMATION AND BELIEF, AND AS TO THOSE MATTERS, I BELIEVE THEM TO BE TRUE.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE AND CORRECT AND THAT THIS DECLARATION WAS EXECUTED IN CRESCENT CITY, CALIFORNIA ON _____ 200 .

\*_____

MR. RAHSAAN COLEMAN
IN PRO PER

PELICAN BAY STATE PRISON
SECURITY HOUSING UNIT
UNIT D-7

# APPENDIX

1

LETTER FROM APPELLATE LAWYER
EXPLAINING TO PETITIONER HIS RIGHTS

*SEE EXHIBIT - A
OF HABEAS CORPUS
PETITION: LETTER FROM
APPELLATE LAWYER IN REGARDS
TO CA. SUPREME COURT RULING! *

# APPENDIX

3

TRANSCRIPT REFERENCE PRETAINING
TO HABEAS CORPUS PETITION (SEE PAGE 34)
OF EXHIBIT A

006735

60 - 6-28

## ABSTRACT OF JUDGMENT – PRISON COMMITMENT

FORM DSL 290

FILED
JUN 1 4 1994
CONTRA COSTA CO....

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF | Contra Costa | |
|---|---|---|
| BRANCH | | |

COURT I.D. 0,7,

PEOPLE OF THE STATE OF CALIFORNIA versus
DEFENDANT: RAHSAAN COLEMAN
AKA:

☒ PRESENT
☐ NOT PRESENT

CASE NUMBER (S)
940980-9  - A
- B
- C

COMMITMENT TO STATE PRISON
ABSTRACT OF JUDGMENT

AMENDED
ABSTRACT ☐

- D
- E

| DATE OF HEARING (MO) (DAY) (YR) | DEPT. NO | JUDGE | CLERK |
|---|---|---|---|
| 6/14/94 | Thirteen | RICHARD L. PATSEY | K. Gray |

| REPORTER | COUNSEL FOR PEOPLE | COUNSEL FOR DEFENDANT | PROBATION NO. OR PROBATION OFFICER |
|---|---|---|---|
| Trish Bishop | Steven Bolen | David Headley | William Grunert |

1. DEFENDANT WAS CONVICTED OF THE COMMISSION OF THE FOLLOWING FELONIES (OR ALTERNATE FELONY/MISDEMEANORS):

☐ ADDITIONAL COUNTS ARE LISTED ON ATTACHMENT _____ (NUMBER OF PAGES)

| COUNT | CODE | SECTION NUMBER | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION MO | DAY | YEAR | CONVICTED BY | PRINCIPAL OR CONSECUTIVE TIME IMPOSED YEARS MONTHS |
|---|---|---|---|---|---|---|---|---|---|
| 1 | PC | 211-212.5(a)-664 | Att Rob Inhab Dwel | 93 | 6 | 14 | 94 | X | X |
| 2 | PC | 459-460(a)-664 | Att First Deg Burg | 93 | 6 | 14 | 94 | X | 1 0 |

2. ENHANCEMENTS charged and found true TIED TO SPECIFIC COUNTS (mainly in the § 12022-series) including WEAPONS, INJURY, LARGE AMOUNTS OF CONTROLLED SUBSTANCES, BAIL STATUS, ETC.: For each count list enhancements horizontally. Enter time imposed for each or "S" for stayed or stricken. DO NOT LIST enhancements charged but not found true or stricken under § 1385. Add up time for enhancements on each line and enter line total in right-hand column.

| Count | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 12022.5(a) | S | | | | | | | | | |
| 2 | 12022.5(a) | | | | | | | | | | 3 0 |

3. ENHANCEMENTS charged and found true FOR PRIOR CONVICTIONS OR PRIOR PRISON TERMS (mainly § 667-series) and OTHER.

| Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

4. INCOMPLETED SENTENCE(S) CONSECUTIVE:

| COUNTY | CASE NUMBER | CREDIT FOR TIME SERVED |
|---|---|---|
| | | |

5. OTHER ORDERS  The Court imposes a $200.00 restitution fine.

Use additional sheets of plain paper if necessary.

6. TOTAL TIME IMPOSED ON ALL ATTACHMENT PAGES (FORM DSL 290-A):

7. TIME STAYED TO COMPLY WITH 5-YEAR OR 10-YEAR LIMIT ON SUBORDINATE TERMS, DOUBLE-BASED-TERM LIMIT, ETC. (Do not include § 654 stays or discretionary stays of term for enhancements.)

8. TOTAL TERM IMPOSED: 4 0

9. EXECUTION OF SENTENCE IMPOSED:

A. ☒ AT INITIAL SENTENCING HEARING
B. ☐ AT RESENTENCING PURSUANT TO DECISION ON APPEAL
C. ☐ AFTER REVOCATION OF PROBATION
D. ☐ AT RESENTENCING PURSUANT TO RECALL OF COMMITMENT (PC § 1170(d))
E. ☐ OTHER _____

10. DATE OF SENTENCE PRONOUNCED (MO) (DAY) (YR) 6/14/94

| CREDIT FOR TIME SPENT IN CUSTODY | TOTAL DAYS 261 | INCLUDING: | ACTUAL LOCAL TIME 175 | LOCAL CONDUCT CREDITS 86 |
|---|---|---|---|---|

STATE INSTITUTIONS
☐ DMH.
☐ CDC

11. DEFENDANT IS REMANDED TO THE CUSTODY OF THE SHERIFF, TO BE DELIVERED:

☐ FORTHWITH
☐ AFTER 48 HOURS, EXCLUDING SATURDAYS, SUNDAYS AND HOLIDAYS

INTO THE CUSTODY OF THE DIRECTOR OF CORRECTIONS AT THE RECEPTION-GUIDANCE CENTER LOCATED AT:

☐ CALIF. INSTITUTION FOR WOMEN – FRONTERA
☐ CALIF. MEDICAL FACILITY – VACAVILLE
☒ SAN QUENTIN
☐ CALIF. INSTITUTION FOR MEN – CHINO
☐ DEUEL VOC. INST.

☒ OTHER (SPECIFY): The defendant is to be held in local custody and is not to be transported prior to 6/28/94.

CLERK OF THE COURT

I hereby certify the foregoing to be a correct abstract of the judgment made in this action.

| DEPUTY'S SIGNATURE | DATE |
|---|---|
| K Gray | June 14, 1994 |

This form is prescribed under Penal Code § 1213.5 to satisfy the requirements of § 1213 for determinate sentences. Attachments may be used but must be referred to in this document.

Form Adopted by the Judicial Council of California Effective April 1, 1990

## ABSTRACT OF JUDGMENT – PRISON COMMITMENT
FORM DSL 290

Pen.C. 1213.5

DISTRIBUTION:  PINK COPY – COURT FILE     YELLOW COPY – DEPARTMENT OF CORRECTIONS     WHITE COPY – ADMINISTRATIVE OFFICE OF THE COURTS

APPENDIX

4

TRANSCRIPT REFERENCE PRETAINING
TO HABEAS CORPUS PETITION
(SEE PAGE 36) of EXHIBIT A

30

1        We then go to the other issues, if the
2    Court, in fact, does find this as a Three Strike case,
3    whether 654 applies to the gun.

4        Again, when you look at the facts of this
5    case as it's existed so far, the gun was obtained
6    because of the ongoing threats of the victim in this
7    case.  And there's no evidence that there was any
8    other reason for that.

9        As I put forth in the points that I filed,
10    the gun was there because of the threats.  The threats
11    escalated.  The action occurred.  The jury found that
12    to be a manslaughter.  And it occurred all within the
13    same set of operative facts and the same occurrence.

14        Under the California Supreme Court, it's the
15    discretion of the court, under _Deloza_, whether or not
16    to take the same set of operative facts -- which I
17    think this clearly is.

18        The gun was part of the conflict that ended
19    in the death of Myron Parker.

20        Under the other case I cited, _Danowski_, it
21    appears that under this same set of operative facts
22    the Court would be abusing its discretion to sentence
23    him on both the gun possession and the manslaughter
24    conviction.

25        When we look at the sentencing in this case,
26    there's a lot of mitigating factors:

27        The conversion that I think is very clear in
28    his life.

31

1              The fact that psychologically he isn't --
2    he's suffering from a hyperreactive sentence, but he
3    isn't an individual who, in and of himself, is a
4    dangerous individual.
5              And both psychologists found that he was a
6    very solid and good man that was suffering from
7    traumatic incidences in his life.
8              He is making a commitment to turn his life
9    around and to contribute to this society.
10             He wasn't trying to have an ongoing battle
11   with Myron Parker.
12             And it's a tragedy that, as we see here, has
13   affected so many people, so deeply, on all sides,
14   including Mr. Coleman.
15             And I think when you look at the fact that
16   he wasn't the aggressor, that he was trying to pull
17   out of this conflict, that he was trying to get out of
18   Richmond, that he was trying to turn his life around,
19   that he was trying to get a job, and this occurred,
20   that we should look at this as a mitigating set of
21   facts and not an aggravating set of facts.
22             I know that Mr. Coleman would do what he
23   could do to undo that day.  And I know he will spend
24   the rest of his life, whatever happens today, trying
25   to live it within his view of God and right.
26             And I believe that this is a man who should
27   someday be back within society.
28             *THE COURT:*  Do you wish to respond,

44

1   to impose in this case is an indeterminate term of

2   25-to-life on Count One, to run consecutive to an

3   indeterminate term of 25-to-life on Count Two.

4           The determinate term consists of the 4 years

5   for the 12022.5(a) enhancement, plus 10 years for the

6   prior convictions, for a total of 14 years, which must

7   be served before the defendant commences his service

8   of the indeterminate term.

9           Now, at this time, counsel, understanding

10  that I have considered all of your legal arguments, do

11  you have any further comments?

12          Ms. Castro.

13          MS. CASTRO:  I have a question.

14          How are you reaching 10 years for the

15  667(a)?  We only alleged one 667(a).

16          THE COURT:  That's very nice of you to point

17  that out.  It should only be 5.

18          MS. CASTRO:  Thank you.

19          THE COURT:  Thank you.

20          That would be the third time you would agree

21  with Ms. Fullerton.  I'm sure she would have pointed

22  it out.

23          Any other comments for the People?

24          MS. CASTRO:  No.

25          THE COURT:  All right.

26          Ms. Fullerton.

27          MS. FULLERTON:  I think the arguments I've

28  made that the Court has not accepted, I reaffirm.

APPENDIX

5

TRANSCRIPT REFERENCE PRETAINING TO
HABEAS CORPUS PETITION (SEE PAGE 36)
OF EXHIBIT A

000762

1  LINDA FULLERTON, Bar No. 83444
   Attorney at Law
2  54 Railroad Avenue
   Pt. Richmond, CA 94801
3  510/232-4000

4  Attorney for Defendant
   RAHSAAN COLEMAN

5

6

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      COUNTY OF CONTRA COSTA

10

11 THE PEOPLE OF THE STATE OF CALIFORNIA,
                                               No. 05-980140-8
12                               Plaintiff,
                                               **DEFENDANT'S**
13        v.                                   **SENTENCING MEMORANDUM**

14
   RAHSAAN COLEMAN,
15                                             Date:  December 17
                                 Defendant.    Time:  8:30
16 _____/         Dept:  70

17

18                            **MEMORANDUM**

19      This memorandum is in response to the Court's questions posed on November 22, 1999.

20

21 A.    THE COURT MAY SENTENCE DEFENDANT'S CURRENT PRIORS CONCURRENTLY
         UNDER CALIFORNIA PENAL CODE SECTION 1170.12(A)(6).
22
        The Court retains discretion to sentence defendant's current felonies concurrently if it
23
   determines that defendant's current offenses arose from the same set of operative facts or
24
   occurred on the same occasion.  (People v. Deloza (1998), 18 Cal.4th 585, 76 Cal.Rptr.2d 255.)
25
   This discretion exists independently of the court's discretion to strike defendant's prior strike
26
   convictions pursuant to California Penal Code 1385.  (Id.)  Therefore, should this court decide
27
   not to strike one or both of defendant Coleman's prior felonies, the court may nevertheless
28

                                        1

000763

1   choose to sentence defendant Coleman concurrently — rather than consecutively — for his
2   current felonies.

3          In *Deloza*, the Supreme Court ruled directly on this question, finding that California Penal
4   code section 1170.12(a)(6) and (a)(7)[1], mandates consecutive sentencing  only when "there is a
5   current conviction for more than one felony count *not* committed on the same occasion, and *not*
6   arising from the same set of operative facts." (People v. Deloza, *supra*, 18 Cal.4th at 590, 76
7   Cal.Rptr at 258;  People v. Hendrix (1996), 16 Cal.4th 508, 66 Cal.Rptr.2d 431.)  Otherwise, the
8   court retains discretion and may sentence either concurrently or consecutively.   (Id.)

9          The process for sentencing a defendant pursuant to Penal Code section 1170.12(a)(6) thus
10  requires a preliminary inquiry: first the trial court must determine whether the current offenses
11  arose from the same set of operative facts *or* took place on the same occasion.  If the answer to
12  both these questions is no, the inquiry ends.  At this juncture, the court must sentence defendant
13  consecutively for both offenses.  (Deloza, *supra*.)

14         "The law deprives the trial court of discretion and requires consecutive sentencing *only if*
15  the current crimes arose on different occasions *and* out of different sets of operative facts."
16  (People v. Hall, *supra*, 67 Cal.App.4th at 139, 79 Cal.Rptr at 697(emphasis added).)  If, however,
17  the court finds that *either* the offenses took place on the same occasion *or* the current offenses
18  arose from the same set of operative facts, under *Deloza*, the court is free to exercise its
19  discretion to sentence defendant either concurrently or consecutively.   (People v. Hall (2nd Dist
20  1998), 67 Cal.App.4th 128, 79 Cal.Rptr.2d 690.)[2]

21

22

23         [1] The court also found that California Penal Code sections 667(c)(6) and (c)(7) were identical to
    1107.12(a)(6) and (a)(7).

24
25         [2] The court in *Hall* further delineated the nature of the court's inquiry on this question:
                  It is of no import that the record fails to reveal whether or not the offenses
26                occurred "on the same occasion" if the evidence supports the court's
                  determination that the offenses arose "from the same set of operative facts.  For
27                the same reason, if the offenses occurred "on the same occasion" it does not
                  matter whether there is evidence that they did or did not arise "from the same
28                set of operative facts."

                                              2

000764

**B.** DEFENDANT'S CURRENT CONVICTIONS AROSE FROM THE SAME SET OF OPERATIVE FACTS AND OCCURRED ON THE SAME OCCASION.

Defendant's current offense, the manslaughter and the conviction for being a felon in possession of a gun, both occurred on the same occasion and arose from the same set of operative facts, thereby rendering defendant's case one in which the court may exercise its discretion in his favor.

The rule under *Deloza* is that "same occasion refers at least to a close temporal and spatial proximity between the acts underlying the current convictions." (*Deloza* at 261, 595.) In *Deloza*, the Supreme court determined that defendant Deloza's offenses could all be viewed as taking place on the same occasion, even though they were somewhat separated temporally and concerned different victims. (Id.) As *Deloza* demonstrates, "same occasion" for purposes of 1170.12(a)(6) analysis is somewhat broader than similar analyses under section 654. For instance, under the Three Strikes law, several concurrent offenses which involve multiple victims have occurred on the same occasion. (*See, e.g.,* People v. Hendrix, *supra* (defendant's four robberies were ruled to have occurred on the same occasion despite the multiple victims); People v. Newsome (1997), 57 Cal.App.4th, 67 Cal.Rptr.2d 438 (defendant robbed three occupants of a house at gunpoint); People v. Bell (1998), 61 Cal.App.4th 282, 71 Cal.Rptr.2d 415 (defendant's crimes occurred on the same occasion when he struggled to steal the purses of two women).) In contrast, section 654 forbids conflating multiple victim cases in order to avoid consecutive sentencing. (People v. Champion (1995), 9 Cal.4th 879, 39 Cal.Rptr.2d 547.)

Case law interpreting section 654 is instructive in interpreting the language "same set of operative facts," as those words bear a close resemblance to section 654's language pertaining to defendant's "indivisible course of conduct." (Cal.Penal Code §654.)[3]. Further, "same set of operative facts" has engendered far fewer rulings. The Supreme Court has ruled that "whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends upon the intent and objective of the actor. If all of the offenses

---

[3] Defendant recognizes that the court is not applying a section 654 at this point in the proceedings.

3

000765

1   were incident to one objective, the defendant may be punished for any one of such offenses, but

2   not for more than one." (People v. Latimer (1993), 23 Cal.Rptr.2d 144, 5 Cal.4th 1203.)

3   Similarly: "There must be evidence to support a finding the defendant formed a separate intent

4   and objective for each offense for which he was sentenced." (People v. Coleman (1989), 48

5   Cal.3d 112, 255 Cal.Rptr. 813.)

6          The rule pertaining to gun possession is also instructive on this point. "A defendant may

7   not be punished both for possession of a weapon and for another offense in which the weapon is

8   used, where the evidence does not show possession for any other purpose." (People v. Jurado

9   (2nd Dist. 1972), 102 Cal.Rptr.498, 25 Cal.App.3d 1027.) Similarly, "where the evidence shows a

10  possession only in conjunction with the primary offense, then punishment for illegal possession of

11  the firearm has been held to be improper where it is the lesser offense." (People v. Venegas

12  (1970), 10 Cal.App.3d 914, 89 Cal.Rptr. 103.)

13         Defendant testified at trial that he obtained the gun out of his fear that Myron Parker

14  would harm him; he further testified that his belief that Myron Parker was about to kill him made

15  him pull his gun and shoot Parker.   These facts support both the "same occasion" and "same set

16  of operative facts" test.  The transcript of defendant's trial runs to over 1200 pages, a constant

17  theme throughout these pages was the violence perpetrated by the victim against Coleman and his

18  family.  There were over thirty witnesses, many of whom, including prosecution witnesses,

19  testified regarding the character and propensity of the victim for violence.  Some testified

20  specifically that they had heard or had warned Rahsaan Coleman of Parker's desire to avenge the

21  November 1993 robbery at Parker's home.  (See, e.g., testimony of Latasha Parker Nelson

22  regarding Parker's inability to "let it go," testimony of Bryan Lowe regarding Parker's fighting

23  prowess, testimony of Rolanda Coleman regarding Parker's prior incidents of violence against the

24  Coleman family.)  Coleman himself testified that he had heard rumors that Myron Parker was

25  "carrying straps" (armed) and was out looking for Coleman.  For this reason, and for protection in

26  Myron Parker's territory on Coleman's way to and from the South Richmond BART station,

27  defendant Coleman bought a gun.  This was the gun that defendant Coleman fired once at Myron

28  Parker, killing him.

1    While defendant readily acknowledges that he possessed the gun several days before the

2    shooting, the *continuous nature* both of his fear of Myron Parker's retaliation and of his need for

3    protection substantiate his claim that the manslaughter and the 12021(a) offenses occurred on the

4    same occasion.  Further, the jury's manslaughter verdict supports defendant's assertion that both

5    offenses stemmed from defendant's justifiable reason to fear Myron Parker and need to protect

6    himself.

7    Defendant is conversant with *People v. Durant* holding that "if another offense is

8    committed while the facts underlying [the second offense] are unfolding, <u>it will necessarily arise</u>

9    <u>from the same set of operative facts</u>." (<u>People v. Durant</u> (4th Dist. 1999), 68 Cal.App.4th 1393,

10   81 Cal.Rptr.2d 207.)  In this case, defendant's gun possession is the "unfolding" offense,

11   underlying the manslaughter.   Accordingly, it arises from the same set of operative facts.  In

12   *Durant*, the court found that defendant's numerous burglaries did not arise from the same set of

13   operative facts.   There, the court held that "where the elements of the original crime have been

14   satisfied, any crime subsequently committed will not arise from the same set of operative facts

15   underlying the completed crime." (<u>Id</u>.)  However, this rule is inapplicable to defendant Coleman's

16   case, given the ongoing nature of a his  status offense – the violation of Penal Code section

17   12021(a).  Defendant Coleman's offenses are notably less distinct one from the other than

18   Durant's burglaries, each of which occurred in succession to each other, after the previous

19   attempt was completed.

20   Consequently, despite the limitation in *Durant*, defendant has demonstrated that his acts

21   occurred on the same occasion and arose from the same set of operative facts.

22

23   C.  <u>SECTION 654 ANALYSIS IS APPLICABLE ONCE THE COURT DETERMINES</u>
     <u>THAT DEFENDANT'S CURRENT OFFENSES "AROSE FROM THE SAME SET OF</u>
24   <u>OPERATIVE FACTS" OR "TOOK PLACE ON THE SAME OCCASION."</u>

25       Mandatory consecutive sentencing provisions state that, where the
         "same occasion/same operative facts" test is not satisfied, the trial
26       court shall sentence consecutively, notwithstanding any other law.
         [citations omitted.]  Where the "same occasion/same operative
27       facts" test is satisfied, however, the three strikes law does not

28

000767

1     similarly mandate that the trial court "shall" do anything.  In such a
      case, there is no "notwithstanding any other law" provision to
2     override section 654.  Section 654 applies of its own force.

3   (People v. Danowski (4th Dist, 1999) ____ Cal.App. ____ , 88 Cal.Rptr.2d 471 at 476.)  Section

4   654 precludes multiple punishment for a single act or omission, or an indivisible course of

5   conduct. (§654, People v. Miller (1977), 18 Cal.3d 873, 135 Cal.Rptr. 654.)

6        Section 654 analysis, as noted above, turns on the defendant's intent: "if all the offenses

7   were incident to one objective, the defendant may be punished for any one of such offenses, but

8   not for more than one." (People v. Green, supra, citing People v. Perez (1979), 23 Cal.3d 545.)

9        In the case before the court, defendant's crimes involve one victim, therefore section 654's

10  prohibition against multiple punishment applies.  Further, as argued extensively both above and in

11  the motion submitted by trial counsel, defendant's two offenses were inextricably bound to the

12  one objective: protecting himself from Myron Parker.  Therefore, under the rule of Danowski,

13  defendant may not be punished twice, even concurrently.  (People v. Danowski 88 Cal.Rptr.2d

14  471 at 477. See also, People v. Hardy (2nd Dist. 1999), 87 Cal.Rptr.2d 279 (defendant convicted

15  of a murder and a robbery against the same victim.  Sentence stayed pursuant to section 654).)

16  D.    IN THE ALTERNATIVE, DEFENDANT ASKS THIS COURT TO SENTENCE THE GUN POSSESSION
        CONCURRENTLY PURSUANT TO CALIFORNIA RULE OF COURT 425.
17

18        Defendant recognizes that the rule of Danowski creates a minor conflict with the rule of

19  Deloza.  In Deloza, once the same occasion/same set of operative facts test is satisfied, the Court

20  retains discretion; in Danowski, once the rule is satisfied, section 654 appears to apply of its own

21  force.    Defendant respectfully asks this court to follow the rule as provided in Danowski and

22  sentence him for only one of the two concurrent offenses.

23        However, even under Deloza, the court still retains its' discretion, and is guided in

24  exercising this discretion by California Rule of Court 425.    (People v. Deloza, supra, 18 Cal.4th

25  596 fn 8, 76 Cal.Rptr.2d 262 fn. 8.)  Rule 425 states

26        Criteria affecting the decision whether to impose consecutive rather
          than concurrent sentences include: (a) [Criteria relating to crimes]
27        Facts relating to the crimes, including whether or not:
          (1) The crimes and their objectives were predominantly independent
28        of each other.  (2) The crimes involved separate acts of violence or

6

threats of violence.  (3) The crimes were committed at separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior. (b) [Other criteria and limitations] Any circumstance in aggravation or mitigation may be considered in deciding whether to impose consecutive rather than concurrent sentences, excepts (i) a fact used to impose the upper term, (ii) a fact used to otherwise enhance the defendant's prison sentence, and (iii) a fact that is an element of the crime shall not be used to impose consecutive sentences.

(Cal.Rules of Court, Rule 425, as amended effective January 1, 1991.)

With respect to (a)(1) and (a)(3), as noted above, defendant Rahsaan Coleman's crimes were not predominantly independent, but rather part and parcel of one another.  Further, with respect to (a)(2), as is known to this court, throughout Coleman's fatal altercation with Myron Parker, Rahsaan Coleman asked for forgiveness, and attempted to *flee*.  No testimony at trial revealed that *separate* acts of violence or threats of violence were involved on Rahsaan Coleman's part, other than the fatal shooting itself.

With respect to section (b) of the above statute, in asking for this court's favorable discretion *at this juncture*, defendant recognizes that his most recent offense entailed the loss of Myron Parker's life and that the court is already contemplating a severe sentence for his offenses. Defendant's request at this moment in the proceedings for concurrent sentencing should therefore not be construed as a request for leniency.  Defendant well understands that the primary purpose of the three strikes law is to "ensure longer prison sentences" both generally and in cases such as his.  (People v. Garcia (1999), 85 Cal.Rptr.2d 280 at 287, ____Cal.____.)  However, the California Supreme Court has made clear that "this purpose is not a mantra that the prosecutor can invoke in *any* three strikes case to compel the court to construe the statute so as to impose the longest possible sentence" (People v. Garcia, 85 Cal.Rptr.2d 280 at 287, ____Cal.____.)  On the contrary, in many cases favorable discretion is both appropriate and just.

Accordingly, the defendant respectfully requests that this court to consider the highly conflictual, mutually aggressive nature of the relationship between Myron Parker and the defendant, and to consider the abrupt and sudden character of his prior bad act -- which is transformed into *two* priors based on paper-thin technical legal distinctions.  Defendant also asks

7

1  this court to consider the testimony of the family members and the psychiatrists who have testified
2  to defendant's sincere and genuine efforts to change his life.  Having done so, Rahsaan Coleman
3  asks this court to exercise its discretion in his favor and decline to sentence him consecutively for
4  both of the current felonies, but rather sentence him concurrently, or, under section 654 and the
5  rule of *Danowski*, stay the sentence for the second offense entirely.

7  **E. CONCLUSION**

8     For the above stated reasons, defendant Coleman respectfully requests that the Court
9  exercise its discretion pursuant to 1170.12(a)(6) and either stay the second current conviction, or
10 sentence it concurrently with the primary conviction.

DATED:

                                    Respectfully Submitted,

                                    LINDA FULLERTON
                                    Attorney for Defendant

8

# APPENDIX

6

TRANSCRIPT REFERENCE PRETAINING
TO HABEAS CORPUS PETITION
(SEE PAGE 36) OF EXHIBIT A

000814

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**IN AND FOR THE COUNTY OF CONTRA COSTA**

DATE: DECEMBER 17, 1999
HON. PATRICIA SEPULVEDA, PRESIDING          A. Simmons, Clerk

DEPARTMENT 73                               T. Smith, Rptr 10365

---

PEOPLE OF THE STATE OF CALIFORNIA          Dep. D.A.  Ruanne Castro

vs.
RAHSAAN COLEMAN,                           Counsel: Linda Fullerton

---

NATURE OF PROCEEDINGS                       ACTION NO. 980140-8

---

REPORT AND SENTENCE
COMMITMENT TO STATE PRISON

Counsel noted-above are present.
The defendant is present.

On June 5, 1998  the defendant was found guilty by a jury of the following:

  Count 1: PC 192(a)  (Voluntary Manslaughter).
  Count 2: PC 12021(a)  (Felon Possessing a Firearm).

The defendant waives formal arraignment for judgment and sentence.

The jury found the PC 12022.5 enhancement allegation attendant to Count 1 to be true.
The jury further found the PC 667(a) enhancement allegation to be true and two priors pursuant to PC 1170.12.

The Court states for the record that it has read and considered the following: the Probation Report dated 7-14-98, the original bail study, letters from family, friends and members of the community, motions, statements of victim's family, the sentencing briefs and sentencing memoranda.

The defendant has no legal cause why judgment should not now be pronounced.

Joanne Louis presents a statement to the Court on behalf of the victim.
The defendant presents a statement to the Court.
Lynetta Monroe makes a statement on behalf of the defendant.

At 9:10 a.m. Ruanne Castro makes a statement in aggravation on behalf of the People.
At 9:25 a.m. Linda Fullerton makes a statement in mitigation on behalf of the defendant.

The defendant's request to strike one (1) prior or more is denied as set forth on the record.
Probation is also denied as on the record.

The Court therefore commits the defendant to the California Department of Corrections for an INDETERMINATE TERM OF 50 YEARS TO LIFE AND A DETERMINATE TERM OF 9 YEARS AS FOLLOWS:

INDETERMINATE SENTENCE

  Count 1: PC 192 (a)(Voluntary Manslaughter) - 25 years to life.
  Count 2: PC 12021(a) (Felon Possessing a Firearm) - 25 years to life to be served consecutively to that
       term imposed on Count 1.

(continued on page two)

000815

**page two**
**980140-8**
**People vs Coleman**
**Sentencing - 12/17/99**

## DETERMINATE SENTENCE

PC 12022.5(a) enhancement allegation attendant to Count One - 4 years.
PC 667a enhancement allegation - 5 years.

This sentence is imposed pursuant to Penal Code Section 1170.12(a)(12).

The defendant is entitled to 870 actual days credit and 130 (15%) days goodtime/worktime credits for a total of 1000 days credit for time already served in this matter. Calculation pursuant to 2933.1.

The Court imposes a $5000.00 restitution fine per PC 1202.4.
The Court imposes a parole fine of $5000.00 pursuant to PC 1202.45 - stayed.

Restitution is set at $3,000.00 as follows:

$1,500.00 to the victims's mother, Joanne Louis.
$1,500.00 to the Victim's Witness Funds for monies previously disbursed to victim's mother, Joanne Louis.

The defendant is advised of his rights of appeal.
The defendant is advised of his parole obligation in accordance with PC 1170(a)(3). Further as on the record.

Bond, if posted, is exonerated.

<u>The defendant is remanded into the custody of the Sheriff's Department and is not to be delivered to the California Department of Corrections until after January 7, 2000.</u>

Dated: <u>12-17-99</u>

Arlene J. Simmons
Clerk of the Court

CR-292

## ABSTRACT OF JUDGMENT—PRISON COMMITMENT—INDETERMINATE
### [NOT VALID WITHOUT COMPLETED PAGE TWO OF CR-292 ATTACHED]

| XX SUPERIOR  COURT OF CALIFORNIA, COUNTY OF    CONTRA COSTA |
|---|
| MUNICIPAL    BRANCH OR JUDICIAL DISTRICT: |

| PEOPLE OF THE STATE OF CALIFORNIA vs | DOB: 12-21-72 | 980140-8 | -A |
|---|---|---|---|
| DEFENDANT: | | | |

RAHSAAN COLEMAN

AKA:                                                                          -B

CII#: A09-315-330

BOOKING #: A97-3907          ☐ NOT PRESENT         -C

COMMITMENT TO STATE PRISON        ☐ AMENDED ABSTRACT
ABSTRACT OF JUDGMENT                                        -D

F I L E D

DEC 17 1999

CLERK OF THE SUPERIOR COURT
CONTRA COSTA COUNTY
By:
A. Simmons, Deputy

| DATE OF HEARING 12-17-99 | DEPT. NO. 73 | JUDGE Honorable Patricia Sepulveda |
|---|---|---|
| CLERK Arlene Simmons | REPORTER Teresa Smith | PROBATION NO. OR PROBATION OFFICER |
| COUNSEL FOR PEOPLE Ruanne Castro | | COUNSEL FOR DEFENDANT Linda Fullerton  ☐ APPTD. |

1. Defendant was convicted of the commission of the following felonies:
   ☐ Additional counts are listed on attachment
      _____ (number of pages attached)

| CNT. | CODE | SECTION NO. | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION (MO./DATE/YEAR) | JURY | COURT | PLEA | CONCURRENT | CONSECUTIVE | 654 STAY |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | PC | 192(a) | Voluntary Manslaughter | 1997 | 06/05/98 | x | | | | | |
| 2 | PC | 12021(a)(1) | Poss Firearm by Felon | 1997 | 06/05/98 | x | | | | x | |
| | | | | | / / | | | | | | |
| | | | | | / / | | | | | | |
| | | | | | / / | | | | | | |
| | | | | | / / | | | | | | |

ENHANCEMENTS charged and found to be true TIED TO SPECIFIC COUNTS (mainly in the PC 12022 series). List each count enhancement horizontally. Enter time imposed for each or "S" for stayed. DO NOT LIST enhancements stricken under PC 1385.

| CNT. | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | TOTAL | |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 12022.5(a) | 4 | | | | | | | 4 | 0 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

3. ENHANCEMENTS charged and found to be true FOR PRIOR CONVICTIONS OR PRISON TERMS (mainly in the PC 667 series). List all enhancements horizontally. Enter time imposed for each or "S" for stayed. DO NOT LIST enhancements stricken under PC 1385.

| ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | TOTAL | |
|---|---|---|---|---|---|---|---|---|---|
| 667(a) | 5 | | | | | | | 5 | 0 |
| | | | | | | | | | |
| | | | | | | | | | |

Defendant was sentenced to State Prison for an INDETERMINATE TERM:

4. ☐ For LIFE WITHOUT THE POSSIBILITY OF PAROLE on counts _____
5. ☐ For LIFE WITH POSSIBILITY OF PAROLE on counts _____
6. ☒ For 50 years to life, WITH POSSIBILITY OF PAROLE on counts 25 years to life on count 1.
   PLUS enhancement time shown above.    25 years to life on count 2
7. ☐ Additional determinate term (see CR-290).    (consecutive)
8. Defendant was sentenced pursuant to ☒ PC 667(b)-(i) or PC 1170.12  ☐ PC 667.61  ☐ PC 667.7  ☐ PC 667.9
   ☐ other (specify): _____

This form is prescribed under PC 1213.5 to satisfy the requirements of PC 1213 for indeterminate sentences. Attachments may be used but must be referred to in this document.

(Continued on reverse)

Form Adopted by the
Judicial Council of California
CR-292 [Rev. January 1, 1996]
**ABSTRACT OF JUDGMENT—PRISON COMMITMENT—INDETERMINATE**
*[NOT VALID WITHOUT COMPLETED PAGE TWO OF CR-292 ATTACHED]*

JAN 12 2000

Penal Code, §§
1213, 1213.5

# APPENDIX

7

TRANSCRIPT REFERENCE PRETAINING
TO HABEAS CORPUS PETITION (SEE PAGE 36)
of EXHIBIT A

19

1        So we believe, under 654, the Court would
2   not have to stay the 12021 count.
3        All right.  Then, after determining whether
4   or not crimes for 654 -- if the Court agrees with the
5   People that the crimes are not 654able, then the
6   question becomes whether or not the Court must
7   mandatorily sentence the defendant consecutively under
8   I think it's 11...
9        *THE COURT:*  1170.
10       *MS. CASTRO:*  1170.12(a)(6).
11       *THE COURT:*  Or (a)(12), whichever.
12       *MS. CASTRO:*  The People do have an argument
13  that these crimes were not committed on the same
14  occasion and did not arise out of the same set of
15  facts.  Thereby allowing the Court -- or the Court
16  would then have to mandatorily sentence the defendant
17  consecutively.
18       The argument is drawn from the *Durant* case,
19  68 Cal.App.4th 1393.
20       The *Durant* court discussed this in
21  determining whether or not crimes arise out of the
22  same set of operative facts.  And they said you look
23  at whether or not the crime was completed, all
24  elements were satisfied in the first crime, before the
25  second crime was committed.
26       And I guess the argument is basically the
27  same as under my 654 argument.  And that is that we
28  have evidence that the defendant possessed the gun

1    before the killing, days before, according to his
2    admission.  He said on the day of the killing he
3    retrieved the gun from the closet in his house, took
4    it with him.
5           So we have possession of the gun under 12021
6    well before the shooting actually occurred.  We also
7    have possession after the shooting occurred, in that
8    he didn't just drop the gun and run.  He took it with
9    him, all the way to his house, and hid it once he got
10   into his neighborhood.
11          So we believe the Court could sentence the
12   defendant -- or should sentence the defendant
13   consecutively under (a)(6) of 1170.12.
14          And we note that should the Court find that
15   the 12021 and the voluntary manslaughter were
16   committed on the same occasion, or arose out of the
17   same set of operative facts -- thereby suggesting that
18   the Court doesn't have to mandatorily do consecutive
19   sentences -- the Court still would have the
20   discretion, under normal sentencing guidelines, to
21   sentence the defendant consecutively.
22          And therefore we would urge the Court to
23   exercise that discretion if the Court finds that it
24   does not have to mandatorily sentence consecutively.
25          I have suggested some of the factors in
26   aggravation.  Particularly, the defendant's
27   background, which I've already gone over.
28          But under the Rules of Court, some of the

# APPENDIX

TRANSCRIPT OF THE PROCEEDINGS
ON THE MOTION TO STRIKE PRIOR
FELONY CONVICTIONS - [SEE EXHIBIT -
A, OF HABEAS CORPUS PETITION.]



APP. 8

1  CHARLES H. JAMES, State Bar # 38915
   Public Defender, Contra Costa County
2  By:   Jonathan D. Cooper
   3811 Bissell Avenue
3  Richmond, California 94805-2298
   Telephone: (510) 374-3233
4
   Attorneys for Defendant
5
                IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
6                   IN AND FOR THE COUNTY OF CONTRA COSTA
7
8  THE PEOPLE OF THE STATE OF CALIFORNIA)        No. 980140-8
                                        )
9                  v.  .                 )       NOTICE OF MOTION AND
                                        )       POINTS AND AUTHORITIES
                                        )       IN SUPPORT OF MOTION TO
10                                       )       DISMISS THE PRIOR
   RAHSAAN COLEMAN,.                     )       STRIKE ALLEGATION
11                                       )
                    Defendant.           )
12 _____)        DATE: 3/27/98
                                                  TIME: 1:30 pm
13                                                DEPARTMENT: M 1

14 TO: GARY T. YANCEY, DISTRICT ATTORNEY, CONTRA COSTA COUNTY,
   MARTINEZ, CALIFORNIA; AND TO THE CLERK OF THE ABOVE-ENTITLED
15 COURT:

16     PLEASE TAKE NOTICE that on                            , or as

17 soon thereafter as counsel can be heard in the above-entitled

18 court, defendant, through counsel, will move the court for an

19 order to dismiss the "Three Strikes" enhancement as charged

20 pursuant to Penal Code section 1170.12(b) and (c).

21     The motion will be based on the attached memorandum of

22 points and authorities, declarations, all other papers and

23 pleadings on file herein, the court's own file and docket, and

24 any evidence, oral or documentary, to be adduced at the hearing.

25 Dated:  2/10/98

26                                      Respectfully submitted,

27

28                                      Jonathan D. Cooper
                                        Attorney for Defendant

1

000156

# MEMORANDUM OF POINTS AND AUTHORITIES

## FACTS AND PROCEEDINGS

On June 14, 1994, Mr. Coleman pled guilty to one count of attempted residential robbery and one count of attempted residential burglary, and admitted a "use" enhancement. These counts arose from a single incident, in which Mr. Coleman attempted unsuccessfully to gain entry to a residence. Accordingly, the court stayed the sentence on the attempted robbery count and imposed a sentence based on the attempted burglary count and one enhancement. Mr. Coleman's sentence was four years. Copies of the court's order and abstract of judgment are attached hereto as exhibit A.

The instant case arose after Mr. Coleman completed the above-described sentence. In addition to the crimes charged, the Information alleges a "three strikes" enhancement based on the 1994 incident. The People have, in essence, characterized Mr. Coleman's one swing of the bat as comprising two strikes. Because the prior convictions legally may constitute only one strike, Mr. Coleman moves to strike the "three strikes" enhancement from the Information.

# ARGUMENT

Penal Code section 654 prohibits imposing multiple punishments as a result of one act. That section provides, in pertinent part:

> An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one.

Section 654 is designed to prevent the flow of multiple penalties from a single act, even if that act may be characterized in terms of multiple convictions. See Neal v. State of California, 55 Cal.2d 11, 18-19 (1960). The concept behind the statute is to insure that the defendant's punishment is measured with his criminal liability, as opposed to by how creatively the incident may be parced into multiple crimes. Id. at 20. Thus, section 654 precludes double punishment when a single "act" gives rise to more than one violation of the Penal Code. Id. at 18, n.1.

This proscription against double punishment applies not only to direct punishments, but also to collateral consequences. Thus, in People v. Pearson, 42 Cal.3d 351, 358 (1986), the court emphasized that one purpose of section 654 is to prevent "the use of more than one conviction based on each of his criminal acts for the purpose of enhancing any subsequent sentences he may receive." See also People v. Duarte, 161 Cal.App.3d 438, 445 (1986); People v. Conner, 176 Cal.App.3d 716 (1986).

In order to effectuate the policy and intent of section 654, when faced with multiple counts arising from one incident, courts have established methods to "eliminate the effect of the judgment" as to all but one of the counts. People v. McFarland, 58 Cal.2d 748, 763 (1962). The accepted method used by trial

000158

1   courts is to impose sentence as to each conviction but stay all

2   but one sentence.   See, e.g., People v. Niles, 227 Cal.App.2d

3   749, 756 (1964).   The effect of this method is to ensure that the

4   stayed "convictions" cannot later be used as a "prior" for penal

5   and administrative purposes.   See Duarte, supra, 161 Cal.App.3d

6   at 447.

7        Nothing in the language of the "three strikes" law, or in

8   the policy which underlies it, creates a departure from section

9   654's established application.   Indeed, the contrary is true.

10  The "three strikes" law was created to punish repeat offenders --

11  those who had swung the bat twice before.   It is hardly

12  reasonable to treat someone who has committed a single criminal

13  act that happens to be punishable under two different statutes

14  the same as a person who has committed two different crimes on

15  separate occasions.   That is not the rule that the voters and the

16  legislature intended to effectuate when they created the law.   If

17  such were the case, the number "three" would not figure so

18  prominently in the crime's definition.

19       In the instant case, the People seek to subject Mr. Coleman

20  to just that treatment which section 654 prohibits.   He has swung

21  the bat once.   That much is apparent in the court's findings and

22  order in his 1994 case.   To treat that one swing as two strikes

23  runs directly afoul of section 654.   This court should remedy the

24  situation by striking the "three strikes" enhancement from the

25  Information.

26

27

28

UC 0159

1                          CONCLUSION

2          The People have improperly charged Mr. Coleman with a "three

3    strikes" allegation based on a prior conviction which was stayed

4    pursuant to section 654.   This enhancement cannot stand.   Mr.

5    Coleman has but one strike on his record.   For this reason, and

6    for the reasons asserted above, this court should strike the

7    "three strikes" allegation from the information.

8

9

10   Date:  2/10/98                        Respectfully submitted,

11

12

13                                         Jonathan D. Cooper
                                           Counsel for Defendant

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

000160

1  AFFIDAVIT OF SERVICE
   ( C.C.P. 1012, 1013a, 2015.5)

2

3      I, the undersigned, declare that I am over the age of
   eighteen years, a resident of the State of California, employed
4  by the County of Contra Costa, and not a party to the cause
   described in the affixed document; my business address is:
5  3811 Bissell Avenue, Richmond, California.

6      On  2/25/98, I served the affixed Motion,

7
       Defendant:  RAHSAAN COLEMAN
8
       Docket No:  980140-8
9
   by personally delivering a copy thereof to:
10
                   OFFICE OF THE DISTRICT ATTORNEY
11                 Contra Costa County--Martinez Branch
                   725 Court Street
12                 Martinez, CA

13

14
       I declare under penalty of perjury that the foregoing is
15 true and correct.

16     EXECUTED on 2/25/98 at Richmond, California.

17

18                                    _____
                                          (signature)
19

20

21

22

23

24

25

26

27

                                  1

UCU**161**

**EXHIBIT A**

## ABSTRACT OF JUDGMENT – PRISON COMMITMENT

FORM DSL 290

| | |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF __Contra Costa__ BRANCH | |
| COURT I.D. | |
| 0 7 | |

**PEOPLE OF THE STATE OF CALIFORNIA** versus
**DEFENDANT:** RAHSAAN .COLEMAN
**AKA:**

CASE NUMBER (S) 940988-9

XX PRESENT · A
□ NOT PRESENT · B · C

F I L E D

JUN 1 4 1994

W. L COUNTY CLERK
COSTA COUNTY
by _____ Deputy

**COMMITMENT TO STATE PRISON** **AMENDED** · D
**ABSTRACT OF JUDGMENT** **ABSTRACT** □ · E

| DATE OF HEARING (MO) (DAY) (YR) | DEPT. NO | JUDGE | CLERK |
|---|---|---|---|
| 6/14/94 | Thirteen | RICHARD L. PATSEY | K. Gray |

| REPORTER | COUNSEL FOR PEOPLE | COUNSEL FOR DEFENDANT | PROBATION NO. OR PROBATION OFFICER |
|---|---|---|---|
| Trish Bishop | Steven Bolen | David Headley | William Grunert |

1. DEFENDANT WAS CONVICTED OF THE COMMISSION OF THE FOLLOWING FELONIES (OR ALTERNATE FELONY/MISDEMEANORS):    □ ADDITIONAL COUNTS ARE LISTED ON ATTACHMENT ___ (NUMBER OF PAGES) ___    SENTENCE RELATION

| COUNT | CODE | SECTION NUMBER | CRIME | YEAR CRIME COMMITTED | MO | DAY | YEAR | CONVICTED BY: JURY | COURT TRIAL | PLEA | TERM STAYED | CONCURRENT | CONSECUTIVE 1/3 VIOLENT | CONSECUTIVE NON-VIOLENT | INCOMPLETE SENTENCE 667.6 · 669 · 1170.1 | 1170.1 · STAY | PRINCIPAL OR CONSECUTIVE TIME IMPOSED YEARS MONTHS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | PC | 211-212.5(a)-664 | Att Rob Inhab Dwel | 93 | 6 | 14 | 94 | X | | | | | | | | X | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |

2. ENHANCEMENTS charged and found true TIED TO SPECIFIC COUNTS (mainly in the § 12022-series) including WEAPONS, INJURY, LARGE AMOUNTS OF CONTROLLED SUBSTANCES, BAIL STATUS, ETC.: For each count list enhancements horizontally. Enter time imposed for each or "S" if stayed or stricken. DO NOT LIST enhancements charged but not found true or stricken under § 1385. Add up time for enhancements on each line and enter time total in right-hand column.

| Count | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 12022.5(a) | S | | | | | | | | | |
| | 12022.5(b) | | | | | | | | | | |

3. ENHANCEMENTS charged and found true FOR PRIOR CONVICTIONS OR PRIOR PRISON TERMS (mainly § 667-series) and OTHER. List all enhancements based on prior convictions or prior prison terms charged and found true. If 2 or more under the same section, repeat it for each enhancement (e.g., if 2 non-violent prior prison terms under § 667.5(b) list § 667.5(b) 2 times). Enter time imposed for each or "S" for stayed or stricken. DO NOT LIST enhancements charged but not found true or stricken under § 1385. Add time for these enhancements and enter total in right-hand column. Also enter here any other enhancement not provided for in space 2.

| Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Total |

4. INCOMPLETED SENTENCE(S) CONSECUTIVE:

| COUNTY | CASE NUMBER | CREDIT FOR TIME SERVED |
|---|---|---|
| | | |
| | | |

5. OTHER ORDERS The Court imposes a $200.00 restitution fine.

Use additional sheets of plain paper if necessary.

6. TOTAL TIME IMPOSED ON ALL ATTACHMENT PAGES (FORM DSL 290-A):
7. TIME STAYED TO COMPLY WITH 5-YEAR OR 10-YEAR LIMIT ON SUBORDINATE TERMS, DOUBLE-BASED-TERM LIMIT, ETC. (Do not include § 654 stays or discretionary stays of term for enhancements.)
8. **TOTAL TERM IMPOSED:** | 4 | 0 |

9. EXECUTION OF SENTENCE IMPOSED:

A XXX AT INITIAL SENTENCING HEARING    B □ AT RESENTENCING PURSUANT TO DECISION ON APPEAL    C □ AFTER REVOCATION OF PROBATION    D □ AT RESENTENCING PURSUANT TO RECALL OF COMMITMENT (PC § 1170(d))    E □ OTHER _____

| 10. DATE OF SENTENCE PRONOUNCED (MO) (DAY) (YR) | CREDIT FOR TIME SPENT IN CUSTODY | TOTAL DAYS | ACTUAL LOCAL TIME | LOCAL CONDUCT CREDITS | STATE INSTITUTIONS |
|---|---|---|---|---|---|
| 6/14/94 | | 261 | INCLUDING: | 175 | 86 | □ DMH    □ CDC |

11. DEFENDANT IS REMANDED TO THE CUSTODY OF THE SHERIFF, TO BE DELIVERED:

□ FORTHWITH
□ AFTER 48 HOURS, EXCLUDING SATURDAYS, SUNDAYS AND HOLIDAYS
□ INTO THE CUSTODY OF THE DIRECTOR OF CORRECTIONS AT THE RECEPTION-GUIDANCE CENTER LOCATED AT:
□ CALIF. INSTITUTION FOR WOMEN – FRONTERA
□ CALIF. MEDICAL FACILITY – VACAVILLE
□ CALIF. INSTITUTION FOR MEN – CHINO
□ DUEL VOC. INST.
X SAN QUENTIN
X OTHER (SPECIFY): The defendant is to be held in local custody and is not to be transported prior to 6/28/94.

## CLERK OF THE COURT

hereby certify the foregoing to be a correct abstract of the judgment made in this action.

| DEPUTY'S SIGNATURE | DATE |
|---|---|
| K Gray | June 14, 1994 |

This form is prescribed under Penal Code § 1213.5 to satisfy the requirements of § 1213 for determinate sentences. Attachments may be used but must be referred to in this document.

JUN 2 N 1994 AM

ABSTRACT OF JUDGMENT – PRISON COMMITMENT
FORM DSL 290

Form Adopted by the Judicial Council of California
Effective April 1, 1990

WHITE COPY – COURT FILE    YELLOW COPY – DEPARTMENT

000163

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF CONTRA COSTA

Department: Thirteen                    Date:   June 14, 1994

HON. RICHARD L. PATSEY, JUDGE                   K. Gray, Clerk

Kathy Rose, Deputy Sheriff              Trish Bishop, Reporter
                                        C.S.R. #5752

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, <br><br> vs. <br><br> RAHSAAN COLEMAN, <br><br> Defendant. | PRESENT: <br><br> Deputy D.A.:  Steven Bolen <br><br> A.D.O.:  David Headley <br><br> Deputy P.O.:  William Grunert |

NATURE OF PROCEEDINGS:                   Docket No.:   940988-9

CHANGE OF PLEA - SENTENCING

The defendant is present.

The defendant now requests and is permitted to withdraw his
previous plea of Not Guilty.

The defendant executes, signs and submits to the Court for filing
the Advisement Of Rights, Waiver And Guilty/No Contest Plea Form
in which he waives his constitutional rights which include his
rights to a trial by Court or jury, to confront and cross-examine
witnesses, to present evidence and against self-incrimination.

Upon re-arraignment the defendant enters a plea of Guilty to a
Violation of California Penal Code Section 211-212.5(a)-664
(ATTEMPTED ROBBERY IN INHABITED DWELLING), a Felony, as set forth
in Count One of the Information and a Violation of California
Penal Code Section 459-460(a)-664 (ATTEMPTED FIRST DEGREE
BURGLARY), a Felony, as set forth in Count Two of the Information
and the defendant admits the two Personal Use Of Firearm
Enhancements pursuant to California Penal Code Section
12022.5(a), as set forth in both Counts One and Two of the
Information.

The Court accepts for filing the Advisement Of Rights, Waiver And
Guilty/No Contest Plea Form; makes the necessary findings and
accepts the defendant's plea of Guilty and his admissions.

The Court orders the current trial date of July 11, 1994,
vacated.

The defendant waives formal arraignment for judgment and has no
legal cause why judgment should not now be pronounced.

000164

**Case Name: PEOPLE vs. COLEMAN**
**Docket No.: 940988-9**

The Court orders that probation for the defendant be denied and
commits the defendant to the Department of Corrections for a
total fixed term of **FOUR YEARS**:

Count One: 211-212.5(a)-664 P.C. (ATTEMPTED ROBBERY
IN INHABITED DWELLING) - 654 P.C. Stay
12022.5(a) P.C. Enhancement - 654 P.C. Stay
Count Two: 459-460(a)-664 P.C. (ATTEMPTED FIRST
DEGREE BURGLARY) - Mitigated Term Of One
Year
12022.5(a) P.C. Enhancement - Three Years Imposed Con-
secutive With Count Two

The Court finds that the defendant should receive credit for 175
days of actual local custody plus 86 days good time/work time
credit for a total of 261 days credit for time already served.

The Court imposes a $200.00 restitution fine.

The Court advises the defendant of the provisions of parole.

**The defendant is remanded, however is to be held in local custody
and is not to be transported prior to June 28, 1994.**

**Stephen L. Weir**          By: _____
**County Clerk**                    K. Gray, Court Clerk



SUPERIOR COURT'S DECISION ON
HABEAS CORPUS



MC-275

Name  Rahsaan Coleman

Address  Pelican Bay State Prison

P.O. Box 7500 D7.101

CRESCENT CITY, Ca. 95532

CDC or ID Number  J24836

## SuPREME COURT of the
## State of California
(Court)

| | |
|---|---|
| Rahsaan Coleman | **PETITION FOR WRIT OF HABEAS CORPUS** |
| Petitioner | |
| vs. | No. _____ |
| Robert A. Horel, Warden, | *(To be supplied by the Clerk of the Court)* |
| Respondent | |
| On Habeas Corpus | |

## INSTRUCTIONS—READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under rule 8.380 of the California Rules of Court [as amended effective January 1, 2007]. Subsequent amendments to rule 8.380 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

MC–275

**This petition concerns:**

☑ A conviction                    ☐ Parole

☐ A sentence                      ☐ Credits

☐ Jail or prison conditions       ☐ Prison discipline

☐ Other (specify): _____

1. Your name: **Rahsaan Coleman**

2. Where are you incarcerated? **Pelican Bay State Prison**

3. Why are you in custody? ☑ Criminal Conviction  ☐ Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

**Voluntary ManSlaughter, Possession of a firearm by a felon, Personally used a firearm**

b. Penal or other code sections: **Cal. Pen. Code §§ 192(a), 667(a), 12021(a)(1), 12022.5(a)**

c. Name and location of sentencing or committing court: **Superior Court County of Contra Costa: 725 Court Street, P.O. Box 911 Martinez, Ca. 94553-1233**

d. Case number: **9801408**

e. Date convicted or committed: **June 5, 1998**

f. Date sentenced: **December 17, 1999**

g. Length of sentence: **59 Years to life**

h. When do you expect to be released? _____

i. Were you represented by counsel in the trial court? ☑ Yes.  ☐ No. If yes, state the attorney's name and address:

**Jonathan Cooper: 3811 Bissell Avenue Richmond, Ca. 94805**

4. What was the LAST plea you entered? (check one)

☑ Not guilty  ☐ Guilty  ☐ Nolo Contendere  ☐ Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

☑ Jury  ☐ Judge without a jury  ☐ Submitted on transcript  ☐ Awaiting trial

6. GROUNDS FOR RELIEF                                                                    **MC–275**

Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, ·use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

Petitioner was Deprived of His Federal Constitutional Right; Against-Cruel and unusual Punishment, (Please Refer to attached Pro Se habeas Corpus Petition at P.(31), et. Seq.)

a. Supporting facts:
Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where). (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

Please refer to Pro Se Petition attached hereto at Pp. (31) - (35)

b. Supporting cases, rules, or other authority (optional):
*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

Set forth in the arguement

7. Ground 2 or Ground _____ *(if applicable):*                                                MC–275

Petitioner's Federal Constitutional Rights, Prohibiting
Double Jeopardy were violated (Please refer to Pro Se
Petition attached here to at P. (36).), et; seq.

a. Supporting facts:    Please Refer to Pro Se Petition attached
here to at Pp. (36) - (44)

b. Supporting cases, rules, or other authority:    Set forth in the arguement

MC–275

8. Did you appeal from the conviction, sentence, or commitment? ☑ Yes. ☐ No. If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

Court of Appeal of the First Appellate District, Division one

b. Result affirmed                              c. Date of decision: June 20, 2001

d. Case number or citation of opinion, if known: A089743

e. Issues raised: (1) Please refer to next page; Page five (one)(5(1)) because

(2) of lack of writing space

(3)

f. Were you represented by counsel on appeal? ☑ Yes. ☐ No. If yes, state the attorney's name and address, if known:

Victor J. Morse, SBN 120916, PMB 232 3145 Geary Blvd. San francisco, Ca. 94118

9. Did you seek review in the California Supreme Court? ☑ Yes ☐ No. If yes, give the following information:

a. Result Review Denied                     b. Date of decision: September 19, 2001.

c. Case number or citation of opinion, if known: Unavailable (see Exhibit A, attached hereto.)

d. Issues raised: (1) Same as above

(2)

(3)

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

N/A

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

N/A

b. Did you seek the highest level of administrative review available? ☐ Yes. ☐ No.
Attach documents that show you have exhausted your administrative remedies.

Page 5 question No. 8(e) continued

e. Issues raised:

(1) The Trial Court Committed Reversible error when it refused to instruct the Jury that a killing may be a Justifiable homicide in self-defense even if the Person who kills feels other emotions in addition to fear of imminent danger of death or great bodily injury.

(2) The Trial Court committed Reversible error when it refused to instruct the Jury that a Person who kills in self-defense is not required to exercise due caution or circumspection as to the manner of the force that he uses against his aggressor and is not required to resort to less drastic means of securing his safety.

(3) The Trial Court committed Reversible error when it denied appellant's first Motion for new trial wherein appellant alleged that he was deprived of effective assistance of Counsel by his trial Counsel's failure to present evidence to establish that appellant had suffered a concussion and was unconscious at the time he shot the victim.

Page 5(1) continued

      (4) The Trial Court committed Reversible error when it denied appellant's second Motion for New trial based on evidence that appellant suffered from Post-traumatic disorder which appellant alleged was Newly discovered evidence that was not Presented at trial as a result of ineffective assistance of counsel.

      (5) The Trial Court abused its Discretion when it refused to strike one of appellant's Prior serious felony convictions Pursuant to Section 1385 for Purposes of sentencing under the Three Strikes Law, because appellant's two Prior serious felony convictions arose out of a single act and his current felony convictions involved mitigating circumstances.

      (6) The Trial Court erred when it concluded that it was compelled by the Three Strikes Law to sentence appellant consecutively for his two current convictions; in fact, section 654 Prohibits Double Punishment because appellant's two crimes were Part of an indivisible course of conduct.

          //
          //

Page 5(2) Continued

(7) The Trial Court erroneously
Imposed a term for the firearm use
Enhancement in Violation of the
Prohibition against Double Punishment
set forth in Section 654.

//

//

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court? ☑ Yes. If yes, continue with number 13. ☐ No. If no, skip to number 15.

MC–275

13. a. (1) Name of court: **U.S. District Court, Northern District of California**

   (2) Nature of proceeding (for example, "habeas corpus petition"): **Habeas Corpus**

   (3) Issues raised: (a) **Same as Above (Refer to Pro Se Petition.)**

   (b) _____

   (4) Result *(Attach order or explain why unavailable)*: **order staying (see Appendix 1)**

   (5) Date of decision: **6/25/07**

  b. (1) Name of court: **Superior Court, County of Contra Costa**

   (2) Nature of proceeding: **Habeas Corpus**

   (3) Issues raised: (a) **Because of lack of writing space Please refer to next**

   (b) **Page (6)1**

   (4) Result *(Attach order or explain why unavailable)*: **Denied (See Appendix 1 of Motion For AN**

   (5) Date of decision: **EVIDENTIARY HEARING)    8-23-07**

  c. *For additional prior petitions, applications, or motions, provide the same information on a separate page.*

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

   **Please Refer to Appendix 1**

   _____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.)

   _____

   _____

16. Are you presently represented by counsel? ☐ Yes. ☑ No. If yes, state the attorney's name and address, if known:

   _____

17. Do you have any petition, appeal, or other matter pending in any court? ☑ Yes. ☐ No. If yes, explain:

   **Please Refer to Appendix 1**

   _____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

   **N/A**

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: _____    ▶    _____

(SIGNATURE OF PETITIONER)

## Page 6 question No. 13(b)(3) continued

Issues raised:

    1. Petitioner contends the Trial Court abused its discretion when it refused to strike one of Petitioner's Prior serious felony convictions Pursuant to Section 1385, Resulting in Cruel and Unusual Conviction.

    2. Petitioner contends the Trial Court Erred When it concluded that it was compelled by the Three Strikes Law to Sentence Petitioner consecutively for His two current convictions; In fact, Section 654 Prohibits Double Punishment.

    3. Petitioner contends the Trial Court Erroneously Imposed a term for the firearm use enhancement in violation of the Prohibition against Double Punishment set Forth in section 654.

1  RAHSAAN COLEMAN
2  PELICAN BAY STATE PRISON
3  P.O. BOX 7500 D7·101
4  CRESCENT CITY, CA. 95532
5  C.D.C.R No. J24836
6  IN PRO PER

7
8
9

10          IN THE SUPERIOR COURT OF THE COUNTY
11                  OF CONTRA COSTA

12  RAHSAAN COLEMAN,           No._____
13        PETITIONER,
14     ON HABEAS CORPUS.
15
16
17          PETITION FOR WRIT OF HABEAS CORPUS
18
19       TO THE HONORABLE PRESIDING JUDGE OF THE
20  SUPERIOR COURT FOR THE COUNTY OF CONTRA COSTA.
21
22       PETITIONER RAHSAAN COLEMAN BY AND THROUGH
23  HIMSELF, PETITIONS FOR A WRIT OF HABEAS CORPUS AND BY
24  THIS VERIFIED PETITION STATES THAT HE WAS DEPRIVED
25  OF UNITED STATES CONSTITUTIONAL DUE PROCESS
26
27       MORE SPECIFICALLY, PETITIONER STATES:

## I

PETITIONER IS UNLAWFUL IN THE CUSTODY OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION BY ROBERT A. HOREL, WARDEN, PELICAN BAY STATE PRISON PURSUANT TO A JUDGEMENT PRONOUCED BY THE CONTRA COSTA COUNTY SUPERIOR COURT IN PEOPLE V. RAHSAAN COLEMAN, ACTION NO. 9801408. APPEAL IN THAT MATTER WAS HAD IN THE FIRST APPELLATE DISTRICT, DIV. ONE, ACTION NO. A089743.

## II

PETITIONER REQUESTS THAT THIS COURT TAKE JUDICIAL NOTICE OF THE RECORD ON APPEAL IN COURT OF APPEAL NO. A089743. (EVIDENCE CODE SECTIONS 452(a)(1), 453 AND, 459.)

## III

PETITIONER SUFFERS FROM ILLEGAL RESTRAINT BECAUSE HE WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT(S); AGAINST CRUEL AND UNUSUAL PUNISHMENT, AND PROHIBITION AGAINST DOUBLE JEOPARDY; IN THAT THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT REFUSED TO STRIKE ONE OF PETITIONER'S PRIOR SERIOUS FELONY CON-VICTIONS PURSUANT TO SECTION 1385, THE TRIAL COURT ERRED WHEN IT CONCLUDED THAT IT WAS COMPELLED BY THE THREE STRIKES LAW TO SENTENCE PETITIONER CONSECUTIVELY FOR HIS TWO CURRENT CONVICTIONS; IN FACT, SECTION 654 PROHIBITS DOUBLE PUNISHMENT, AND THE TRIAL COURT ERRONEOUSLY IMPOSED A TERM FOR THE FIREARM USE ENHANCEMENT IN VIOLATION OF THE PROHIBITION AGAINST DOUBLE PUNISHMENT SET

FORTH IN SECTION 654.

//

//

//

## IV

NO PRIOR PETITION HAS BEEN FILED BY PETITIONER OR ON PETITIONER'S BEHALF.

## V

BY THIS REFERENCE THE ACCOMPANYING MEMORANDUM OF POINTS AND AUTHORITIES AND EXHIBITS ARE MADE PART OF THIS PETITION AS IF FULLY SET FORTH HEREIN. PETITIONER'S CLAIMS UNDER THIS PETITION WILL BE BASED ON THE PETITION, THE ACCOMPANYING POINTS AND AUTHORITIES, THE EXHIBITS ATTACHED HERE TO AND ALL RECORDS, DOCUMENTS, AND PLEADINGS ON FILE WITH THIS COURT IN PEOPLE V. RAHSAAN COLEMAN No. 9801408 AND ANY FURTHER MATERIAL TO BE DEVELOPED AT ANY FUTURE HEARING WHICH MAY BE ORDERED.

WHEREFORE, PETITIONER RESPECTFULLY REQUEST THAT THIS HONORABLE COURT:

(1) ODER RESPONDENT TO SHOW CAUSE WHY PETITIONER IS NOT ENTITLED TO THE RELIEF SOUGHT;

(2) GRANT AN EVIDENTIARY HEARING;

(3) AFTER FULL CONSIDERATION OF THE ISSUES RAISED IN THIS PETITION, GRANT

1 | THE PETITION, VACATE THE JUDGEMENT AND SENTENCE
2 | IMPOSED UPON PETITIONER IN CONTRA COSTA COUNTY
3 | SUPERIOR COURT No. 9801408, AND
4 |                  (4) GRANT PETITIONER WHATEVER
5 | FURTHER RELIEF IS APPROPRIATE IN THE INTEREST OF
6 | JUSTICE.

DATED _____ , 200_

RESPECTFULLY SUBMITTED,

*_____

RAHSAAN COLEMAN
IN PRO PER

# VERIFICATION

I, RAHSAAN COLEMAN, STATES:

I AM THE PETITIONER IN THIS ACTION. I HAVE READ THE FOREGOING PETITION FOR A WRIT OF HABEAS CORPUS AND THE FACTS STATED THEREIN ARE TRUE OF MY OWN KNOWLEDGE, EXCEPT AS TO MATTERS THAT ARE THEREIN STATED ON INFORMATION AND BELIEF, AND AS TO THOSE MATTERS, I BELIEVE THEM TO BE TRUE.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT AND THAT THIS DECLARATION WAS EXCUTED AT CRESCENT CITY, CALIFORNIA ON _____, 200 .

MR. RAHSAAN COLEMAN
IN PRO PER

Points And Authorities

# I. STATEMENT OF FACTS

### A.    Introduction and Summary

Appellant was convicted of voluntary manslaughter
for shooting and killing Myron Mozel Mooring Parker at the
Martin Luther King Center in Richmond on July 31, 1997.
Undisputed evidence established that appellant shot Parker
only after Parker threatened and struck both appellant and
appellant's stepbrother Joseph Adrow.  Appellant asserted that
he shot Parker in an effort to defend himself and Adrow from
Parker, who he believed to be armed.  Appellant and Parker had
known each other for many years and had a history of hostile
encounters.  Just two weeks prior to the fatal shooting,
appellant had completed serving a prison term for his
convictions of attempted robbery and attempted burglary, which
resulted from an armed confrontation at Parker's residence
four years earlier.

### B.    The History of Hostile Confrontations Between Appellant and Parker Before the Fatal Shooting

Appellant and Parker had known each other for many
years and had been involved in a number of hostile
confrontations prior to the fatal shooting.

Several incidents occurred during the time appellant
lived with Parker's sister, Athena Nelson, who was appellant's
girlfriend at the time.  (RT 153, 410-411, 611.)  At one time,
Parker lived in an apartment next door to the one shared by
Athena and appellant.  Athena once banged on the wall to alert

Parker that appellant was battering her. Parker came over, pulled appellant off of Athena, told him to get out, and ultimately pushed him out the door. (RT 412-413.) Athena described another occasion when Parker intervened as Athena and appellant were arguing and fighting. After Parker pushed him outside, appellant leaned against Parker's car and refused to move. Parker again pushed appellant and began to hit him, but appellant just tried to protect himself. (RT 413-414, 420.) Appellant denied that he ever hit Athena. (RT 679-680.)

Appellant and Parker had once fought with their fists, according to both Athena and appellant's stepbrother Joseph Adrow. (RT 414, 527.) But according to appellant, Parker tried to punch him and appellant just blocked the punches. (RT 613.)

Parker repeatedly accused appellant of stealing his jewelry, his money, and his safe, but appellant denied ever stealing anything from Parker. (RT 417, 613, 625, 680.)

Appellant recalled an incident when Parker confronted him about his relationship with Athena, and took a swing at him. (RT 484, 486, 619, 620.) A friend named Nerbert intervened and started to fight Parker, but Parker ran into his residence and returned holding a Mini-14 assault rifle. Parker pointed the gun toward appellant and threatened to "smoke" him. (RT 484-485, 620-623.) When Parker's cousin Darius took the gun away from him, Parker threw a heavy object that shattered the windshield of the car in which appellant

was sitting with his infant niece.  (RT 485, 624-625.)  Athena

denied seeing this incident, but Rolanda, appellant's sister,

observed it.  (RT 419, 483.)  Parker later apologized to

Rolanda for having endangered her infant daughter.  (RT 489.)

Parker's ex-girlfriend Verdia Speech witnessed the incident

and acknowledged that Parker threw an object through the car

window, but denied that he brandished a gun.  (RT 1034-1035.)

Appellant recalled an incident when he awoke to find

Parker pointing a .357 handgun at him.  Parker smirked and

said, "I could have had you."  (RT 618.)

In 1992, Parker's other sister, Latasha Nelson,

accused appellant of committing a sexual battery against her.

(RT 682.)  Latasha was married to Joseph Adrow, appellant's

stepbrother, at the time.  (RT 151, 491, 610.)  Although

appellant claimed they had a consensual relationship, he

pleaded guilty to the charge.  (RT 682, 683.)

Someone shot Parker in 1993, but appellant was not

involved in that incident.  (RT 1096.)

## C.  Appellant's Crime Against Parker Four Years Before the Fatal Shooting

The most recent and most violent confrontation

involving appellant and Parker took place on November 28,

1993, four years before the fatal shooting in this case.

Appellant went to Parker's residence at 8:45 p.m., accompanied

by two friends, Gregory Davis and Peewee Davis.  (RT 139-140.)

They were armed and masked.  (RT 684.)  They intended to

burglarize or rob Parker's girlfriend and his young son, and

they mistakenly believed that Parker would not be at home.
(RT 410.) Appellant asserted that he expected that no one
would be at home. (RT 684.) Appellant, who had "dabbled" in
drug dealing, believed that Parker was a major dealer and that
he would have a lot of money in his home. (RT 627, 631, 691.)

When Parker heard someone trying to kick in his
front door, he took a gun and fired it through the door,
shooting Peewee in the head. Appellant and Gregory shot back
at the residence as they fled the scene. Parker left the
scene with his girlfriend and son, then called the police.
The police arrived at the scene and found Peewee shot in the
head. He was wearing a ski mask on his face and had a
revolver lying next to him. (RT 140, 686.)

Parker's girlfriend, Verdia Speech, claimed that
Parker owned no gun. She explained that the gun that Parker
used to shoot Peewee through the door was one that had been
provided to Parker by his cousin after a recent burglary at
Parker's residence. (RT 1036-1037.)

A few weeks after the incident, a police officer
arrested appellant when he observed him holding a loaded
.45 caliber semiautomatic gun. (RT 1027, 1030.) Although
appellant denied involvement in the incident at Parker's
residence, he and Gregory Davis pleaded guilty to attempted
burglary and attempted robbery with use of a gun. (RT 140-
141, 689.) Appellant was not charged with accessory to
murder, and Parker was charged with no crime. (RT 1096-1097.)

Appellant went to prison for four years. (RT 628.) Although he was upset that his best friend Peewee had been killed, he was not angry at Parker. (RT 415, 523, 627.)

However, Parker was angry at appellant. (RT 184.) Parker once said to Adrow that he and appellant "had something to settle when [appellant] got home from prison." Adrow reported this remark to appellant. (RT 497-498.) Appellant also heard that Parker had said that appellant would have to "answer" to him when he got out of prison. (RT 635.)

### D.    Evidence of Parker's Character for Violence

Appellant described Parker as violent and an "[a]rrogant, uppity, bully type individual." (RT 613.) Appellant, who admitted to being a drug dealer, believed that Parker was usually armed because drug dealers are typically armed all the time. (RT 615, 691.) Appellant had seen Parker with a gun several times. (RT 616-617.)

Joseph Adrow said Parker was known in the community as "a bully and a gunslinger." Adrow had seen him with a gun "a few times." According to Adrow, "If [Parker] couldn't whoop you, he'd pull a gun on you." Once when Adrow and Latasha had a dispute, Parker and his friends chased Adrow and tried to jump him. (RT 492-493.)

Parker's friend Bryan Lowe said he had seen Parker fight with his fists, but had never seen him with a gun. (RT 450.) Lowe said, "You had to be crazy to mess with Myron," because Parker was a formidable fighter. (RT 463.)

X
(16)

Parker got into an altercation in 1996 with his friend Eric Dokes. (RT 982-984.) Dokes told the police that Parker had struck him with his fist, pointed a gun at his chest, and said, "Nigger, I'm going to kill you." (RT 1013-1015.) However, Parker told the police it was Dokes who had pulled a gun on him. (RT 1024.) When they searched Parker's residence, the police found a semi-automatic handgun with a fully loaded magazine stuck underneath a mattress on which a small child was sitting. They also found a box of cartridges for the gun, and paraphernalia for weighing and packaging narcotics. (RT 1016-1019, 1022.) Parker was arrested for pointing the gun at Dokes and for endangering the child, but ultimately no charges were filed. (RT 1019-1020, 1024.) Dokes, who had several felony convictions, later claimed that he lied when he told the police that Parker pulled a gun on him and threatened to kill him, because he wanted to divert their attention from him, as it was actually he who had pointed a gun at Parker. (RT 984-985, 987, 989, 996-998.) However, Dokes acknowledged that Parker was a drug dealer and that he owned a .9 mm. gun. (RT 986-987.) Verdia Speech said the gun found in Parker's residence belonged to Parker's friend. Speech said Parker told her that he and Dokes had each pulled a gun on the other. (RT 1039-1040.)

Speech said she had seen Parker fight with his hands but never with a weapon. (RT 1041.) She claimed he never owned a gun. (RT 1043.) Athena claimed she had never seen

Parker with a gun.  (RT 419.)  Deatra Allison, who was on

felony probation for selling drugs when she gave her trial

testimony, grew up with Parker.  (RT 1068, 1072-1073.)  She

never knew him to carry a gun.  (RT 1068.)

### E.    Appellant's Release from Prison Two Weeks Before the Fatal Shooting

Appellant was released from prison in 1997.

(RT 628.)  According to his stepbrother Joseph Adrow, he was

an entirely different person when he came home.  He had become

a Muslim and was opposed to violence.  (RT 498-499, 632.)

According to appellant's teenage sister Lynetta Monroe,

appellant prayed often.  (RT 587-588.)

Appellant wanted to tell Parker he was sorry.

(RT 498.)  He told Athena he would like to meet with Parker so

they could put their differences behind them.  (RT 636-637.)

Latasha informed Parker that appellant had told her he had

become religious and that he wanted to change his life and

make peace with Parker.  (RT 189-190.)  Appellant received no

response.  (RT 636-637.)

Athena later reported that Parker had said that

appellant "better not be coming around messing with him,

otherwise he'd kick his ass."  (RT 817.)  When Athena warned

Parker to "watch his back," Parker told Athena he was not

thinking about appellant and he was not worried.  (RT 416.)

Parker told Athena that appellant "better not come around

bothering him."  (RT 424.)  Verdia Speech said Parker was not

worried about appellant getting out of prison.  (RT 1042.)

Parker also told Deatra Allison he was not worried about appellant getting out of prison. He did not seem to want to seek revenge against appellant. (RT 1071.) However, Parker told Allison about rumors that "some shit was going to get started and either [appellant] was going to get [Parker] first or [Parker] was going to get him." (RT 1075-1078; Defense Exhibit 34A.) Nevertheless, Parker stayed away from North Richmond, where appellant lived. (RT 529.)

Appellant heard from a friend that Parker was "out looking for" him and that it was not "cool" for appellant to go to Parker's side of town. (RT 637.) His friend Nerbert told appellant that he should not confront Parker, because Parker was carrying guns. (RT 639.)

Appellant began to fear Parker. (RT 639.) As a result, appellant bought a gun for his own protection, although he knew convicted felons could not lawfully possess firearms. (RT 640, 693.) Appellant took the gun with him every time he left the house. (RT 644, 697.) Adrow did not know appellant had bought a gun. (RT 500, 528.)

### F.    The Day Appellant Fatally Shot Parker

On July 31, 1997, appellant had been out of prison for just two weeks. (RT 502.) He was living with his parents and his stepbrother Joseph Adrow at their residence in North Richmond. (RT 152-153, 500, 502, 610.)

That afternoon, appellant was at home with Adrow, their little sister Lynetta, Kelli Hicks, and appellant's

stepmother Yvonne Coleman.  (RT 154, 603.)  According to
Lynetta, Adrow received a phone call from Latasha.  Adrow
appeared to become angry during their conversation.  (RT 589.)
Soon thereafter, Latasha arrived at their residence to visit
Yvonne, her ex-mother-in-law.  (RT 153, 193, 642.)  Although
Latasha and Adrow had divorced in 1995, Latasha remained
friendly with Yvonne.  (RT 152, 154.)

After she had sat and talked with Yvonne for a
while, Latasha got up to leave, explaining that she had to
pick up her child, who was enrolled in a day care center at
Martin Luther King Center.  (RT 154.)  The Center was located
two or two and a half miles from appellant's residence.
(RT 266.)  Latasha's grandmother would typically pick up
Latasha's child at the Center, but on this day Latasha's
grandmother was unavailable.  (RT 197.)

According to Latasha's testimony, Adrow asked her
whether she would give him a ride to visit her cousin Irville,
who lived near the Center.  Latasha agreed, but said she had
to pick up her child before she took him to see Irville.
(RT 155, 194.)  However, according to Latasha's statement to
the police, it was she who had asked Adrow to come with her to
the Center.  (RT 196, 286; Defense Exhibit 28A.)  Appellant,
Adrow, Lynetta, and Hicks also said it was Latasha who had
asked Adrow to accompany her.  (RT 154, 500, 590, 603, 649.)

Latasha made a phone call before she left the house.
(RT 596, 603, 644.)  When Latasha and Adrow walked outside

12
(20)

together, appellant came out and asked Latasha whether he
could come with them. (RT 155-156, 286, 502, 643; Defense
Exhibit 28A.) Appellant just wanted to spend more time with
Adrow. (RT 643.) Latasha agreed. (RT 156.)

They drove to the Martin Luther King Center.
Appellant and Adrow thought it strange that Latasha drove an
indirect route through the area where Parker was known to
spend time. (RT 503-505, 645-646.) However, Latasha
considered it to be a direct route. (RT 198.) En route to
the Center, appellant saw Parker congregating with about 15 to
20 people. Appellant and Parker made eye contact. Latasha
continued driving. (RT 648.)

When they arrived at the Martin Luther King Center,
Latasha went inside, and appellant and Adrow remained outside.
(RT 156, 506.) The Center is a single building where
recreational activities are provided for children and adults.
(RT 143.) As appellant and Adrow were waiting outside the
Center, Parker appeared on the scene. (RT 507, 649.) Parker
approached appellant and Adrow. Adrow observed that Parker
was holding his hand under his shirt. Adrow went into the
Center but appellant remained outside with Parker. (RT 507.)

Appellant and Parker talked for a while, then Parker
hit appellant. (RT 507, 510, 515, 649; Defense Exhibit 28A.)
According to appellant, Parker punched him right after he told
Parker that he had come in peace. (RT 649.) Appellant did
not hit Parker, but he grabbed him and repeated that he had

come in peace. (RT 508, 515, 651.) Parker appeared angry and
said, "What's up with that shit." (RT 650.)

Adrow went inside the Center and told Latasha, who
was signing her child out of the day care, that Parker was
outside "jumping on" appellant. (RT 156-157, 508.) Latasha
was surprised to hear that Parker was there. (RT 197.) She
went outside to try to persuade Parker to stop arguing with
appellant. (RT 157, 651.) Appellant and Parker were standing
outside the front entrance, but they were not talking.
(RT 157.) It appeared to Latasha that Parker was angry.
(RT 190-191.) Latasha suggested to Parker that he "let it
go," but Parker replied that he would not. (RT 158, 651.)

According to Latasha's trial testimony, she then
returned inside the Center. (RT 158.) She was followed first
by Adrow and appellant, and then by Parker. (RT 159, 303.)
However, according to both appellant's trial testimony and
Latasha's statement to the police soon after the shooting,
appellant ran into the Center first while Latasha remained
outside talking to Parker for a while longer. (RT 202-204,
286, 651.)

Appellant and Parker argued about the armed
confrontation that had taken place at Parker's residence four
years earlier. (RT 509.) Parker was hostile, but appellant
was apologetic. (RT 509.) Appellant did not want to fight
Parker, just avoid him. (RT 652.)

Parker hit Adrow and challenged him to get involved

in the dispute, but Adrow declined. (RT 159-160, 175, 510-511, 653; Defense Exhibit 28A.) Parker continued to hold his hand under his shirt, as if he were concealing a gun. (RT 510, 654.) Parker was blocking the front door of the Center, and both appellant and Adrow felt unable to exit the reception area. (RT 514, 659.) According to appellant, another set of doors was chained and locked. (RT 661.) However, according to Jerry Anderson, the Center Coordinator, there were three ways to exit the reception area, and none of them would ever be chained and locked. (RT 770, 777-778.)

Appellant believed Parker was going to shoot him. (RT 655, 662, 664.) He again told Parker he wanted no trouble, and asked the person at the reception desk to call him a taxi. (RT 159-160, 510, 652, 654; Defense Exhibit 28A.)

Parker told appellant he had a "posse" or "crew" of his people coming to help him out. (RT 161, 204, 206, 512, 659.) According to appellant and Adrow, Parker threatened to "dump on" them, meaning shoot them. (RT 512, 654.)

According to appellant, the person at the reception desk was a teenager named Zakiyah Anderson. (RT 653, 657.) Anderson denied in her trial testimony that she was a witness to the incident, but she told a police officer shortly after the shooting that she had seen Parker hit Adrow, seen appellant's nose bleeding, and heard Parker say, "I'll beat both your asses." (RT 761, 805.)

What happened next was described differently by the

various witnesses. Adrow recalled that Parker hit appellant
another time and knocked him down. Appellant appeared dazed
when he first stood up. (RT 516.) Appellant then pulled out
a gun and pointed it at Parker. (RT 516-517, 541-542, 546.)
When Parker saw the gun, he ducked down but then "popped" back
up, and appellant shot at him twice. (RT 517, 558.)

In contrast to Adrow's recollection, appellant did
not remember Parker hitting him when they were inside the
Center. (RT 662.) Appellant recalled that he removed his gun
from under his shirt and held it at his side. (RT 665.)
Then, after Parker began to push a couch toward him, appellant
shot the gun once, without aiming it, but he hit Parker.
(RT 666-667, 672, 727.) He then racked the gun. (RT 669.)
His purpose in shooting was not to kill Parker but to prevent
Parker from killing him and harming Adrow. (RT 667, 676.)

According to Latasha's trial testimony, she had not
been paying close attention to appellant and Parker, as she
was in the process of signing her child out of the day care.
(RT 161-162.) Latasha recalled that after she heard appellant
reply, "I know, Myron," to Parker's remark about a "posse,"
appellant then fired the gun. (RT 161-163.) When she heard
the shot, she looked up and saw appellant standing and holding
a gun pointed down to the floor. (RT 163-164.) She had not
seen appellant's gun before that moment. (RT 163.) However,
according to her statement to the police soon after the
shooting, she observed appellant remove the gun from his

pants, aim it at Parker, and shoot it. (RT 209, 284.)

According to Zakiyah Anderson's statement to the police, appellant pulled out a gun but did not raise it toward Parker until about 15 seconds later. (RT 806.) Parker ran and appellant pursued him, then shot him. (RT 806.)

Dana Brookins, a teacher in the day care, ran to the door of her room when she heard the shot. She saw appellant standing outside the door, holding a gun at his side and beginning to raise it up. When she told him, "there's babies in here," appellant ran to the exit. (RT 242-247.) Latasha asked Brookins, "Did he just shoot my brother?" (RT 249.)

Following the shooting, Parker ran out of the reception area. (RT 164, 519, 668.) Latasha followed him into the gym, where Parker collapsed on the floor. (RT 168, 231, 233, 292.) She was the first person to reach Parker after he collapsed. She knelt next to him on the floor. (RT 220.)

Appellant and Adrow ran out of the Center and to the BART station, where they got in a cab that took them to their residence. (RT 164, 169, 668, 520, 669.) Adrow took appellant's gun and hid it near their home. (RT 520, 669.)

The police arrived at the Martin Luther King Center at 4:22 p.m. and found Parker lying on the floor. (RT 142-144.) Emergency medical technicians were providing treatment. (RT 144.) Latasha approached Officer Steven Purcell. She was very upset but she explained that she had seen appellant shoot

her brother, and that appellant and Adrow had fled on foot.
She provided appellant's name, age, address, and a description
of his clothing. (RT 146-147.) Despite the officers' request
that she remain, Latasha left the scene. (RT 221.)

The police found a .9 mm. shell casing and a live
bullet in the reception area of the Center. (RT 299, 303.)
They found a pager in Parker's pants but on gun no his person.
(RT 293-295, 318.) The pager's memory showed that Parker had
received two pages just prior to the shooting, one at
3:48 p.m. and another at 3:57 p.m. (RT 319-320.)

Parker died from a gunshot wound to his chest. The
bullet had traveled through his left arm and into his chest.
(RT 429-430.) Its trajectory was from left to right and
slightly downward, indicating that Parker must have been lower
than the gun when it fired. (RT 439-440.) Parker had fresh
abrasions on his right hand and right knee, which were
probably not the result of Parker hitting someone but rather
were the result of falling. (RT 433-434.) There was no
evidence of drugs or alcohol in his system. (RT 435.)

The police arrested appellant at his residence at
about 5:00 p.m. that day. He was cooperative. (RT 264-266,
268, 673.) Appellant drew an officer's attention to cuts on
his nose and mouth, and remarked that they looked like the
result of an assault. (RT 742-743, 1082.) An officer
observed that appellant had an abrasion on the inside of his
upper lip and a small abrasion on his nose. (RT 755, 1082.)

The police interviewed appellant and videotaped the interview. (RT 673, 823-827; Joint Exhibit A.) Appellant explained that Parker had struck him and that he had feared for his life, but appellant falsely claimed that it was not him but some unknown person who had shot Parker. (RT 674, 744.) Appellant denied that he had a gun. (Joint Exhibit A.) He also falsely claimed that he had not committed the 1993 crimes. (RT 690, 829.) Appellant said that during their confrontation, Parker had grabbed at his own waistband and threatened to "do" appellant and "dump on" him. He also said Parker had struck Adrow as well as appellant. (Joint Exhibit A.) Ultimately appellant admitted that he shot Parker, but he said he did it in self-defense. (RT 837.)

The police also interviewed Adrow and audiotaped the interview. (RT 1084; People's Exhibit 25B; Court Exhibit 7.) Adrow falsely claimed that appellant did not shoot Parker. (RT 266, 522, 555-556, 839.) He said Parker struck both him and appellant, and threatened to shoot them. However, Adrow never claimed that appellant shot Parker in self-defense. (RT 1089, 1091; Court Exhibit 7, p. 14.)

At 11:00 p.m., the police searched appellant's residence. (RT 277.) Adrow showed them that appellant's gun was hidden at an apartment complex around the corner, in a shirt rolled up in a jacket inside a tire under an ice chest at the rear of the building. (RT 278-279, 305-306, 522.) It was a .9 mm. gun with a live round in the chamber and an

(27)

attached magazine inside the gun which contained seven
additional live rounds of ammunition.   (RT 308-309.)

        Ken Fukii, a firearms examiner, could not determine
with certainty that the bullet removed from Parker's rib cage
was fired by appellant's gun.  (RT 310, 342, 348.)  However,
the shell casing and the live bullet found in the Center came
from appellant's gun.  (RT 349-350, 354.)

        Bryan Lowe was Parker's friend for many years.
(RT 444.)  He said Parker was shooting dice and gambling with
him and some friends on Main Street on the day of the
shooting.  (RT 445, 449.)  After Parker received a page, he
told Lowe he was going to the Center.  When Lowe asked if he
could come along, Parker said that Lowe should instead go to
the store to buy some more drinks, so they could continue
gambling and drinking when Parker returned from the Center.
They drove toward the Center in Parker's car, but Parker
dropped off Lowe near the store.  After he left the store,
Lowe went to the Center, where he saw that Parker had been
shot.  (RT 446-447.)  Lowe told an investigator that when he
went to the Center, he went with other people.  (RT 818.)

        Parker typically spent time near the corner of Third
and Main Streets, seven blocks from the Center.  (RT 176, 416,
444.)  He went to the Center every day to work out and play
sports.  (RT 416, 449.)  Latasha denied that she had alerted
Parker to meet them at the Center that day.  (RT 217.)

//

(28)

## II. HABEAS CORPUS IS A PROPER VEHICLE FOR THE PRESENTATION OF PETITIONER'S CLAIM(S)

THE CLAIM(S) PRESENTED IN THIS PETITION IS THAT PETITIONER WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT(S) AGAINST CRUEL AND UNUSUAL PUNISHMENT AND PROHIBITION AGAINST DOUBLE JEOPARDY. IF THE RECORD AFFIRMATIVELY SHOWS THAT THE TRIAL COURT DIDN'T KNOW IT HAD THE POWER TO STRIKE, PETITIONER IS ENTITLED TO A REMAND WITHOUT ANY FURTHER SHOWING THAT HE IS LIKELY TO GET A SHORTER SENTENCE. (PEOPLE V. RODRIGUEZ (1998) 17 CAL. 4TH 253; SEE ALSO, PEOPLE V. VONG (1997) 58 CAL. APP. 4TH 1063.) BOTH RODRIGUEZ AND VONG SUGGEST THAT THESE "AFFIRMATIVE SHOWING" CASES CONTAIN A BUILT-IN LIKELIHOOD OF SUCCESS ON REMAND: THE JUDGE WOULDN'T HAVE BOTHERED TO ARTICULATE HER LACK OF DISCRETION ON THE RECORD, UNLESS SHE WOULD HAVE LIKED TO GIVE PETITIONER A BREAK.

UNDER PEOPLE V. FUHRMAN (1997) 16 CAL. 4TH 930, A PETITIONER SENTENCED PRE-ROMERO CAN GET A REMAND FOR RESENTENCING ONLY IF THE RECORD AFFIRMATIVELY DEMONSTRATES THAT THE TRIAL JUDGE "COMMITTED ERROR OR WOULD HAVE EXERCISED DISCRETION UNDER SECTION 1385 TO STRIKE THE PRIOR CONVICTION IF IT BELIEVED IT HAD SUCH DISCRETION...." DOES "OR" REALLY MEAN "AND" IN THAT LAST SENTENCE?

1  DOES THE PETITIONER HAVE TO SHOW BOTH THAT
2  THE TRIAL COURT DIDN'T KNOW IT COULD STRIKE,
3  AND ALSO THAT THE TRIAL COURT WOULD HAVE STRIKEN
4  IF IT COULD? APPARENTLY NOT. IN PEOPLE V. RODRIGUEZ,
5  (1998) 17 CAL. 4TH 253; THE SUPREME COURT HELD THAT
6  ON A RECORD WHICH AFFIRMATIVELY SHOWS THAT THE
7  JUDGE THOUGHT SHE HAD NO POWER TO STRIKE,
8  PETITIONER IS ENTITLED TO A REMAND.

9      THE REMAND ORDER SHOULD SPECIFY THAT HE
10  MAY APPEAR PERSONALLY AND WITH COUNSEL IN COURT
11  TO HAVE THE JUDGE EXERCISE HER SECTION 1385
12  DISCRETION.

13      PEOPLE V. GILLISPIE (1997) 60 CAL. APP. 4TH 429:
14  TAKES A COMMON SENSE APPROACH TO THE AG'S
15  ARGUEMENT THAT PETITIONER CAN'T MAKE A "MOTION"
16  TO HAVE THE TRIAL COURT EXERCISE ITS SECTION
17  1385 DISCRETION, AND THAT PETITIONER CAN'T
18  APPEAL THE TRIAL COURT'S REFUSAL TO DO SO.
19  TRUE, PETITIONER CAN'T MAKE A MOTION; HE CAN ONLY
20  ASK THE TRIAL COURT TO EXERCISE ITS DISCRETION.

21      BUT ON APPEAL FROM A FINAL JUDGEMENT OF
22  CONVICTION, UNDER SECTION 1237 (a), PETITIONER
23  CAN RAISE ANY CLAIM OF ERROR-- INCLUDING ERRORS
24  WHICH THE TRIAL COURT HAS MADE ON ITS OWN
25  MOTION. "THE FACT THAT AN ACTION IS TAKEN
26  ON THE COURT'S OWN MOTION DOES NOT PRECLUDE
27  THE POSSIBILITY OF ERROR APPEARING ON THE
28  RECORD."

1 WHERE A PRE-ROMERO TRIAL COURT EXPRESSLY
2 DISAVOWED ANY POWER TO STRIKE STRIKES, A FULL
3 REMAND (WITH PETITIONER PRESENT AND REPRESENTED, AS
4 IN CORTEZ (78) 6 CA.3d 78) IS REQUIRED. (SEE,
5 PEOPLE V. VONG 58 CAL. APP. 4TH 1063). FUHRMAN
6 REQUIRES A PRELIMINARY SHOWING THAT THE MOTION
7 TO STRIKE IS LIKELY TO SUCCEED ONLY IN SILENT
8 RECORD CASES. AND IT LIKEWISE ALLOWS SUMMARY
9 DISMISSAL ONLY IN SILENT RECORD CASES. WHERE
10 TRIAL COURT ACTUALLY SAID IT HAD NO POWER TO
11 STRIKE, WE WILL PRESUME THAT THERE WAS A
12 REQUEST FOR RELIEF, AND THAT IT WAS BASED ON
13 A LIKELIHOOD THAT RELIEF WOULD BE FOUND
14 APPROPRIATE.

15 "THUS, IT IS PROBABLE THAT THE CASES
16 WHERE THE TRIAL COURT DISCLAIMED POWER TO
17 DISMISS STRIKES ARE PRECISELY THOSE CASE WHERE
18 THE BEST ARGUEMENTS CAN BE MADE FOR DOING
19 SO." SAME HOLDING, FROM THE SAME COURT:
PEOPLE V. BANKS (1997) 59 CAL. APP. 4TH 20.

20

21 III. PETITIONER WAS DEPRIVED HIS EIGHTH
22 AMENDMENT RIGHT AGAINST CRUEL AND UNUSUAL PUNISH-
23 MENT

24 A. THE LAW PRETAINING TO CLAIMS OF CRUEL
25 AND UNUSUAL PUNISHMENT

26

27 ANYTHING, INCLUDING PRIORS AND

1  FINDING THAT IMPOSITION OF IT WOULD VIOLATE
2  THE CRUEL AND UNUSUAL PUNISHMENT PROHIBITION
3  FOUND IN THE CALIFORNIA AND UNITED STATES
4  CONSTITUTIONS. [SEE EXHIBIT C]
5      APART FROM ANY ARGUEMENT THAT THE
6  SENTENCE IS CRUEL AND UNUSUAL AS A MATTER OF
7  LAW, IT CAN ALWAYS BE ARGUED THAT IMPOSITION
8  OF THAT SENTENCE TO THIS DEFENDANT WOULD
9  BE CRUEL AND UNUSUAL AS APPLIED.
10 (PEOPLE V. DILLION (1983) 34 CAL. 3d 441; PEOPLE V.
11 SUPERIOR COURT (BEASELY) (1984) 159 CAL APP. 3d 131.)
12     NO MATTER HOW MANDATORY THE SECTION
13 AT ISSUE IS, CRUEL AND UNUSUAL PUNISHMENT CAN
14 ALWAYS BE USED TO PREVENT ITS USE. (UNITED STATES
15 CONSTITUTION, EIGHTH AMENDMENT AND CALIFORNIA
16 CONSTITUTION ARTICLE 1, SECTION(S) 7, 15, é 16.)
17     PETITIONER SUBMITS THAT THE TRIAL COURT
18 ABUSED ITS DISCRETION IN REFUSING TO STRIKE ONE
19 OF HIS PRIOR CONVICTIONS FOR PURPOSES OF SENTENC-
20 ING UNDER THE THREE STRIKES LAW, BECAUSE "THE
21 NATURE AND CIRCUMSTANCES OF [PETITIONER'S] PRESENT
22 FELONIES AND PRIOR SERIOUS ... FELONY CONVICTION,
23 AND THE PARTICULAR OF HIS BACKGROUND, CHARACTER,
24 AND PROSPECTS," COMPEL THE CONCLUSION THAT
25 HE MUST BE "DEEMED OUTSIDE THE SCHEME'S
26 SPIRIT." (SEE PEOPLE V. WILLIAMS, (1998) 17 CAL. 4TH
27 148, 161; EWING V. CALIFORNIA, 538 U.S. 11 P. 19.) THE
28 RECORD DISCLOSES THE FOLLOWING CIRCUMSTANCES
   THAT WARRANT RELIEF.

THE close CONNECTION BETWEEN PETITIONER'S
TWO PRIOR SERIOUS FELONY CONVICTIONS COMPELLS
THE CONCLUSION THAT THE TRIAL COURT WAS
OBLIGATED TO EXERCISE ITS DISCRETION TO
STRIKE ONE OF THEM PURSUANT TO SECTION 1385.
PETITIONER'S RECORD OF STRIKES CONSISTS SOLELY
OF HIS TWO CONVICTIONS ARISING FROM A SINGLE
ACT. SPECIFICALLY, HIS ATTEMPT TO UNLAWFULLY
ENTER MYRON PARKER'S RESIDENCE. THE RECORD OF
THE PRIOR CONVICTIONS "DISCLOSES" THAT PUNISH-
MENT STAYED ON ONE OF THE TWO CONVICTIONS
PURSUANT TO SECTION 654. (CT 735.) ALTHOUGH
THE SUPREME COURT IN *PEOPLE V. BENSON* (1998)
18 CAL. 4TH 24; HELD THAT THREE STRIKES LAW
TREATS AS SEPARATE "STRIKES" EVEN THOSE
CONVICTIONS FOR WHICH SEPARATE PUNISHMENT
WAS BARRED BY SECTION 654 (ID. AT P. 28)

THE COURT ADDED A CRUCIAL CAVEAT THAT APPLIES
TO PETITIONER'S CASE. THE COURT COMMENTED,
"BECAUSE THE PROPER EXERCISE OF A TRIAL COURT'S
DISCRETION UNDER SECTION 1385 NECESSARILY
RELATES TO THE CIRCUMSTANCES OF A PARTICULAR
DEFENDANT'S CURRENT AND PAST CRIMINAL CONDUCT,
WE NEED NOT AND DO NOT DETERMINE WHETHER
THERE ARE SOME CIRCUMSTANCES IN WHICH TWO
PRIOR FELONY CONVICTIONS ARE SO CLOSELY
CONNECTED -- FOR EXAMPLE WHEN MULTIPLE
CONVICTIONS ARISE OUT OF A SINGLE ACT BY
THE DEFENDANT AS DISTINGUISHED FROM

1  MULTIPLE ACTS COMMITTED IN AN INDIVISIBLE
2  COURSE OF CONDUCT-- THAT A TRIAL COURT WOULD
3  ABUSE ITS DISCRETION UNDER SECTION 1385
4  IF IT FAILED TO STRIKE ONE OF THE PRIORS".
5      PETITIONER'S CASE IS PRECISELY THE
6  HYPOTHETICAL CASE DESCRIBED IN BENSON. (SEE
7  ALSO, BROWN V. MAYLE, 283 F.3d 1019 p.1036;
8  DURAN V. CASTRO, 227 F. SUPP. 2d 1121 p. 1131.)
9  THERE IS NO RATIONAL BASIS FOR PETITIONER TO
   BE CONSIDERED A "THIRD STRIKE" RECIDIVIST
10 OFFENDER, WHEN HIS CONVICTIONS OF ATTEMPTED
11 BURGLARY AND ATTEMPTED ROBBERY AROSE FROM A
12 SINGLE ACT, COMMITTED AT ONE TIME AND WITH A
13 SINGLE INTENT, AND WHEN THE CONVICTIONS WERE
14 PUNISHED AS A SINGLE CRIME PURSUANT TO SECTION
15 654. PREJUDICIAL EFFECT
16     IT CANNOT REASONABLY BE SUGGESTED THAT
17 PETITIONER POSES A GREATER THREAT TO PUBLIC
18 SAFETY JUST BECAUSE HE WAS CONVICTED OF TWO
19 CRIMES RATHER THAN ONE CRIME AS A RESULT
20 OF HIS SINGLE ACT. PEOPLE V. VANDYKE, A075466.
21 AOB BY NEIL MORSE, 6/97. THE POST-ROMERO SENTENCING
22 COURT KNEW IT COULD STRIKE, BUT SET AN IMPOSS-
23 IBLY HIGH STANDARD FOR DOING SO: SENTENCE MUST
24 BE CRUEL AND UNUSUAL TO BE STRICKEN. AOB
25 ARGUES THAT 1385'S "FURTHERANCE OF JUSTICE" IS
26 NOT SUCH A RARE EVENT; IT'S MORE LIKE THE
27 MITIGATION OF PEOPLE V. THOMAS (1992) 4 CAL. 4TH 206.
28 IN THOMAS, THE SCT. EXPLICITLY COMPARED

1  1385 TO 1170.1(h)-- WHICH ALLOWS STRIKING BASED
2  ON ANY RULE 423 CIRCUMSTANCES.

3

4      B. PETITIONER CONTENDS THE TRIAL COURT
5         ERRED WHEN IT CONCLUDED THAT IT WAS
6         COMPELLED BY THE THREE STRIKES LAW
7         TO SENTENCE PETITIONER CONSECUTIVELY
8         FOR HIS TWO CURRENT CONVICTIONS; IN
9         FACT, SECTION 654 PROHIBITS DOUBLE
10        PUNISHMENT BECAUSE PETITIONERS TWO
11        CRIMES WERE PART OF AN INDIVISBLE
12        COURSE OF CONDUCT.

13

14     PETITIONER ALLEGES THAT CONSECUTIVE
15  SENTENCING IN HIS CASE IS IN VIOLATION OF THE
16  FIFTH AMENDMENT PROHIBITION AGAINST DOUBLE
17  JEOPARDY, OUTLINED IN THE (UNITED STATES AND
18  CALIFORNIA CONSTITUTION(S) ARTICLE 1 § 7, 15 & 16.)
19  OVER DEFENSE OBJECTION (RT 30-31, 44 [12/17/99]; CT
20  762-769), THE TRIAL COURT ERRONEOUSLY SENTENCED
21  PETITIONER TO TWO CONSECTIVE INDETERMINATE
22  TERMS OF 25 YEARS TO LIFE IMPRISONMENT FOR HIS
23  TWO CURRENT FELONY CONVICTIONS, BECAUSE IT
24  MISTAKENLY DETERMINED THAT THE THREE STRIKES
25  LAW REQUIRED SUCH SENTENCING. (CT 814-816; RT 19-20
26  , 40-42 [12/17/99].) [SEE Exhibit (S) B AND D]

27     THE COURT EVEN STATED ON THE
28  RECORD THAT IF IT HAD THE DISCRETION, IT
29  WOULD HAVE SENTENCE PETITIONER CONCURRENTLY.

1   (RT 41-42 [12/17/99].)

2          CONTRARY TO THE TRIAL COURT'S DETERMINATION,

3   THE THREE STRIKES LAW PERMITTED THE COURT THE

4   DISCRETION TO SENTENCE APPELLANT CONSECUTIVELY

5   OR CONCURRENTLY, BECAUSE PETITIONER'S TWO CURRENT

6   CRIMES WERE COMMITTED ON THE SAME OCCASION

7   AND AROSE OUT OF THE SAME SET OF OPERATIVE

8   FACTS. HOWEVER, AS THE TWO CRIMES WERE PART OF

9   AN INDIVISIBLE COURSE OF CONDUCT, THE STATUTORY

10  PROHIBITION AGAINST DOUBLE PUNISHMENT SET

11  FORTH IN SECTION 654 PROHIBITS CONSECUTIVE

12  SENTENCING, AND IN FACT REQUIRES THAT THE

13  SENTENCE ON ONE OF PETITIONER'S CONVICTIONS BE

14  STAYED.

15          IN PEOPLE V. NEWSOME (1997) 57 CAL. APP. 4TH

16  902, THE TRIAL COURT'S MISUNDERSTANDING HAD TO DO

17  WITH WHETHER CONSECUTIVE SENTENCES WERE MAN-

18  DATORY, UNDER 667(C)(6); IT MISTAKENLY THOUGHT

19  THEY WERE. CA.3 REMANDS FOR RESENTENCING, NOTING

20  THAT THE RECORD SHOWS THE TRIAL COURT THOUGHT

21  IT HAD NO DISCRETION. "WHERE THE RECORD ... IS

22  NOT 'SILENT' BUT SHOWS THE COURT DID MISUNDER-

23  STAND ITS DISCRETION, AND DOES NOT SHOW HOW

24  THE COURT WOULD HAVE ACTED, A REMAND IS APPROPRIATE

25  PEOPLE V. SMITH (1997) 59 CAL. APP. 4TH 46."

26  THE FACTS OF PETITIONER'S CASE DO NOT TRIGGER

27  MANDATORY CONSECUTIVE SENTENCING. THE THREE

28  STRIKES LAW PROVIDES, "IF THERE IS A CURRENT

    CONVICTION FOR MORE THAN ONE FELONY

COUNT NOT COMMITTED ON THE SAME OCCASION, AND
NOT ARISING FROM THE SAME SET OF OPERATIVE
FACTS, THE COURT SHALL SENTENCE THE DEFENDANT
CONSECUTIVELY ON EACH COUNT ... " (§§ 667, SUBd.(C)(6),
1170.12, SUBd.(a)(6).)

THE CIRCUMSTANCES OF PETITIONER'S TWO
CRIMES COMPEL THE CONCLUSION THAT SECTION 654
PROHIBITS DOUBLE PUNISHMENT IN HIS CASE. THE
SUPREME COURT IN PEOPLE V. PEREZ (1972) 23 CAL.3d
545 EXPLAINED THAT SECTION 654 PROHIBITS A COURT
FROM IMPOSING DOUBLE PUNISHMENT NOT ONLY WHERE
THERE HAS BEEN "BUT ONE ACT IN THE ORDINARY
SENSE, BUT ALSO WHERE THERE WAS A COURSE OF
CONDUCT WHICH VIOLATED MORE THAN ONE STATUTE
BUT NEVERTHELESS CONSTITUTED AN INDIVISIBLE
TRANSACTION .... " (SEE ALSO, NINETH CIRCUIT
COURT OF APPEALS IN RHODEN V. ROWLAND, 10 F.3d
1457 P. 1462.)

THE TWO CRIMES IN PETITIONER'S CASE CON-
STITUTED AN INDIVISIBLE TRANSACTION BECAUSE THEY
OCCURRED SIMULTANEOUSLY. THUS SECTION 654
APPLIES TO PROHIBIT DOUBLE PUNISHMENT IN THIS
CASE. (SEE ALSO, UNITED STATES V. DiFRANCESCO, 449 U.S.
117, 132 ; 101 S.CT 426, 434.). WHERE THE TRIAL COURT
SAID, "PURSUANT TO 667(b) THROUGH (i), I AM REQUIRED
TO DOUBLE THAT TERM...," THAT'S NOT A SILENT RE-
CORD. IT INDICATES THAT THE COURT THOUGHT IT
HAD NO DISCRETION - AND SO PETITIONER IS
ENTITLED TO A NEW SENTENCING HEARING. (SEE ALSO

IN RE BARFOOT. 61 CA. 4TH 923.)

## PREJUDICIAL EFFECT

NOT ONLY DID THE TRIAL COURT ERRONEOUSLY SENTENCE PETITIONER TO CONSECUTIVE TERMS UDER THE THREE STRIKES LAW, THE TRIAL COURT ALSO VIOLATED THE PROHIBITION AGAINST DOUBLE PUNISHMENT SET FORTH IN SECTION 654 WHEN IT IMPOSED CONSECUTIVE TERMS. THIS IS SO BECAUSE SECTION 654 PROHIBITS PUNISHING APPELLANT FOR BOTH HIS CONVICTION OF VOLUNTARY MANSLAUGHTER (§192. Subd. (a)) AND HIS CONVICTION OF POSSESSION OF A FIREARM BY A FELON (§12021, Subd.(a)(1)). THUS A VIOLATION OF THE UNITED STATES CONSTITUTION PROHIBITION, AGAINST DOUBLE JEOPARDY.

IV. PETITIONER'S CONVICTIONS FOR BOTH VOLUNTARY MANSLAUGHTER AND FIRE ARM USE ENHANCEMENT IS IN VIOLATION OF THE FIFTH AMENDMENT PROHIBITION, AGAINST DOUBLE JEOPARDY

A. THE TRIAL COURT ERRONEOUSLY IMPOSED A TERM FOR THE FIREARM USE ENHANCEMENT IN VIOLATION OF THE PROHIBITION AGAINST DOUBLE PUNISHMENT SET FORTH IN SECTION 654

THE ONLY ARGUEMENT THAT CAN BE MADE AGAINST THIS "DUAL USE" OF PETARS IS THAT

1  PENAL CODE SECTION 1170, SUBDIVISION (b), WHICH THE
2  NEW LAW DID NOT AMEND OR ELIMINATE, PROVIDES THAT
3  A SENTENCING COURT MAY NOT USE THE SAME FACT TO
4  INCREASE A DEFENDANT'S BASE TERM AND ALSO TO
5  ENHANCE HIS OR HER SENTENCE. THE COURT IN
6  PEOPLE V. COLEMAN (1989) 48 CAL.3d 112, 163-164, HELD
7  THAT PENAL CODE SECTION 1170 BARRED A COURT
8  FROM USING PRIOR CONVICTION(S) TO JUSTIFY IMPOSITION
9  OF AN AGGRAVATED TERM AND ALSO TO ENHANCE
10 THE DEFENDANT'S SENTENCE.
11     THIS COURT FURTHER HELD THAT THE SENTENC-
12 ING COURT MAY NOT USE THE FACT THAT THE DEFEND-
13 ANT SUFFERED THE PRIOR CONVICTION TO IMPOSE AN
14 AGGRAVATED TERM AND A CONSECUTIVE SENTENCE.
15 (Id. AT P.164; SEE ALSO PEOPLE V. JONES (1993) 5
16 CAL 4TH 1142, 1150 [BARRING PUNISHMENT FOR A PRIOR
17 CONVICTION UNDER BOTH PENAL CODE §§ 667. Subd.(a),
18 AND, 667.5, subd. (a)].)
19     IN THE EVENT THAT THIS COURT REJECT'S
20 PETITIONER'S ARGUMENT THAT SECTION 654 PROHIBITS
21 PUNISHMENT FOR BOTH HIS CONVICTIONS OF VOLUNTARY
22 MANSLAUGHTER (§ 192 Subd. (a)) AND POSSESSION OF A
23 FIREARM BY A FELON (§12021, Subd. (a) (1)), THIS
24 COURT MUST NONE THE LESS VACATE PETITIONER'S
25 SENTENCE, BECAUSE THE TRIAL COURT VIOLATED
26 SECTION 654 WHEN IT IMPOSED AN ADDITIONAL
27 FOUR YEAR TERM FOR THE FIREARM USE
28 ENHANCEMENT PURSUANT TO SECTION 12022.5,
   SUBDIVISION (a). (CT 814-816.)

THE PROHIBITION ON DOUBLE PUNISHMENT SET FORTH IN SECTION 654 REQUIRES THAT THE FIREARM USE ENHANCEMENT TERM BE STAYED IN PETITIONER'S CASE. THIS COURT SHOULD FOLLOW THE REASONING IN PEOPLE V. MUSTAFAA (1994) 22 CAL APP. 4TH 1305, IN WHICH THE COURT OF APPEAL FOUND THAT THE TRIAL COURT'S IMPOSITION OF AN ENHANCEMENT TERM FOR PERSONAL USE OF A FIREARM (§12022.5, Subd.(a).) VIOLATED SECTION 654 BECAUSE THE ENHANCEMENT TERM APPEARED TO BE BASED ON THE SAME CONDUCT AS THAT ON WHICH THE TERM FOR THE PETITIONER'S CONVICTION OF UNLAWFUL POSSESSION OF A FIREARM (§12021.1, Subd (a)) WAS BASED. (Id AT P. 1312) SEE ALSO UNITED STATES V. DIFRANCESCO, 449 U.S. 117, 132, AND UNITED STATES V. ARRELLANO-RIOS 799 f. 2d 520, 524 (9TH CIR. 1986.) [Exhibit E, SEE Also]

LIKEWISE, THE ENHANCEMENT TERM IN PETITIONER'S CASE IS BASED ON THE SAME CONDUCT AS THAT ON WHICH THE TERM FOR PETITIONER'S CONVICTION OF UNLAWFUL POSSESSION OF A FIREARM WAS BASED. THUS SECTION 654 PROHIBITS IMPOSITION OF THE ENHANCEMENT TERM IN PETITION-ER'S CASE. IT COULD THUS BE ARGUED THAT IN ADDITION TO BARRING DUAL USE OF "STRIKES" TO SELECT AN AGGRAVATED TERM, PENAL CODE SECTION 1170, Subdivision (b), ALSO BARS DUAL USE TO ENHANCE UNDER TWO DIFFERENT PRIOR SECTIONS.

## PREJUDICIAL EFFECT

PETITIONER SUBMITS, CONVICTION AND SENTENCE IS UNLAWFUL AND IN VIOLATION OF SEVERAL FEDERAL AND STATE CONSTITUTIONAL PROTECTIONS.

WHEREFORE, PETITIONER PRAYS THIS HONORABLE COURT GRANT THE RELIEF SOUGHT BY AN ISSUANCE OF A WRIT OF HABEAS CORPUS.

DATED: _____, 200

RESPECTFULLY SUBMITTED,

*_____
RAHSAAN COLEMAN
IN PRO PER

# Supplemental Argument

## Pre Judicial Effect

Petitioner submits, not only did the Trial Court erroneously sentence Petitioner to consecutive terms under the Three Strikes Law, (See Exhibit D), the Trial Court also violated the Prohibition against Double Punishment set forth in Section 654; when it imposed consecutive terms.

This is so because section 654 Prohibits Punishing Petitioner for both his conviction of Voluntary manslaughter (§ 192, Subd. (a) ); and his conviction of Possession of a firearm by a felon (§ 12021, Subd. (a)(1) ).

There was a reasonable Probability the outcome of the Proceedings would have been much different. As the Three Strikes Law does not mandate consecutive sentencing in Petitioner's case, and section 654 requires that the term on one of his convictions be stayed. AND, because the trial court violated section 654; and state and Federal Constitutional Protection(s) [Article 1, section(s) 7, 15, and 16; Also The fifth, Sixth, Eighth, and fourteenth Amendments] When it imposed an additional four (4) year term for the firearm use enhancement Pursuant to Section 12022.5, Subd. (a).

1  Please refer to the attached Exhibits!
2      If Not for these violations Petitioner
3  would not have been adversly sentenced.
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

APPENDIX

1

No. C 04-4069 PJH (PR)

ODER STAYING AND
 ADMINISTRATIVEIY
CLOSING CASE

**FILED**

**NOT FOR CITATION**

JUN 2 5 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

NORTHERN DISTRICT OF CALIFORNIA

E-Filing

RAHSAAN COLEMAN,

           Petitioner,

    vs.

JOE McGRATH, Warden,

           Respondent.
_____/

No. C 04-4069 PJH (PR)

**ORDER STAYING AND
ADMINISTRATIVELY
CLOSING CASE**

United States District Court
For the Northern District of California

      This is a habeas case filed pro se by a state prisoner.  The court granted respondent's motion to dismiss the petition as mixed and dismissed with leave for petitioner to chose from three possible courses of action:  (1) dismiss the petition; (2) amend the petition to delete the unexhausted issues; or (3) ask for a stay.  In response he has filed a motion for a stay, which respondent has opposed.

**DISCUSSION**

      The Supreme Court in *Rhines v. Weber*, 544 U.S. 269 (2005), held that a district court may stay a mixed habeas case to allow exhaustion in state court. *Id.* at 277-78. *Rhines* requires that stays be granted only if the movant shows good cause for his or her delay in exhausting the issues and that the issues are "potentially meritorious." *Id.* at 277. The petitioner also must not have engaged in "abusive litigation tactics or intentional delay," though the Court recognized that this requirement would usually be relevant only in capital cases, where the petitioner, unlike those sentenced to a term of years such as petitioner here, presumably wants to delay review. *Id.* at 278. Respondent contends that petitioner has not met the "good cause" requirement of *Rhines*.

///

1    Although neither the Ninth Circuit nor the Supreme Court has defined "good cause,"
2  the Ninth Circuit has held that good cause is not the same as extraordinary circumstances.
3  *Jackson v. Roe*, 425 F.3d 654, 659-61 (9th Cir. 2005). Beyond that, the courts which have
4  considered the question are divided as to whether it is the same as the very difficult
5  "cause" standard for relief from a procedural default, or is less demanding. *See Lawrence*
6  *v. Schirro*, 2007 WL 433554 at *4 (D. Ariz. Feb. 6, 2007); *Steele v. Ornoski*, 2006 WL
7  2844123 at *8 (E.D. Cal. Sept. 29, 2006) (citing cases). There is a strong hint what the
8  standard should be, however: in *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005), which
9  was post-*Rhines*, the Court suggested that prisoners who are "reasonably confused" about
10  whether a state filing would be timely, and thus fear having the federal statute of limitations
11  expire while they are exhausting their state remedies, may avoid this predicament "by filing
12  a 'protective' petition in federal court and asking the federal court to stay and abey the
13  federal habeas proceedings until state remedies are exhausted." *Id.* at 416-17. That is,
14  reasonable confusion usually would be good cause. *See Pace*, 544 U.S. at 416-17.

15    In this case petitioner contends that he failed to exhaust because (1) he knew no
16  law, thus was ignorant of the requirement that in state court he label federal constitutional
17  issues as such, in addition to presenting the facts underlying the claim; and (2) he was
18  misled by a letter from his attorney.

19    As to the first contention, respondent asserts that if this were good cause for failure
20  to exhaust, there would virtually always be good cause, making the good cause
21  requirement meaningless. This argument has some force, but given that pro se state
22  habeas petitioners must attempt to deal with highly technical requirements, sometimes with
23  little education and usually without much access to legal materials, that petitioner lacked
24  legal knowledge and was pro se in state court is entitled to some weight in determining
25  whether there was good cause.

26    In his second contention petitioner alleges that he understood his appellate attorney
27  to have told him that he could go to federal court with any of the arguments from his state
28  appeal. This was wrong, as it happens; the copy of counsel's letter that petitioner attaches

United States District Court
For the Northern District of California

2

1   as an exhibit shows that counsel actually wrote: "You may present any of the arguments
2   from the appeal briefs, insofar as those arguments are based on your rights under the
3   United States Constitution." Respondent contends that this was clear, but to a pro se
4   prisoner without knowledge of the law, it may be that "insofar" was incomprehensible or
5   thought to mean the same as "inasmuch." Petitioner's having attached the letter to support
6   his contention certainly suggests that even now he does not realize what it really means.
7   On balance, the court concludes that petitioner has shown good cause.

8        The three unexhausted issues were petitioner's claims that his sentence was cruel
9   and unusual, that his double jeopardy rights were violated by his being sentenced on two
10  offenses which were part of the same series of events, and that his double jeopardy rights
11  were violated by enhancement of the sentence for use of a firearm. The issues are federal
12  and thus potentially meritorious, there is no reason to think he is asking for the stay for
13  purposes of delay, and he has shown good cause; the stay will be granted.

## CONCLUSION

15       Petitioner's motion for stay (document number 10 on the docket) is **GRANTED**.
16  This case is **STAYED** to allow petitioner to present his unexhausted issues in state court,
17  presumably by way of state petitions for habeas corpus. If petitioner is not granted relief in
18  state court, he may return to this court and ask that the stay be lifted.

19       The stay is subject to the following conditions:

20       (1) petitioner must institute state court habeas proceedings within thirty days of this
21  order; and

22       (2) petitioner must notify this court within thirty days after the state courts have
23  completed their review of his claims or after they have refused review of his claims.

24       If either condition of the stay is not satisfied, this court may vacate the stay and act
25  on this petition. *See Rhines*, 544 U.S. at 278 (district court must effectuate timeliness
26  concerns of AEDPA by placing "reasonable limits on a petitioner's trip to state court and
27  back.").

28  ///

3

1    The clerk shall administratively close this case. The closure has no legal effect; it is

2   purely a statistical matter. The case will be reopened and the stay vacated upon

3   notification by petitioner in accordance with section two above.

4

5    **IT IS SO ORDERED.**

6

7   Dated: _____, 2007.

8                                                    ꟼHYLLIS J. HAMILTON
                                                     United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   G:\PRO-SE\PJH\HC.04\COLEMAN069.STAY

United States District Court
For the Northern District of California

4

Exhibit

LETTER FROM APPELLATE
LAWYER INREGARDS TO
CA. SUPREME COURT RULING

A



Victor J. Morse
*Attorney at Law*
PMB 232
3145 Geary Boulevard
San Francisco, CA 94118-3316

Phone (415) 387-5828
Fax (415) 668-5364

September 24, 2001

Rahsaan Coleman
# J-24836
High Desert State Prison
P.O. Box 3030
Susanville, CA 96127-3030

    Re:  People v. Rahsaan Coleman
         Court of Appeal No. A089743
         <u>Contra Costa County Superior Court No. 059801408</u>

Dear Mr. Coleman:

    The California Supreme Court denied review in your appeal, in an order dated September 19, 2001. This means that your appeal in the state courts is finished.

    You may now challenge your conviction by filing a petition for writ of habeas corpus in the United States District Court. You may present any of the arguments from the appeal briefs, insofar as those arguments are based on your rights under the United States Constitution. Any such petition must be filed within one year and ninety days from the date the California Supreme Court denied review in your case. However, you must prepare and file any such petition without my assistance, because I was appointed to represent you only in your appeal in the state courts. To obtain forms and instructions for filing a "state prisoner petition for writ of habeas corpus," you should write to:

      United States District Court, Clerk's Office
      450 Golden Gate Avenue
      16th Floor, Room 1111
      San Francisco, CA 94102

# Exhibit

# B

REPORTER'S TRANSCRIPT
OF Trial Court's State-
MENT PRETAINING TO
   SENTENCING.

Page(s): 41-42

40

1    this count.

2            And therefore, pursuant to 1170.12(c)(2)(a),

3    the term of 25-to-life would be imposed on this count,

4    as well.

5            Turning to the issue of concurrent versus

6    consecutive sentencing, pursuant to Penal Code

7    Section 1170.12(a)(12), the Court finds that the

8    crimes in Counts One and Two -- strike that.  I have

9    to switch papers here.

10            -- did not arise from the same set of

11    operative facts, nor were they committed on the same

12    occasion.

13            The Court has examined current case law,

14    interpreting the meaning of these phrases under the

15    Three Strikes law, and finds that under the facts of

16    this case it is a very close determination.

17            The defendant, in this case, was in

18    possession -- at least constructively, if not

19    physically and actually -- of the firearm during the

20    entire day that this offense is charged.  And indeed,

21    he was in possession of the firearm for some period of

22    time prior to the date of the offenses charged in this

23    case.

24            The 12021 offense was a continuing crime,

25    however; and its elements would have been sufficiently

26    proven at any point along that continuum.

27            Thus, the Court finds that this offense

28    occurred on a different occasion than the voluntary

41

1   manslaughter. — 6th AMENDMENT VIOLATION (MUST BE PROVEN BY A JURY!)

2          Based on these same facts, and the

3   objectives of the defendant -- which will be detailed

4   in a moment with regard to 654 -- the Court also finds

5   that the 12021 did not arise from the same operative

6   facts.  The Court thus concludes that it is mandated

7   to impose consecutive sentences under the

8   Three Strikes law.

9          Before proceeding, however, I would note for

10  the record that the Court is only imposing a

11  consecutive term for the 12021 because I am finding

12  that I am mandated to do so under the Three Strikes

13  law and the facts of this case.

14         If the Court were not so mandated, it would

15  retain the discretion, as Ms. Castro pointed out, to

16  sentence consecutively or concurrently.

17         I have examined the factors in Rule 425, in

18  order to decide whether I would consecutively or

19  concurrently sentence on these two counts, if I had

20  that discretion.

21         And I find that while the crimes and

22  objectives were predominantly independent of each

23  other, they did not involve separate acts of violence,

24  and they were committed so closely in time and place

25  so as to indicate a single period of aberrant

26  behavior.

27         While according to trial testimony the

28  defendant purchased the firearm before the date of the

Teresa Haro Smith, CSR No. 10365

42

1   homicide, the possession in this case is only alleged

2   in the Information on the same date as the homicide

3   itself.  The criminal objective of the defendant in

4   possessing the gun appears to be simply to possess a

5   firearm.  Which is, of course, illegal, given his

6   status as an ex-felon.

7          The criminal objective of the defendant in

8   committing the homicide was to shoot and kill a human

9   being.  This was a voluntary manslaughter, requiring a

10  finding of an intent to kill in an unjustifiable

11  manner.  Those objectives and those crimes are

12  independent of one another.

13         However, since the crimes did not involve

14  separate acts of violence, and since they were

15  committed so closely in time and place so as to

16  indicate a single course of aberrant behavior, if I'd

17  had the discretion to do so I would have sentenced

18  concurrently on those two counts.

19         The indeterminate term of 25-to-life on

20  Count Two is thus imposed to run consecutive to that

21  imposed on Count One.

22         And, again, to make it clear, I am doing

23  that solely because I am finding that I do not have

24  the discretion in this case to sentence concurrently.

25         With regard to Penal Code Section 654,

26  again, under the rather unique facts of this case, it

27  presents a close issue.

28         Given the above analysis about the

# EXhibiT

C

PETITIONER'S OPENING
BRIEF ARGUMENT 5
TRIAL COURT'S ABUSE OF
THE EIGHTH AMENDMENT (U.S.C)
Page(s): 45 - 51

V

**THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT
REFUSED TO STRIKE ONE OF APPELLANT'S PRIOR SERIOUS
FELONY CONVICTIONS PURSUANT TO SECTION 1385, FOR
PURPOSES OF SENTENCING UNDER THE THREE STRIKES LAW,
BECAUSE APPELLANT'S TWO PRIOR SERIOUS FELONY
CONVICTIONS AROSE OUT OF A SINGLE ACT, AND HIS
CURRENT FELONY CONVICTIONS INVOLVED MITIGATING
CIRCUMSTANCES**

The trial court abused its discretion when it
refused appellant's request to strike one of his prior serious
felony convictions. Appellant's case involves uniquely
compelling circumstances, specifically, the close connection
between appellant's two prior convictions, which arose from a
single act, and the fact that his current convictions resulted
from an incident in which appellant killed only in response to
provocation from the victim and/or an honest but unreasonable
belief that he needed to kill the victim to defend himself.
These circumstances demonstrate that appellant's case is
outside the spirit of the Three Strikes law's punishment
provisions for "third strike" defendants. As the trial court
abused its discretion, this Court must vacate appellant's
sentence.

The defense filed a motion to request the trial
court to exercise its discretion pursuant to section 1385 to
strike one of appellant's prior serious felony convictions so
that appellant would not be sentenced as a third strike
defendant under the Three Strikes provisions of sections 667
and 1170.12. (CT 771-779.) The defense argued that the
nature and circumstances of appellant's present felonies and

45

the particulars of his background and character warranted the
trial court's exercise of its discretion under section 1385.
(CT 773-777.)  The defense further argued that the court
should exercise its discretion to strike one of appellant's
prior serious felony convictions because appellant's only two
prior serious felony convictions, for attempted burglary and
attempted robbery, arose out of a single act -- his armed
attempt to break into Myron Parker's residence.  (CT 777-778.)
On the day of sentencing, the trial court held a hearing on
the motion and denied the request.  (RT 22-26, 36-38
*[12/17/99].*)  The court's ruling was an abuse of discretion,
due to the unique circumstances of appellant's case.

The law governing a trial court's exercise of its
discretion to strike a prior serious felony conviction
~~pursuant to section 1385 is well established~~.  The Supreme
Court held in *People v. Superior Court (Romero)* (1996) 13
Cal.4th 497 that a trial court in a case charged under the
Three Strikes law (§§ 667, subds. (b)-(i), 1170.12) has the
discretionary power to dismiss prior felony conviction
allegations and findings in furtherance of justice.  (*Id.* at
pp. 507-530.)  The Supreme Court in *People v. Williams* (1998)
17 Cal.4th 148 set forth guidelines for "how trial and
appellate courts should undertake to rule and review in this
area."  (*Id.* at p. 152.)  The Court held that "in ruling
whether to strike or vacate a prior serious and/or violent
felony conviction allegation or finding under the Three

46

Strikes law, on its own motion, 'in furtherance of justice'
pursuant to Penal Code section 1385, subdivision (a), or in
reviewing such a ruling, the court in question must consider
whether, in light of the nature and circumstances of his
present felonies and prior serious and/or violent felony
convictions, and the particulars of his background, character,
and prospects, the defendant may be deemed outside the
scheme's spirit, in whole or in part, and hence should be
treated as though he had presently not committed one or more
of felonies and/or had not previously been convicted of one or
more serious and/or violent felonies." (*Id.* at p. 161.)
Based on these guidelines, this Court must conclude that the
trial court abused its discretion in denying appellant's
motion.

~~The trial court's ruling in appellant's case is~~
~~reviewable. A court's exercise of its discretion~~ "must
proceed in strict compliance with section 1385, and is subject
to review for abuse . . . ." (*People v. Superior Court
(Romero), supra,* 13 Cal.4th at p. 530.)   A defendant may
appeal from the denial of relief under section 1385 on the
ground that the trial court failed to exercise its discretion
in a lawful manner.   (*People v. Gillispie* (1997) 60
Cal.App.4th 429, 434.)   The standard of review for abuse of
discretion in such a case is "deferential" but not "empty."
(*People v. Williams, supra*, 17 Cal.4th 148, 162, citations
omitted.)   The question to be addressed by a reviewing court

47

is "whether the ruling in question 'falls outside the bounds
of reason' under the applicable law and the relevant facts."
(Ibid., citations omitted.)

Appellant submits that the trial court abused its
discretion in refusing to strike one of his prior convictions
for purposes of sentencing under the Three Strikes law,
because "the nature and circumstances of [appellant's] present
felonies and prior serious . . . felony conviction[], and the
particulars of his background, character, and prospects,"
compel the conclusion that he must "be deemed outside the
scheme's spirit." (See *People v. Williams, supra,* 17 Cal.4th
148, 161.) The record discloses the following circumstances
that warrant relief.

The close connection between appellant's two prior
serious felony convictions compels the conclusion that the
trial court was obligated to exercise its discretion to strike
one of them pursuant to section 1385. Appellant's record of
"strikes" consists solely of his two convictions arising from
a single act, specifically, his attempt to unlawfully enter
Myron Parker's residence. (See Statement of Facts, ante, at
pp. 6-7.) The record of the prior convictions discloses that
punishment was stayed on one of the two convictions pursuant
to section 654. (CT 735.) Although the Supreme Court in
*People v. Benson* (1998) 18 Cal.4th 24 held that the Three
Strikes law treats as separate "strikes" even those
convictions for which separate punishment was barred by

48

section 654 (*id.* at p. 28), the Court added a crucial caveat that applies to appellant's case. The Court commented, "Because the proper exercise of a trial court's discretion under section 1385 necessarily relates to the circumstances of a particular defendant's current and past criminal conduct, we need not and do not determine whether there are some circumstances in which two prior felony convictions are so closely connected -- for example when multiple convictions arise out of a single act by the defendant as distinguished from multiple acts committed in an indivisible course of conduct -- that a trial court would abuse its discretion under section 1385 if it failed to strike one of the priors." (*Id.* at p. 36, fn. 8.) Appellant's case is precisely the hypothetical case described in the Supreme Court's comment in *Benson*. There is no rational basis for appellant to be considered a "third strike" recidivist offender, when his convictions of attempted burglary and attempted robbery arose from a single act, committed at one time and with a single intent, and when the convictions were punished as a single crime pursuant to section 654. It cannot reasonably be suggested that appellant poses a greater threat to public safety just because he was convicted of two crimes rather than one crime as a result of his single act. Accordingly, appellant's two prior serious felony convictions are so closely connected that the trial court abused its discretion under section 1385 when it failed to strike one of them.

49

Furthermore, the nature and circumstances of appellant's present felonies support the conclusion that appellant must be deemed to be outside the spirit of the Three Strikes law's punishment provisions for "third strike" defendants. Appellant's conviction of voluntary manslaughter (§ 192, subd. (a)) establishes that the jury concluded either that appellant killed in a sudden quarrel or heat of passion in response to provocation from the victim, or that he killed with an unreasonable but good faith belief that he had to kill to defend himself from the victim. (See *People v. Barton, supra*, 12 Cal.4th 186, 199.) These are clearly mitigating circumstances that strongly suggest that appellant is not the type of hardcore recidivist that the Three Strikes law was designed to address.

Moreover, the circumstances of appellant's background and character, especially the profound changes that appellant's family observed in him following his release from prison, as set forth in his motion (see CT 775-776), establish that appellant does not deserve to be sentenced as a "third strike" defendant.

Therefore, appellant's case is one in which all of the pertinent circumstances -- "the nature and circumstances of [appellant's] present felonies and prior serious . . . felony conviction[], and the particulars of his background, character, and prospects" -- require that he "be deemed outside the scheme's spirit." (See *People v. Williams, supra,*

50

17 Cal.4th 148, 161.)

Appellant's situation is completely unlike the case at issue in *People v. Williams, supra*, 17 Cal.4th 148, where the Supreme Court determined that "Williams cannot be deemed outside the spirit of the Three Strikes law in any part." (*Id.* at p. 161.)  The Court found "little about Williams's present felony . . . that [was] favorable to his position." (*Ibid.*)  In contrast, the evidence of provocation and aggression by the victim and appellant's honest but unreasonable belief in the need to exercise self—defense in the current felonies is a mitigating circumstance in appellant's case.  The Court in *Williams* observed that Williams "did not follow through in efforts to bring his substance abuse problem under control." (*Ibid.*)  But there is no evidence of any such drug or alcohol problem in appellant's case.  Furthermore, unlike the defendant in *Williams,* appellant has a minimal record of felony and misdemeanor convictions.  Thus his case is distinguishable from *Williams*.

Accordingly, the court abused its discretion when it refused to strike one of appellant's prior convictions for purposes of sentencing under the Three Strikes law.  This Court should vacate appellant's sentence and remand his case to the trial court with directions to properly exercise its discretion under section 1385, strike one of appellant's prior serious felony convictions, and resentence him.

//

51

# Exhibit

PETITIONER'S OPENING
BRIEF ARGUMENT 6
TRIAL COURT'S VIOLATION
OF THE FIFTH AMENDMENT (U.S.C)

Pages: 52 – 58



VI

**THE TRIAL COURT ERRED WHEN IT CONCLUDED THAT IT WAS
COMPELLED BY THE THREE STRIKES LAW TO SENTENCE
APPELLANT CONSECUTIVELY FOR HIS TWO CURRENT
CONVICTIONS; IN FACT, SECTION 654 PROHIBITS DOUBLE
PUNISHMENT BECAUSE APPELLANT'S TWO CRIMES WERE PART
OF AN INDIVISIBLE COURSE OF CONDUCT**

Over defense objection (RT 30-31, 44 *[12/17/99]*;
CT 762-769), the trial court erroneously sentenced appellant
to two consecutive indeterminate terms of 25 years to life
imprisonment for his two current felony convictions, because
it mistakenly determined that the Three Strikes law required
such sentencing. (CT 814-816; RT 19-20, 40-42 *[12/17/99]*.)
The court even stated on the record that if it had the
discretion, it would have sentenced appellant concurrently.
(RT 41-42 *[12/17/99]*.) Contrary to the trial court's
determination, the Three Strikes law permitted the court the
discretion to sentence appellant consecutively or
concurrently, because appellant's two current crimes were
committed on the same occasion and arose out of the same set
of operative facts. However, as the two crimes were part of
an indivisible course of conduct, the statutory prohibition
against double punishment set forth in section 654 prohibits
consecutive sentencing, and in fact requires that the sentence
on one of appellant's convictions be stayed. Thus this Court
must vacate appellant's erroneously imposed sentence.

The facts of appellant's case do not trigger
mandatory consecutive sentencing. The Three Strikes law
provides, "If there is a current conviction for more than one

52

felony count not committed on the same occasion, and not

arising from the same set of operative facts, the court shall

sentence the defendant consecutively on each count . . . ."

(§§ 667, subd. (c)(6), 1170.12, subd. (a)(6).)  The Supreme

Court in *People v. Lawrence* (2000) 24 Cal.4th 219 elaborated

on the meaning of those terms.  The Court explained, "If there

are two or more current felony convictions 'not committed on

the same occasion,' i.e., not committed within close temporal

or spatial proximity of one another, and 'not arising from the

same set of operative facts,' i.e., not sharing common acts or

criminal conduct that serves to establish the elements of the

current felony offenses of which defendant stands convicted,

then 'the court shall sentence the defendant consecutively on

each count' pursuant to subdivision (c)(6)."  (*Id.* at p. 233.)

Consecutive sentencing is not mandated in appellant's case

because his two crimes were committed on the same occasion,

and they arose from the same set of operative facts, as those

terms have been explained by the Supreme Court.

Appellant's crimes were committed on the "same

occasion" because they were committed within close temporal or

spatial proximity of one another.  The record establishes that

appellant's unlawful possession of the gun (§ 12021) was

simultaneous with his commission of the crime of voluntary

manslaughter (§ 192, subd. (a)) when he shot the victim with

the gun.  At no other time did appellant use or display the

gun.  Although appellant testified that he had obtained and

53

possessed the gun sometime prior to the day of the shooting (RT 639—640, 644, 693, 697), he was charged and convicted only of possessing the gun on the day of the shooting. (CT 146, 449, 454.) These is no evidence of his possession of the gun on that day except for the moment when he removed it from under his clothing and shot the victim. As the temporal and spatial proximity between the two crimes is obvious, the two crimes were committed on the same occasion within the meaning of the Three Strikes law. Therefore consecutive sentencing is not mandatory.

Moreover, appellant's two crimes arose from "the same set of operative facts" because they shared common acts or criminal conduct. The Supreme Court in *People v. Lawrence*, *supra*, 24 Cal.4th 219 explained that whether two crimes shared common acts or criminal conduct may be determined by evaluating "the extent to which common acts and elements of such offenses unfold together or overlap, and the extent to which the elements of one offense have been satisfied, rendering that offense 'completed' in the eyes of the law before the commission of further criminal acts constituting additional and separately chargeable crimes . . . ." (*Id.* at p. 233, quoting *People v. Durant* (1999) 68 Cal.App.4th 1393, 1406.) Here, the two crimes clearly unfolded together. Appellant's uncontradicted testimony established that he was motivated to possess the gun because he feared that the victim was armed and that the victim expected to confront appellant.

54

(RT 637-639.) Likewise, the evidence and the jury's voluntary manslaughter (§ 192, subd. (a)) verdict establish that appellant killed in response to provocation from the victim, or that he killed with an unreasonable but good faith belief that he had to kill to defend himself from the victim. (See *People v. Barton, supra*, 12 Cal.4th 186, 199.) Thus the "common acts and elements" of appellant's unlawful possession of the gun and his unlawful use of the gun to shoot Parker unfolded together. Furthermore, neither of appellant's two crimes was completed in the eyes of the law before the other was committed. As appellant's two crimes shared common acts or criminal conduct, they arose from the same set of operative facts. Therefore consecutive sentencing is not mandatory.

In sum, the Three Strikes law does not mandate consecutive sentencing for appellant's two current convictions. His crimes were committed on the same occasion, and they arose from the same set of operative facts, as those terms have been explained by the Supreme Court. Accordingly, the trial court was mistaken in its belief that it was compelled to impose consecutive terms in this case.

Not only did the trial court erroneously sentence appellant to consecutive terms under the Three Strikes law, the trial court also violated the prohibition against double punishment set forth in section 654 when it imposed consecutive terms. This is so because section 654 prohibits punishing appellant for both his conviction of voluntary

55

manslaughter (§ 192, subd. (a)) and his conviction of
possession of a firearm by a felon (§ 12021, subd. (a)(1)).
Thus appellant may not be sentenced on both convictions when
he is resentenced.

Section 654 applies to appellant's sentencing under
the Three Strikes law.  The Court of Appeal in *People v.
Danowski* (1999) 74 Cal.App.4th 815 held that "where, as here,
the three strikes law does not mandate consecutive sentencing,
section 654 applies to sentencing under the three strikes
law." (*Id.* at p. 824.)  As appellant's case is one where
consecutive sentencing is not mandatory, section 654 is
applicable to his case.

The circumstances of appellant's two crimes compel
the conclusion that section 654 prohibits double punishment in
his case.  The Supreme Court in *People v. Perez* (1979) 23
Cal.3d 545 explained that section 654 prohibits a court from
imposing double punishment not only where there has been "but
one act in the ordinary sense, but also where there was a
course of conduct which violated more than one statute but
nevertheless constituted an indivisible transaction . . . ."
(*Id.* at p. 551.)  The two crimes in appellant's case
constituted an indivisible transaction because they occurred
simultaneously.  Thus section 654 applies to prohibit double
punishment in this case.

This Court should follow the opinion in *People v.
Kane* (1985) 165 Cal.App.3d 480, in which the Court of Appeal

56

held that section 654 prohibited punishing a defendant for
both his conviction of discharging a firearm at a vehicle
(§ 246) and possession of a firearm by a felon (§ 12021),
because he unlawfully possessed the gun, fired it at his
intended victim, and hit the car in an indivisible course of
conduct.  (*Id.* at p. 488; accord, *People v. Cruz* (1978) 83
Cal.App.3d 308, 314, 333 [section 654 prohibited double
punishment for convictions of assault with a deadly weapon
(§ 245) and possession of a concealable firearm by a felon
(§ 12021)]; *People v. Burnett* (1967) 251 Cal.App.2d 651, 657–
658 [section 654 prohibited double punishment for convictions
of armed robbery (§ 211) and possession of a concealable
firearm by a felon (§ 12021)]; but see *People v. Ratcliff*
(1990) 223 Cal.App.3d 1401, 1410–1414 [section 654 did not
prohibit double punishment for convictions of robbery (§ 211)
and unlawful possession of a firearm by a felon (§ 12021)],
and cases cited therein.)  Appellant's case is similar to *Kane*
in that his unlawful possession of the gun and his fatal
shooting of the victim were part of an indivisible course of
conduct.  Thus this Court should apply the reasoning of the
Court in *Kane* and find that section 654 prohibits punishing
appellant for both his convictions of voluntary manslaughter
(§ 192, subd. (a)) and possession of a firearm by a felon
(§ 12021, subd. (a)(1)).

     As the Three Strikes law does not mandate
consecutive sentencing in appellant's case, and section 654

57

requires that the term on one of his convictions be stayed,
this Court must vacate his sentence and remand his case to the
trial court for resentencing.

//

ExhibiT

E

PETITIONER'S OPENING
BRIEF ARGUMENT 7
TRIAL COURT'S VIOLATION
OF THE FIFTH AMENDMENT (U.SC)
Pages: 59-60

VII

**THE TRIAL COURT ERRONEOUSLY IMPOSED A TERM
FOR THE FIREARM USE ENHANCEMENT IN
VIOLATION OF THE PROHIBITION AGAINST
DOUBLE PUNISHMENT SET FORTH IN SECTION 654**

In the event that this Court rejects appellant's argument that section 654 prohibits punishment for both his convictions of voluntary manslaughter (§ 192, subd. (a)) and possession of a firearm by a felon (§ 12021, subd. (a)(1)) (see Argument VI, <u>ante</u>, at p. 52), this Court must nonetheless vacate appellant's sentence, because the trial court violated section 654 when it imposed an additional four year term for the firearm use enhancement pursuant to section 12022.5, subdivision (a).  (CT 814-816.)

The prohibition on double punishment set forth in section 654 requires that the firearm use enhancement term be stayed in appellant's case.  This Court should follow the reasoning in *People v. Mustafaa* (1994) 22 Cal.App.4th 1305, in which the Court of Appeal found that the trial court's imposition of an enhancement term for personal use of a firearm (§ 12022.5, subd. (a)) violated section 654 because the enhancement term appeared to be based on the same conduct as that on which the term for the defendant's conviction of unlawful possession of a firearm (§ 12021.1, subd. (a)) was based.  (*Id.* at p. 1312.)  Likewise, the enhancement term in appellant's case is based on the same conduct as that on which the term for appellant's conviction of unlawful possession of a firearm was based.  Thus section 654 prohibits imposition of

59

the enhancement term in appellant's case.

As appellant's sentence is unlawful, this Court must vacate his sentence and remand his case to the trial court for resentencing.

//

//

## PROOF OF SERVICE BY MAIL

(C.C.P. Section 101a #2105.5, 20 U.S.C. 1746)

I, RAHSAAN COLEMAN, am a resident of Pelican Bay State Prison, in the County of Del Norte, State of California. I am over eighteen (18) years of age and am a party to the below named action.

My Address is: P.O. Box 7500, Crescent City, CA 95531.

On the 15th day of May, in the year of 20 08 I served the following documents: (set forth the exact title of documents served)

Petition for Writ of Habeas Corpus-(Petition For Review and Evidentiary Hearing !)

on the party(s) listed below by placing a true copy(s) of said document, enclosed in a sealed envelope(s) with postage thereon fully paid, in the United States mail, in a deposit box so provided at Pelican Bay State Prison, Crescent City, CA 95531 and addressed as follows:

| | |
|---|---|
| U.S. Northern Dist. of Ca. <br> U.S. Courthouse <br> 450 Golden Gate Ave. <br> San Francisco, Ca. 94102-3483 | Ca. Attorney General <br> 455 Golden Gate Ave. <br> Suite 11000 <br> San Francisco, Ca. 94102-3661 |

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 15TH day of May, 20 08.

Signed: M. J. Rahsaan Coleman
(Declarant Signature)

Rev. 12/06

NAME:

CDC NO: J24836 HOUSING: D7-10 /

PELICAN BAY STATE PRISON
P.O. BOX 7509
CRESCENT CITY, CA 95532

**RECEIVED**

MAY 2 0 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

CONFIDENTIAL LEGAL MAIL



**PELICAN BAY STATE PRISON**
5905 Lake Earl Dr
Crescent City CA 95532

02 1M                  $ 05.05⁰
0004217666      MAY 16  2008
MAILED FROM ZIP CODE 95531

U.S. Northern Dist. of Ca.
U.S. Courthouse
450 Golden Gate Ave.
San Francisco, Ca.  94102-3483.